NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| MICHAEL O. LIVINGSTONE, | |
| Plaintiff, | Civil No. 19-13412 (RBK/AMD) |
| v. | **OPINION** |
| HADDON POINT MANAGER, LLC, *et al.*, | |
| Defendants. | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon all Defendants' Motion to Dismiss (Doc. No. 23), Plaintiff Michael O. Livingstone's Motion to Strike Affirmative Defenses from Defendants' Answer (Doc. No. 17), Plaintiff's Motion for Leave to File a Reply against Defendants' Answer (Doc. No. 21), Plaintiff's Motion for Reconsideration (Doc. No. 22), and Plaintiff's Cross-Motion to Quash/Strike (Doc. No. 34). What started as a landlord-tenant dispute has now mushroomed into a federal case. Plaintiff alleges violations under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, 42 U.S.C. § 1983, the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, and state law. For the reasons set forth below, the Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**, such that only Plaintiff's FDCPA claim survives; Plaintiff's Motion to Strike is **DENIED**; Plaintiff's Motion for Leave to File a Reply is **DENIED**; Plaintiff's Motion for Reconsideration is **DENIED**; and Plaintiff's Cross-Motion to Quash/Strike is **DENIED**.

**I.        BACKGROUND**

This matter comes before the Court on Plaintiff Michael O. Livingstone's Complaint (Doc. No. 1 ("Compl.")) against various Defendants associated with his housing complex, Haddon Point Apartments. These associates are Haddon Point Manager, LLC, the landlord of Haddon Point Apartments, Haddon Point Urban Renewal, LLC, the owner of Haddon Point Apartments, Delco Development, LLC, a "business entity owner" of Haddon Point Apartments, Tom Juliano, the Chief Executive Officer of Delco Development, LLC, Weisshoff & Richards, LLC, the law firm and debt collector of Haddon Point Apartments, Nina Beacher, the Director of Residential Development of Haddon Point Apartments, Travis J. Richards, an attorney at Weisshoff & Richards, LLC, and Nicolas G. Rotsides, an attorney and alleged debt collector for Haddon Point Manager, LLC. (Compl. at 2–3, ¶ 2–9).

Plaintiff is a full-time graduate student at Keller Graduate School of Management of DeVry University. (*Id*. at 3, ¶ 2). Plaintiff entered into a one-year residential lease agreement with Haddon Point Apartments on December 24, 2018. (*Id*. at 4, ¶ 3; Doc. No. 1-2 at 20). At the time, Plaintiff provided Defendant Beacher with proof of income in the form of Plaintiff's federal student financial aid award letter. (Compl. at 6, ¶¶ 7–12). Beacher accepted this form of income, accepted Plaintiff's application, and signed Plaintiff's lease as the lessor on behalf of Haddon Point Manager, LLC. (*Id*. at 6, ¶¶ 11–14; Doc. 1-2 at 20). The lease states that rent for the one-bedroom apartment is $1,520 per month, and that the tenant will be charged 10% of the total rental amount for rent payments made after the fifth of each month. (Doc. No. 1-2 at 3).

On January 11, 2019, DeVry University informed Plaintiff that his federal student financial aid disbursements would be delayed. (Compl. at 7, ¶ 22). On February 2, 2019, Plaintiff informed Beacher that his rent payment would be delayed because of the delay in his financial aid disbursements. (*Id*. at 7, ¶ 23). Plaintiff states that on February 19, 2019, Beacher informed

Plaintiff that she would be "giving [Plaintiff] some extra time because [he has] been forthcoming with [his] situation." (*Id*. at 7, ¶ 24). On February 23, 2019, Plaintiff states that he emailed Beacher and informed her that he expected his financial aid disbursement by March 10, 2019, and that the amount would be enough for the February and March rent payments. (*Id*. at 8, ¶ 28). Plaintiff states that on March 6, 2019, Beacher informed Plaintiff that she had sent his paperwork to Travis J. Richards, counsel for Haddon Point Manager, LLC, to file for eviction for non-payment of the February and March 2019 rents, as well as the 10% late fees, and court and attorney's costs. (*Id*. at 8, ¶ 28).

On March 6, 2019, Plaintiff received a debt collection letter from Defendant Travis J. Richards. (*Id*. at 8, ¶ 29). The letter stated in relevant part:

> This office represents your landlord, Haddon Point Manager, LLC. We have been advised that the total amount you owe as of this date is $3625.36, which includes court costs and attorney's fees for the recently filed eviction action . . . . Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt it valid. If you notify this office in writing within thirty (30) days after receiving this notice that the debt or any portion thereof is disputed, this office will obtain verification of the debt or a copy of a judgment, if any, and mail you a copy of such verification or judgment . . . . Please be advised that the law does not require this firm to wait until the end of the thirty (30) day period before taking legal action . . . . If, however, you dispute the debt, or any portion thereof, in writing, or request the name and address of the original (creditor) landlord, in writing, within the thirty (30) day period that begins with your receipt of this letter, the law requires us to suspend our efforts (through litigation or otherwise) to collect the debt until we mail the requested information to you. Once verification is mailed, we can resume collection efforts.

(Doc. No. 1-2 at 33).

DeVry University disbursed Plaintiff's delayed financial aid funds on March 13, 2019, and Plaintiff informed Beacher that he paid the February and March rent and water bills on March 15, 2019. (Compl. at 9, ¶ 30–31). Plaintiff did not pay the late fees or attorney and court costs. (*Id*. at 9, ¶ 32). Beacher and Richards acknowledged receipt of the rent payments, totaling $3,053.22, on March 17, 2019. On March 20, 2019, Plaintiff sent Defendants Beacher and Travis J. Richards a

3

memorandum explaining why he refused to pay the late fees and disputing the validity of the debt stated in the March 6 collections letter. (*Id*. at 10, ¶¶ 35–37). Plaintiff states that he sent this memorandum by email as well as postal mail on March 20, 2019. (*Id*. at 19, ¶ 86).

On March 23, 2019, Plaintiff was served a court summons and eviction complaint. (*Id*. at 10, ¶ 39). The complaint, filed on March 18, 2019, alleged that Plaintiff owed $3,625.36 in back rent for February and March 2019, as well as a $13.22 water bill. (*Id*. at 10, ¶ 39; Doc. No. 1-2 at 22–25). Plaintiff emailed Defendants on March 25, 2019, disputing the actual amount owed and asserting that the water bill should be for $14.11, rather than $13.22. (Compl. at 11, ¶¶ 41–45). Plaintiff appeared *pro se* at the first eviction hearing on April 25, 2019. (*Id*. at 12, ¶ 46). Although Travis J. Richards appeared at the hearing, Beacher did not appear at this hearing and therefore the eviction complaint was dismissed. (*Id*. at 12–13, ¶¶ 49–52; Doc. No. 1-2 at 36–43).

Following the dismissal of the eviction complaint, on April 30, 2019, Plaintiff noticed that the disputed late rent fees for February and March 2019 remained on Plaintiff's ledger as a collectable balance. (*Id*. at 13, ¶ 53). Plaintiff emailed Defendant requesting that the late fees be removed "consistent with the Court's dismissal of the eviction action." (*Id*. at 13, ¶ 54; Doc. No. 1-2 at 51). Plaintiff paid rent for May 2019 and the water bill for April 2019 on May 16, 2019 and notified Beacher of his payment. (Compl. at 14, ¶ 59). On May 27, 2019, Plaintiff received a second collection letter from Travis J. Richards, with the same language as the first, seeking to collect a debt of $2,998.02, including rent for May 2019 and attorney's fees. (*Id*. at 14, ¶ 60; Doc. No. 1-2 at 34). On May 27, 2019, Plaintiff also received a second eviction complaint dated May 20, 2019. (*Id*. at 14, ¶ 61; Doc. No. 1-2 at 27–29). The second eviction complaint listed the total owed as $754 for previous legal fees, $1,520 for May rent, February, March, and May late fees at $152 each ($426 total), $14.02 for April water, $54.00 for court costs, and $200 in attorney fees.

(Compl. at 14, ¶ 62; Doc. No. 1-2 at 28–29). The second eviction proceeding was scheduled for June 6, 2019. (Compl.at 15, ¶ 64).

Plaintiff initiated this lawsuit by filing his Complaint on June 5, 2019. Plaintiff filed a Motion for a Temporary Restraining Order ("TRO") on July 11, 2019, which was denied after a hearing on August 6, 2019. (Doc. No. 26). Plaintiff filed his Motion to Strike Defendants' Affirmative Defenses on August 13, 2019. Plaintiff filed a Motion for Leave to File Reply Against Defendants' Answer on August 15, 2019. Plaintiff filed a Motion for Reconsideration of the Court's denial of his motion for a TRO on August 22, 2019. Defendants filed an Answer (Doc. No. 9) on July 22, 2019, and then filed their Motion to Dismiss on August 26, 2019. (Doc. No. 23). On September 26, 2019, Defendants submitted a letter (Doc. No. 31) requesting the Court construe their Motion to Dismiss as a motion for judgment on the pleadings.

Plaintiff alleges that Defendants have violated his rights in several ways. In Count I, Plaintiff seeks to use 42 U.S.C. § 1983 as a vehicle to challenge the constitutionality of N.J.S.A. 2A: 18–53 and seeks declaratory relief that the statute violates the Equal Protection clause of the 14th Amendment. (Compl. at 16, ¶ 75). Under Count II, Plaintiff alleges that Defendants violated the FDCPA by impermissibly continuing their efforts to collect a debt—the February and March rents, late fees, utilities, court costs and attorney's costs—after Plaintiff disputed the debt in writing within thirty days. (*Id*. at 18–19, ¶¶ 85–91). In Count III, Plaintiff alleges that the Defendants have violated Section 1983 by depriving him of due process by seeking to evict him through "improper" and "erroneous" eviction actions. (*Id*. at 20–22, ¶¶ 93–106). In Count IV, Plaintiff sues all Defendants for defamation for causing his debts to be published into public court records, harming his reputation. (*Id*. at 24, ¶¶ 115, 130). In Count V, Plaintiff sues all defendants for fraud because of the allegedly erroneous debts Defendants sought to collect. (*Id*. at 29, ¶¶ 137–39). Count VI

alleges that Defendants unlawfully retaliated against Plaintiff by filing a second eviction action against him after Plaintiff threatened to file for relief in federal court. (*Id*. at 32, ¶¶ 154–55). In Count VII, Plaintiff sues all Defendants for "substantial waste of time," as Plaintiff alleges that the eviction actions have taken his time away from his graduate studies. (*Id*. at 36, ¶¶ 177–178). Count VIII alleges that Defendants violated the FHA by charging a 10% late fee which Plaintiff states "unfairly imposes undue financial hardship upon low-income tenants." (*Id*. at 38, ¶ 186). Finally, Count IX alleges that the 10% late fee, and the Defendants' refusal to amend the lease to lower the late fee, constitutes unjust enrichment. (*Id*. at 40–41, ¶¶ 201–09). For all counts, Plaintiff seeks compensatory and punitive damages, declaratory, preliminary, and permanent injunctive relief, reasonable attorney's fees, and other such relief as the Court may deem just and equitable.

## II. LEGAL STANDARD

Defendants submitted an Answer to Plaintiff's Complaint asserting several affirmative defenses before filing a Motion to Dismiss. A Federal Rule of Civil Procedure 12(b) motion to dismiss must be filed before any responsive pleading. Because Defendants filed their motion to dismiss after filing an answer, their motion must be treated as a Rule 12(c) motion for judgment on the pleadings.[1] *Wyeth v. Ranbaxy Lab. Ltd.*, 448 F. Supp. 2d 607, 609 (D.N.J. 2006) ("A motion made after an answer is filed as a motion for judgment on the pleadings pursuant to Rule 12(c)."). Under Fed. R. Civ. P. 12(c), a court will grant judgment on the pleadings if, on the basis of the pleadings, "the moving party clearly establishes there are no material issues of fact, and that he or

---

[1] Plaintiff has filed a "Motion to Quash/Strike" (Doc. No. 34) Defendants' Motion to Dismiss because it was filed after Defendants' Answer and because it fails to comply with certain requirements of Local Civil Rules 7.1 and 7.2. However, it is routine for courts to treat motions to dismiss filed after an answer as Rule 12(c) motions for judgment on the pleadings, and there is no particular prejudice in this case from doing so. Similarly, Defendants' failure to strictly comply with the Local Rules has not prejudiced Plaintiff; indeed, he does not even attempt to claim that it has. (*See* Doc. No. 34-1 at 37–39). As such, Plaintiff's Motion to Quash/Strike will be denied.

she is entitled to judgment as a matter of law." *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 259 (3d Cir. 2008).

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) that alleges that the plaintiff failed to state a claim is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss. *Turbe v. Gov. of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991); *Wyeth*, 448 F. Supp. 2d at 609. Under the Rule 12(b)(6) standard, in order to survive a motion for judgment on the pleadings, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely contains "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" is insufficient to overcome dismissal. *Ashcroft*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007).

As Plaintiff is proceeding *pro se*, he is held to "less stringent standards" that he would be if represented by counsel. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation omitted).[2] Further, the Court is mindful of its "duty to construe [the] pleadings liberally and apply the applicable law, irrespective of whether [plaintiff has] mentioned it by name." *Rose v. Ortiz*, No. 14-1738, 2015 WL 9216589, at *1 (D.N.J. Dec. 16, 2015) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)).

## III. DISCUSSION

---

[2] Local Civil Rule 7.2 sets forth several requirements concerning the submission of affidavits and briefs, including that briefs "shall not exceed 40 ordinary typed or printed pages." Plaintiff has repeatedly disregarded these requirements. For example, his brief in support of his motion to strike is forty-five pages long (Doc. No. 17), and his brief in support of his Cross-Motion to Strike is eighty pages long (Doc. No. 34-1). Further, the Cross-Motion was filed on October 15, 2019, well after the September 23, 2019 deadline to respond to Defendants' Motion to Dismiss. Although Plaintiff's violations of the Local Rules entitle the Court to disregard his submissions, in light of Plaintiff's *pro se* status, the Court will accept them. But going forward, Plaintiff and Defendants must strictly comply with the requirements of the Local Rules or be prepared to face the consequences.

Of Plaintiff's large number of legal claims, only one has any merit. The Court begins with this claim, asserting a violation of the FDCPA against Defendants Travis J. Richards and Weisshoff & Richards, LLC. Next, the Court examines Plaintiff's remaining federal claims, under Section 1983 and the FHA. Finding these claims lacking, the Court then assesses Plaintiff's state law claims for defamation, fraud, retaliation, and unjust enrichment.

### A. FDCPA Claim

Plaintiff alleges that Defendants violated the FDCPA when they failed to suspend their collection efforts once Plaintiff disputed his debts. (Compl. at 19, ¶ 86). Under the FDCPA, debt collectors are required to provide certain information to consumers when they initiate communication with them, including a statement that if the consumer disputes the debt within thirty days of the receipt of the notice, the debt collector will obtain verification of the debt and provide such verification to the consumer. 15 U.S.C. § 1692g(a)(4). Once the consumer disputes the debt, the debt collector must cease collection activity until it mails the consumer the required verification of the debt. 15 U.S.C. § 1692g(b).

Plaintiff received a collection letter from Defendant Travis J. Richards on March 6, 2019. The letter contained the following language:

> [I]f, however, you dispute the debt or any portion thereof, in writing within the thirty (30) day period that begins with your receipt of this letter, the law requires us to suspend our efforts (through litigation or otherwise) to collect the debt until we mail the requested information to you. Once verification is mailed, we can resume collection efforts.

Doc. 1-2 at 32. This statement complies with the requirements of Section 1692g(a)(4) and accurately sets out a debt collector's obligations under 15 U.S.C. § 1692g(b).

Plaintiff states that he disputed the debt in "a timely memorandum" sent by email and postal mail on March 20, 2019. (Compl. at 19, ¶ 86). Plaintiff alleges that despite disputing the debts,

Defendants did not suspend their collection efforts, instead serving him with an eviction complaint on March 23. (Compl. at 19, ¶ 89). Defendants dispute the "timely" nature of Plaintiff's dispute of the debt but admit that they did not suspend collection efforts. (Def. Answer at ¶ 86). Defendants argue that whether or not they suspended their collection efforts, the claim must be dismissed as moot because the eviction action was dismissed in Plaintiff's favor on April 25, 2019, meaning Plaintiff has not pled any actual injury. (Doc. No. 23-2 ("Def. Brief") at 9–10).

To succeed on a claim under the FDCPA, the "plaintiff must prove that (1) [he] is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a "debt" as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). Under the FDCPA, a "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money . . . [is] primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).

As provided by 15 U.S.C. § 1692a(6), a "debt collector" is "any person who uses any instrumentality of interstate commerce . . . the principal purpose of which is the collection of any debts." Therefore, in order for Defendants to be debt collectors, Plaintiff's rental payments must be a "debt" within the meaning of the FDCPA. The Third Circuit has articulated a three-prong test to determine whether an obligation is a "debt." *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 360–61 (3d Cir. 2018). The first requirement is that the obligation arise out of a transaction that is a "consensual exchange." *Id.* (quoting *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 400 (3d Cir. 2000)). Second, "we identify . . . what it is that is being rendered in exchange for the monetary payment." *St. Pierre*, 898 F.3d at 361. Third, "we consider the characteristics of that 'money, property, insurance, or services' [exchanged] to ascertain whether

they are 'primarily for personal, family, or household purposes.'" *Id.* (quoting 15 U.S.C. § 1692a(5)).

Under this test, Plaintiff's back rent can be considered a "debt" for the purposes of the FDCPA because it emerges out of a consensual lease agreement, the exchange is of money for rental property, and because the rental agreement is for Plaintiff's personal household purposes. *See Crenshaw v. Computex Info. Servs., Inc.*, No. 10-1493, 2011 WL 1640175, at *4–5 (D.N.J. Apr. 30, 2011) (finding that law firm attempting to collect back rent was a debt collector under the FDCPA); *see also Romea v. Heiberger & Assoc.*, 163 F.3d 111, 115 (2d Cir. 1998); Hodges v. Sasil Corp., 915 A.2d 1, 7 (N.J. 2007) (holding that "any law firm that regularly files summary dispossess actions for nonpayment of rent is a debt collector").

Of the numerous Defendants in this case, only Defendants Weisshoff & Richards, LLC and Travis J. Richards as an individual appear to be debt collectors under the FDCPA. Indeed, Travis J. Richards himself classified Weisshoff & Richards, LLC, as a debt collector in his March 6, 2019 letter to plaintiff. (Doc. No. 1-2 at 32). Further, an individual attorney acting within a firm can be held liable for violations of the FDCPA where the individual "exercise[s] control over the affairs of a business" in collecting a debt. *Piper v. Portnoff Law Associates*, 274 F. Supp. 2d 681, 690 (E.D. Pa. 2003) (citing *Pollice*, 225 F.3d at 405 n. 29); *see also Heintz v. Jenkins*, 514 U.S. 291, 299 (1995) (holding that the term 'debt collector' applies to "attorneys who 'regularly' engage in consumer-debt-collection activity"); *Rosenau v. Unifund Corp.*, 539 F.3d 218, 223 (3d Cir. 2008) (noting that "the categories of 'debt collector' and 'attorney' are not mutually exclusive'). Consequently, Travis J. Richards may be individually liable under the FDCPA because he exercised control over the firm's affairs and individually signed the debt collection letters to Plaintiff.

Finally, Plaintiff has sufficiently alleged that Weisshoff & Richards, LLC and Travis J. Richards violated the FDCPA by failing to suspend their collection efforts after he disputed the debt, in violation of 15 U.S.C. § 1692g(b). Although Defendants' violation may seem inconsequential given that the underlying eviction action was eventually dismissed, courts have repeatedly emphasized that Section 1692g is violated if collection activity continues after the consumer disputes the debt, regardless of the outcome of that collection activity. *See Leeb v. Nationwide Credit Corp.*, 806 F.3d 895, 898 (7th Cir. 2015) (finding FDCPA violation where debt-collector sent another letter seeking to collect debt after debtor disputed debt in writing); *see also Jones v. U.S. Bank Nat. Ass'n*, No. 10-C-0008, 2011 WL 814901, at *4 (N.D. Ill. Feb. 25, 2011) ("Courts addressing the issue of accrual under §1692g(b) have found . . . the FDCPA places no time limit on a debt collector's verification of an outstanding debt, but . . . prohibits any debt collection activity until verification occurs." (internal quotation omitted); *Spencer v. Henderson-Webb, Inc.*, 81 F. Supp. 2d 582, 593 (D. Md. 1999) ("The FDCPA's time sequence is quite clear: (1) the consumer disputes the debt; (2) the debt collector ceases collection; and (3) must continue to cease collection until the debt collector verifies the debt and mails a copy of the verification to the consumer.").

Rather, the real issue not whether Plaintiff's claim is moot but whether he incurred concrete harm so as to have Article III standing. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (noting that a "bare procedural violation, divorced from any concrete harm, [cannot] satisfy the injury-in-fact-requirement of Article III"). Although Plaintiff does allege a violation of the FDCPA's procedure, procedural violations often produce concrete injury. *See Pisarz v. G.C. Servs. Ltd. P'ship.*, 2017 WL 1102636, *3 (D.N.J. Mar. 24, 2017) (noting that "since *Spokeo* was decided, the overwhelming majority of courts that have faced Article III standing challenges in FDCPA cases

have determined that a violation of the FDCPA produces a 'concrete injury'"). Indeed, "an allegation of an omission of a required disclosure under the FDCPA is a concrete and particularized injury." *Id*. at *6 (citing *Church v. Accretive Health, Inc.*, 654 F. App'x 990 (11th Cir. 2016)). By pleading a violation of Section 1692g(b), Plaintiff is effectively alleging that Defendants failed to disclose evidence of his debt to him before continuing collection activity. And as Plaintiff has alleged that Defendants denied him information he was legally entitled to, which he needed to assess his legal liability, he has alleged a concrete and particularized harm, satisfying Article III.

### B. Section 1983

Plaintiff attempts to bring a number of constitutional claims against Defendants under Section 1983. All of these claims fail because Plaintiff has not alleged sufficient facts to prove that any Defendant was acting under color of law as required by Section 1983.

To establish a violation of 42 U.S.C. § 1983, a plaintiff must demonstrate that the challenged conduct was committed by (1) a person acting under the color of state law and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255–56 (3d Cir. 1994). The standard for satisfying the "under color of law" requirement in Section 1983 cases is effectively the same as for demonstrating state action under the Fourteenth Amendment. *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 169 n.1 (3d Cir. 2004) (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)). The plaintiff bears the burden of proof to establish that a defendant was acting under the color of law. *Groman*, 47 F.3d at 638. If the record does not reflect that the defendant acted under color of state law when engaging in the alleged misconduct, a civil rights claim under Section 1983 fails as a matter of

jurisdiction, *Polk County v. Dodson*, 454 U.S. 312, 315 (1981), and there is no need to determine whether a federal right has been violated. *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982).

Defendant Haddon Point Manager, LLC, is a private landlord, and the remaining defendants are agents of private corporations. Plaintiff has not alleged any facts to suggest that any Defendant is a state actor. His complaint merely states that "the conduct of Defendants . . . constitutes conduct under the color of state law". (Compl. at 20, ¶ 94). Such a "bare assertion" is "nothing more than a 'formulaic recitation of the elements'" of a claim and is insufficient to establish a claim that any Defendant is a state actor. *Ashcroft*, 556 U.S. at 681. Because Plaintiff has not sufficiently alleged that any Defendant is a state actor, all of his various Section 1983 claims fail.

### C. FHA

In Count VIII, Plaintiff alleges that Defendants' 10% late fee and Defendants' refusal to modify the payment date on his lease agreement violate the FHA. (Compl. at 37–38, ¶ 184–193). Section 3604(b) of the FHA prohibits discrimination "in the terms, conditions, or privileges of" the rental or sale of housing on the basis of "race, color, sex, familial status, or national origin." 42 U.S.C. §3604(b). To set out a prima facie case of discrimination under Section 3604(b), a plaintiff must allege "that the challenged actions were motivated by intentional discrimination or that the actions had a discriminatory effect on a protected class, regardless of motivation." *Mitchell v. Walters*, 2010 WL 3614210, *18 (D.N.J. Sept. 8, 2010) (citing *Cmty. Svcs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 176 (3d Cir. 2005)). Where "a plaintiff relies on indirect evidence of discrimination," she generally must allege "circumstances supporting a plausible inference of discrimination." *Curto v. A Country Place Condo. Ass'n*, 921 F.3d 405, 410 n.3 (3d Cir. 2019).

Plaintiff's complaint states that he is an "adult black male." (Compl. at 2, ¶ 1). As such, he is a member of a protected class on the basis of his race. *See, e.g., Koorn v. Lacey Twp.*, 78 F. App'x 199, 207 (3d Cir. 2003) (finding that the African American and Hispanic plaintiffs "are racial minorities" and as such satisfied the protected class membership prong of a *prima facie* case for discrimination under the FHA). However, Plaintiff has not alleged any facts to suggest that Defendants discriminated against him on the basis of his race, nor that Defendants' actions had a discriminatory effect on African-Americans. His complaint under the FHA merely alleges that Defendants' 10% late fee is "unreasonable," and that by accepting his financial aid as a form of payment, defendants "should have known" of the risk that his payments would be late. (Compl. at 38, ¶¶ 185, 189). Because the FHA is not a vehicle for general lease reformation, Plaintiff's FHA claims fails.

### D. Defamation

Plaintiff's claim for Defamation arises out of his allegation that by including an incorrect debt of $13.22 in its eviction complaint—when the correct amount was $14.11—which was then "published" by the court into the public record, Defendants brought him into "public scandal and disgrace." (Compl. at p. 24.¶113, p. 29, ¶ 138). Under New Jersey law, defamation is defined as, "(1) a defamatory statement of fact; (2) concerning the plaintiff; (3) which was false; (4) which was communicated to a person or persons other than the plaintiff; (5) with actual knowledge that the statement was false or with reckless disregard of the statement's truth or falsity or with negligence in failing to ascertain the truth or falsity; and (6) which caused damage." *Santosuosso v. NovaCare Rehab.*, 462 F. Supp. 2d 590, 600 (D.N.J. 2006) (internal quotation omitted). Plaintiff's pleading on this point is wholly conclusory, but his most severe failing is his inability to concretely explain how Defendants' misstatement of the amount owed on his water bill has

14

injured him. As such, Plaintiff has failed to satisfy the pleading standard and his claim must therefore be dismissed.

### E. Fraud

Plaintiff alleges that Defendants' aforementioned conduct misstating his water bill by $0.89 constitutes fraud. A claim of common law fraud must allege "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Triffin v. Automatic Data Processing, Inc.*, 926 A.2d 362, 368 (N.J. Super. Ct. App. Div. 2007). Under Federal Rule of Civil Procedure 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).

While Plaintiff has pled some of the elements of a fraud claim, he has not plead all of them, and certainly not with particularity. To start, Plaintiff has not explained how Defendants *materially* misstated his water bill by listing it as $13.22 instead of $14.11. And perhaps more importantly, Plaintiff has not plead that he relied on this representation, nor that this reliance resulted in any damages. For better or for worse, a minor billing error is not a tort, especially when it does not lead to any perceptible harm.

### F. Retaliation

Plaintiff claims that Defendants retaliated against his right to petition and right of access to courts by filing a second eviction proceeding against him after Plaintiff refused to withdraw his post-judgment motions relating to the first eviction proceeding. Plaintiff states that on May 7, 2019, Defendants mailed a letter to Plaintiff requesting that he withdraw his post-judgment motions scheduled for May 16, 2019. (Compl. at 31, ¶ 150). Plaintiff's post-judgment motions

sought to hold Defendants in contempt for not cancelling the late fees that were the subject of the first eviction case, sought to "enjoin [D]efendants to reduce the 10% late . . . fees," and to "enjoin [D]efendants from all collection activities because the underlying eviction action was dismissed," and to "award Plaintiff attorney fees." (Compl. at 31, ¶ 149). On May 15, 2019, Plaintiff emailed Defendants and stated that he would not withdraw his motions. (Compl. at 32, ¶ 151). On May 15, 2019, Defendants filed their second eviction action against Plaintiff. (Compl. at 32, ¶ 153). Therefore, "Plaintiff believes" that Defendants "conspired" to file this second eviction complaint in retaliation for Plaintiff's refusal to withdraw his motions. (Compl. at 32, ¶154). Plaintiff states that Defendants' actions have "negatively impacted" his "constitutionally protected interest to his continued housing," but does not specify any damages that he incurred as a result of the alleged retaliation. (Compl. at 33, ¶ 161).

Plaintiff seems to fashion his retaliation claims as violations of his constitutional rights. (Compl. at 31, ¶ 157, 161). But as discussed above, Defendants are fully private actors, and therefore are not bound by the constitution. Rather, Plaintiff's retaliation claim is perhaps best construed as invoking the New Jersey Tenant Reprisal Act (or the Tenant Anti-Reprisal Act), N.J.S.A. 2A:42-10.10. But even so fashioned, Plaintiff's claim fails.

As a threshold matter, a claim under the Tenant Reprisal Act must allege that the Plaintiff sustained damages as a result of the landlord's retaliation. *See Onderdonk v. Presbyterian Homes*, 425 A.2d 1057, 1067–68 (N.J. 1981) ("There is no evidence that [Plaintiff] suffered any injury. In the absence of damages, this claim must fall . . . the Landlord Tenant Anti-Reprisal Act, even if applicable, was not violated because no damage was shown."); *Harmon v. Biltmore Realty Co., LLC*, No. A-2186-16T2, 2018 WL 5091900, at *5 (N.J. Super. Ct. App. Div. Oct. 19, 2018) (same).

Since Plaintiff has not alleged any specific injury or damages as a result of this conduct, his pleading fails to state a claim under N.J.S.A. 2A:42-10.10 and must therefore be dismissed.

### G. Unjust Enrichment

Plaintiff claims that Defendants' 10% late fee constitutes unjust enrichment because it is higher than the New Jersey standard 5% late fee, and because Defendant refused to amend his lease to lower the late fee rent and to change the date upon which his rent is due. To state a claim for unjust enrichment, a plaintiff must allege: "'(1) that the defendant has received a benefit from the plaintiff, and (2) that the retention of the benefit by the defendant is inequitable.'" *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 519 (D.N.J. 2009) (quoting *Wanaque Borough Sewerage Auth. v. Twp. Of W. Milford*, 677 A.2d 747, 753 (N.J. 1996)), *aff'd*, 374 F. App'x 341 (3d Cir. 2010). "Where a valid contract governs the parties' rights and obligations, a party cannot bring a claim for unjust enrichment." *Melville v. Spark Energy, Inc.*, No.15-8706, 2016 WL 677563, at *5 (D.N.J. Nov. 15, 2016) (citing *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 311 (3d Cir. 1982)). In such an instance, the express contract binds the parties, and the court has no grounds from which to find an implied promise concerning the same subject matter. *See Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 227 (3d Cir. 1983). Plaintiff accepts the validity of his lease agreement, and therefore that agreement governs. Consequently, his claim for unjust enrichment must be dismissed.[3]

## IV. MOTION FOR RECONSIDERATION

Plaintiff moves for reconsideration of the Court's August 6, 2019 Order (Doc. No. 15) denying his Motion for a Temporary Restraining Order ("TRO") (Doc. No. 6). In his TRO Motion,

---

[3] Plaintiff's claim for "substantial waste of time" must be dismissed because "substantial waste of time" is not a cognizable cause of action.

Plaintiff sought a TRO or preliminary injunction striking down Defendants' 10% late fee policy and reformation of his lease agreement. Such relief will issue only if "(1) the plaintiff shows that it is likely to succeed on the merits; (2) the plaintiff establishes that it is likely to suffer irreparable harm absent issuance of the injunction; (3) the balance of equities does not disfavor granting an injunction; and (4) public interest concerns do not outweigh the interests advanced by issuance of the injunction." *Fres-co Systems USA, Inc. v. Hawkins*, 690 F. App'x 72, 75 (3d Cir. 2017). At a hearing held on August 6, the Court denied Plaintiff's motion, finding that he was unlikely to succeed on the merits of his claims.

Motions for reconsideration are governed by Local Civil Rule 7.1(i), which allows a party to seek reconsideration by the court in matters that the party believes the judge has "overlooked." *Carney v. Pennsauken Twp. Police Dep't.*, No. 11-7366, 2013 WL 4501454, at *1 (D.N.J. Aug. 21, 2013); *Church & Dwight Co. v. Abbott Labs.*, 545 F. Supp. 2d 447, 449 (D.N.J. 2008). "The standard for reargument is high and reconsideration is to be granted only sparingly." *Yarrell v. Bartkowski*, Civ. No. 10-5337, 2012 WL 1600316, at *3 (D.N.J. May 7, 2012) (citing *United States v. Jones*, 158 F.R.D. 309, 314 (D.N.J. 1994)). To be successful on a motion for reconsideration, a petitioner has the burden to demonstrate: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). A motion for reconsideration is not a vehicle for raising new arguments.

As Plaintiff admits, the primary basis for his motion for reconsideration are new cases that he did not submit to the court when he initially filed for a TRO. (Doc. No. 22 at 2). Whatever the merit of the arguments he derives from these new cases, they cannot be raised on a motion for

reconsideration because such a motion may address only those matters of fact or issues of law which were presented to, but not considered by, the court in the course of making the decision at issue. *See, e.g.*, *Fellenz v. Lombard Inv. Corp.*, 400 F. Supp. 2d 681, 683 (D.N.J. 2005). Plaintiff also argues that he is entitled to reconsideration because "Defendant have now admitted in their Answer to this Court that they are Section 8 Housing." (Doc. No. 22-2 at 2), but this supposed admission seems utterly irrelevant because Plaintiff nowhere contends that he is a Section 8 participant.

Further, the Court's decision on Defendants' Motion to Dismiss makes clear that its denial of Plaintiff's TRO Motion was correct. As discussed above, the only claim on which Plaintiff has any chance of success on the merits is his FDCPA claim. Since success on that claim would not entitle Plaintiff to relief from the 10% late fee or general reformation of his lease agreement, Plaintiff has no chance of obtaining such relief, at least based on his existing Complaint. Consequently, Plaintiff's Motion for Reconsideration will be denied.[4]

## V. CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**, such that only Plaintiff's FDCPA claim against Travis J. Richards and Weisshoff & Richards, LLC survives and his remaining claims are **DISMISSED WITHOUT PREJUDICE**; Plaintiff's Motion to Strike Affirmative Defenses from Defendants' Answer is **DENIED**; Plaintiff's Motion for Leave to File a Reply against Defendants' Answer is **DENIED**; Plaintiff's Motion for Reconsideration is **DENIED**; and Plaintiff's Cross-Motion to Quash/Strike

---

[4] Plaintiff has also filed a Motion to Strike Defendants' Affirmative Defenses (Doc. No. 17) and a Motion for Leave to File a Reply to Defendants' Answer (Doc. No. 21). "A court should not grant a motion to strike a defense unless the insufficiency of the defense is clearly apparent." *Cipollone v. Liggett Grp., Inc.*, 789 F.2d 181, 188 (3d Cir. 1986). Plaintiff has not shown that any of Defendants' defenses are clearly insufficient, and therefore this motion must be dismissed. Similarly, Plaintiff has not shown any coherent justification for why a reply to Defendants' Answer is necessary, and as such this motion will be denied.

is **DENIED**. Plaintiff may file a motion to amend his Complaint on or before March 11, 2020; any proposed amended complaint must comply with this Opinion and Federal Rule of Civil Procedure 8, and his motion must comply with Local Civil Rule 15.1.


Dated: 2/25/2020　　　　　　　　　　　　　　　　　　/s/ Robert B. Kugler
　　　　　　　　　　　　　　　　　　　　　　　　　　ROBERT B. KUGLER
　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge