**IN THE UNITED STATES DISTRICT COURT OF NEW JERSEY (CAMDEN)**

================================================================

| | | |
|---|---|---|
| Michael O. Livingstone | : | |
| *Plaintiff* | : | Civil Case No. **19-13412-RBK-AMD** |
| v. | : | |
| Haddon Point Manager, LLC., et al. | : | |
| | : | (Incorporating the outcries and prayer of plaintiff to the Court and Judge Kugler) |
| *Defendants* | : | |

================================================================

**CERTIFICATION-MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT** [1]

================================================================

## I.    INTRODUCTION

Preliminarily, Plaintiff extends his gratitude to the Court and Honorable Judge Robert Kugler for his attention to this matter, his recent systematic adjudication of the initial pleadings, and his efforts about this case for justice sake. There are new factual pleadings and injuries within the attached proposed amended complaint that may interest the Court for justice sake.

## II.    CERTIFICATION

1.    I, Mr. Michael O. Livingstone ("Plaintiff" or "Livingstone") hereby declare that I am of full age.

2.    I am a young adult black male Citizen of the United States of America.

---

[1]    Plaintiff has very limited access to computer and printing because of the pandemic shutdown of businesses and his University and so since this is procedural motion with certification and Memorandum of Law combo, and not a full-blown legal brief, Plaintiff did not include Table of Contents and table of Authorities

*Certification- Memo of Law in support of Plaintiff's motion for leave to amend initial complaint.*

3.      I am constitutionally-at-will proceeding pro se in the above-captioned matter and I have moved this Court to appoint *pro bono* counsel for me (ECF No. 37).

4.      I possess, and hereby, demonstrate full knowledge of the facts and Law set forth herein to the best of my ability.

5.      This certification supports my instant motion for leave to amend my initial complaint.

6.      Plaintiff invokes the scepter of justice of this Court against the sadistic behavior and defendants' *pattern* of reckless disregard to the Law, especially against the FDCPA, that led to Plaintiff's wrongful eviction from housing in October 2019 to homelessness and despair.

## III.     PROCEDURAL, FACTUAL BACKGROUND & EXCUSABLE NEGLECT

Plaintiff incorporates herein by reference the docket entries. Plaintiff states succinctly as follows:

Around February 25, 2020, this Court denied defendants' motion to dismiss Plaintiff's initial Complaint in part and granted it in part *without prejudice* (ECF Nos. 40 & 41). The Court allowed Plaintiff up to March 11, 2020 to file amended complaint. On March 11, 2020, Plaintiff initially filed a timely request for extension up to March 13, 2020 due to illness and attaching a medical note (ECF No. 44) and the Court generously granted it (ECF No.45). Due to unforeseen restrictions and lockdowns orders of Hospitals and restriction ordered by both Pennsylvania and New Jersey Governors and Mayors caused by the national Coronavirus pandemic, Plaintiff is filing an addendum to ECF No. 44 for the extension to be applied towards March 26-27, 2019 instead.

*Certification- Memo of Law in support of Plaintiff's motion for leave to amend initial complaint.*

## IV.    LEGAL ARGUMENTS

### a) STANDARD OF REVIEW: Amendment will not be futile under Rule 12(b)(6).

This Court did not abuse its discretion in ECF Nos. 40-41 because the Court itself ordered Plaintiff to file a motion for leave to file amended complaint because dismissing a first *pro se* complaint without giving leave to amend would be abuse of discretion. In general, Fed. R. Civ. Proc. 15(a) governs amendments to pleadings and this Rule provides that "leave shall be freely given when justice so requires." Plaintiff's burden on a motion for leave to amend a Complaint under Fed. R. Civ. P. 15 is not high, and the decision to grant leave to amend should not become a quarrel between the parties at all. *See* Fed. R. Civ. P. 15(a) (2) (declaring that "The court should freely give leave [to amend] when justice so requires"); *see also Foman v. Davis,* 371 U.S. 178, 182 (1962) (declaring that Rule 15's mandate to freely give leave to amend "is to be heeded").

In that contemplation, the Third Circuit Court of Appeals has repeatedly construed Rule 15(a) to require District Courts to liberally grant motions to amend, particularly where, as here, a good-faith motion is brought early in the proceedings and the amendment would not prejudice defendants. See *Long v. Wilson,* 393 F.3d 390, 400 (3d Cir. 2004) (declaring that "We have held that motions to amend pleadings should be liberally granted"); *see also Clinton v. Jersey City Police Dep't.,* 2017 WL 1024274, at *2 (D.N.J. Mar. 16, 2017) (Cecchi, J.) (noting that the Third Circuit "has shown a strong liberality in allowing amendments under Rule 15 in order to ensure that claims will be decided on the merits rather than on technicalities"). Towards that end, "[w]hen deciding whether to grant a motion in support of leave to amend pursuant to Rule 15(a)," there is a "general presumption . . . in favor of allowing a party to amend its pleadings."

*Certification- Memo of Law in support of Plaintiff's motion for leave to amend initial complaint.*

*Demmick v. Cellco P'ship,* 2008 WL 750547, at *1 (D.N.J. Mar. 19, 2008) (Cecchi, J.) (citing

*Del Sontro v. Cendant Corp., Inc.,* 223 F.Supp.2d 563, 576 (D.N.J. 2002)).

Consonant with these precincts undergirding liberality of pleadings, the Fourth Circuit

Court, for example, has made it as a "policy to liberally allow amendment in keeping with the

spirit of [Fed. R. Civ. P.] 15(a)." *Galustian v. Peter,* 591 F.3d 724, 729 (4th Cir. 2010) (citing

*Coral v. Gonse,* 330 F.2d 997, 998 (4th Cir. 1964)). The failure to grant leave to amend

constitutes abuse of discretion by the District Court and this presumption is especially strong

where the Plaintiff "had not yet amended as of right and the defendant had not filed a responsive

pleading." *Galustian,* 591 F.3d at 730.

However, leave to amend is not automatic. *Alvin v. Suzuki,* 227 F.3d 107, 121 (3d Cir.

2000) observing that the Court may deny a motion to amend where there is "undue delay, bad

faith . . . repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the

amendment." *Id.* Livingstone avers that none of these prongs are evident in this case because this

is the first time the Court ordered Plaintiff to file amended complaint and this is the first motion

to file proposed amended complaint, for example.

The Third Circuit has recognized that a motion for leave to amend may be denied when

the proposed amendment is futile, as for example, if a claim is barred by the statute of

limitations. See *Arab Africa Int'l Bank v. Epstein,* 10 F. 3d 168, 175 (3d Cir. 1993) (denying

leave to amend when RICO claim was time-barred); see also *Garvin v. City of Philadelphia,* 354

F. 3d 215, 222 (3d Cir. 2003) (affirming the District Court's denial of plaintiff's motion to

amend when plaintiff's amended complaint would not have survived a motion to dismiss in light

*Certification- Memo of Law in support of Plaintiff's motion for leave to amend initial complaint.*

of the statute of limitations). At bar, none of Plaintiff's five Counts in the proposed amended

complaint falls outside statute of limitations.

Amending a complaint will be considered futile if it "is frivolous or advances a claim or

defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imps., Inc.*,

133 F.R.D. 463, 468 (D.N.J.1990) (citations omitted). When making a determination whether an

amendment is insufficient on its face, Third Circuit jurisprudence utilizes the same standard as in

a Fed. R. Civ. Proc. 12(b) (6) motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114

F.3d 1410, 1434 (3d Cir. 1997) (citation omitted).

Under the framework of Rule 12(b) (6) analysis, the question is not whether the movant

will ultimately prevail. *Antoine v. KPMG Corp.*, 2010 WL 147928, at *6 (D.N.J. Jan. 6, 2010). If

a proposed amendment is not clearly futile, then denial of leave to amend is improper. *Meadows*

*v. Hudson County Bd. of Elections*, 2006 WL 2482956, at *3 (D.N.J. Aug. 24, 2006). "Generally,

a Court is not concerned with the question of whether the amended complaint would be barred

by the Statute of Limitations unless this fact appears clearly from the record." *Alfieri v. Willys*

*Motors Inc.*, 35 F.R.D. 194, 95 (E.D. Pa. 1964). In this case *sub judice*, statute of limitation

defense will be misplaced and rather frivolous defense.

Nevertheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations

omitted). Determination of whether a Complaint survives a motion to dismiss requires a two-part

analysis. *Folwer v. UMPC Shadyside*, 578 F.3d 203, 210 (3d. Cir. 2009).

*Certification- Memo of Law in support of Plaintiff's motion for leave to amend initial complaint.*

First, factual and legal elements of the complaint must be separated. *Folwer*, 578 F.3d at 210. All well-pleaded facts must be accepted as true, but legal conclusions may be disregarded. *Id.* at 210–11. Here, Livingstone has pled many facts with plethora of factual enhancements in the form of exhibits in support of the attached proposed amended complaint.

Second, the Court must make a determination whether Plaintiff's complaint articulates "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. Here, Livingstone avers that sufficient facts is not mathematically quantifiable by numbers. Instead, "a claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). This is a context-specific task that requires this Honorable "reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Instantly, Plaintiff has added new facts to the proposed Amended Complaint which this Court did not consider for Rule 56 conversion. When evaluating a possible objection by Defendants on grounds of futility, the Court may only consider the pleading, exhibits attached to the pleading, matters of public record, and undisputedly authentic documents if the claims are based on those documents. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1992).

Livingstone has crafted and presented the proposed amended complaint with factual exhibits attached to the pleading, matters of public record including adjudicative factual transcripts, and undisputedly authentic documents such as emails that would rather make it difficult and near impossible for Defendants to deny or to make any objections of futility to survive.

*Certification- Memo of Law in support of Plaintiff's motion for leave to amend initial complaint.*

### *Rule 8*

This Court's order also said Plaintiff's proposed amended complaint should comply with Rule 8. Plaintiff has attempted in good-faith to do so by reducing the page length from 140 to 63 pages. Plaintiff finds that any further editing might make the proposed amended complaint *unintelligible* for the Court.

Moreover, Plaintiff must plead all new claims on the face of the proposed amended complaint itself because as a general rule, the court may not consider anything beyond the four corners of the complaint under Rule 12(b)(6) standard. The Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Courts may consider any "'document integral to or explicitly relied upon in the complaint . . ..'" *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996))

In that vein, Plaintiff has prepared the proposed complaint by balancing Rules 12(b)(6) and Rule 8. If the Court appoints *pro bono* counsel for Plaintiff (still pending ECF No. 37), it is possible that the Attorney can present an artfully-crafted counseled amended complaint for Plaintiff.

### b) DEMONSTRATION THAT ALL FIVE COUNTS IN THE PROPOSED AMENDED COMPLAINT ARE NOT FUTILE.

### i) COUNT I-- Fair Debt Collections Practices Act ("FDCPA")

Amendment will not be futile because in ECF Nos. 40-41, this Court found merit regarding one of Plaintiff's allegations that during the first eviction complaint proceedings,

*Certification- Memo of Law in support of Plaintiff's motion for leave to amend initial complaint.*

Defendants-- especially Defendant Travis Richards-- did not pause the litigation and the collections efforts to address Plaintiff's memorandum disputing the debt. Instantly, Plaintiff has attached **Exhibit "R'** to show that both Defendants Richards and Beacher acknowledged receipt of Plaintiff's Memorandum disputing the debts in March 2019 long before the April 25 scheduled trial.

In addition to that meritorious claim, Plaintiff now pleads additional facts in the proposed amended complaint to buttress his claims under the FDCPA with other reckless and intentional violations involving the second and third eviction complaint proceedings as well and its collection letters.

The proposed amended complaint pleads new allegations that between September – October 2019, Defendants demanded and achieved Plaintiff's eviction from housing over a $12,000 additional rent debt (Ex. N. 2, Pages 13-16) that never appears on the third eviction complaint at all (Ex. M), for example. Meanwhile, Defendants never sent Plaintiff any collections letter at all to give Plaintiff thirty (30) days to dispute the $12, 000 as required by Law. Plaintiff demonstrates with evidential exhibits under COUNT I of the proposed amended complaint that there is a *pattern* of Defendants' reckless disregard about the provisions and safeguards of the FDCPA in this matter that should not go unpunished with punitive damages substantial enough to deter and enforce compliance.

Moreover, amending the complaint will not be futile because this Court opined in ECF Nos. 40 & 41 that Defendant Travis Richards may be liable under the FDCPA for his reckless disregard to the FDCPA's procedural safeguards during the first eviction and collections activities. Instantly, Plaintiff pleads in the proposed amended complaint (Pages 26-28 at ¶¶ 151-159) that none of the numerous defendants should be exonerated from liability because see *Com.*

*Certification- Memo of Law in support of Plaintiff's motion for leave to amend initial complaint.*

*Dep't of Transp. v. Shemer*, 629 A.2d 1063, 1066 (Pa. Cmwlth.1993) (observing that "an attorney is an agent of the client and the neglect of one is the neglect of the other"). Consequently, all of the defendants are liable – including the CEO, the Director, the Attorneys and their Law Firm, the Landlord all his limited liability companies.

Plaintiff cries out that there should be no hiding place for this Court's scepter of justice against any of the Defendants. Accordingly, Plaintiff has summoned all Defendants before this Court for justice. There is no hiding place for any of Defendants' recklessness, unlawful, and sadistic conduct against Defendant Travis Richards as their retained Attorney who failed to follow the commands of the FDCPA Law as it is. An attorney is an officer of the Court and should therefore set a good example for his clients by following the law for himself. Consequently, amendment is not futile for justice sake. Plaintiff refers the Court to the facts under Count I of the attached proposed amended Complaint.

**ii)    Section 1983 claims under COUNTS IV &V) are not futile**

Next, this Court's Order-opinion (ECF Nos. 40-41) dismissed without prejudice all of Plaintiff's claims under Section 1983 on grounds that Plaintiff did not plead facts on the face of the initial complaint for the private defendants to be held as state actors. Instantly, amendment will not be futile because Plaintiff has revised two of the section 1983 claims in the proposed Amended Complaint (COUNTS IV &V) by pleading new facts in Pages 52-54, ¶ 273 (i-ix)) for the Court to consider and hold the private defendants as state actors.

The determination of whether a private entity is a state actor is "necessarily a fact-bound inquiry." *Brentwood Academy v. Tennessee Secondary School Athletic Association, et al.*, 531 U.S. 288, 298 (2001). Plaintiff's proposed amended complaint pleads facts upon which this

*Certification- Memo of Law in support of Plaintiff's motion for leave to amend initial complaint.*

Court can hold the private defendants as state actors. It is well- established that "[S]tate action may be found if, though only if, there is such a 'close nexus between the state and the challenged action' that seemingly private behavior 'may be fairly treated as that of the state itself." *Id.* at 295 (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974)).

Specifically, Plaintiff moves this Court to review the factual allegations in the attached proposed Amended Complaint at Pages 52-54, ¶ 273 (i-ix)) and determine whether for the purposes of section 1983, the private defendants are State Actors. Plaintiff's proposed Amended Complaint and its adjudicative exhibits and records demonstrate the following: (i) defendants sufficiently conspired with the State of New Jersey; (ii) defendants acted jointly with the State; and (iii) defendants used the coercive and compulsive powers of the State to accomplish their sadistic and self-evident retaliatory eviction during the litigation and collections activities that ultimately led to Plaintiff's eviction from housing at Haddon Point Apartments.

Section 1983 claims are important to Plaintiff because the US Constitution is very important to Plaintiff. Either Defendants can make a mockery of the US Constitution and get away with it under the shield of "private action" or they must face dire legal consequences for their reckless disregard to constitutional commands. This federal Court has a mandate to protect and defend our sacrosanct US Constitution. Plaintiff invokes the scepter of justice of this Court for justice to be done under Constitutional Law of section 1983 by this Court. Plaintiff breaks down the delusional shield of "private entity" excuse shielding the private defendants from section 1983 liability by contending as follows:

Courts have characterized the determination of whether private behavior is state action as articulated in the US Supreme Court precedent, not as a test so much as a series of examples in a fact-based inquiry. *Hallinan v. Fraternal Order of Police of Chicago*, 570 F.3d 811, 815 (7th

*Certification- Memo of Law in support of Plaintiff's motion for leave to amend initial complaint.*

Cir. 2009). In *Hallinan*, the Court listed the following examples: when private actors conspire or are jointly engaged (*Dennis v. Sparks*, 449 U.S. 24, 27-8 (1980)); where a state compels discriminatory action; when the state controls a nominally private entity; when it is entwined with its management and control (*Evans v. Newton*, 382 U.S. 296, 299 (1966); when the state delegates a public function to a private entity; when there is such a close nexus between the state and the challenged action that seemingly private behavior reasonably may be treated as that of the state itself. *Id.* It appears from some cases that this fact-based inquiry boils down to a matter of degree of involvement and the relationship, nexus, entanglement, or entwinement between the state and the private entity must be on the precise issue of which Plaintiff complains.

There are four "tests" or "discernible situations" where the court will find state action despite the presence of a private party: (1) "symbiotic relationship" between the private actor and the State (*Burton*, 365 U.S. 715, 721 (1961)); (2) the "nexus test" where the State commands or encourages the private discriminatory action (*Rendell-Baker v. Kohn,* 457 U.S. 830, 840 (1982)); (3) when a private party carries on a traditional public function; and (4) when the involvement of governmental authority aggravates or contributes to the unlawful conduct. *Airline Pilots Assoc'n (ALPA),* 45 F.3d at 1149.

Moreover, Exhibit N.2 of the proposed amended complaint shows that the State compelled discriminatory action against Plaintiff during the third eviction proceedings against Plaintiff because Plaintiff's attorney Mr. Charles Izzo argued during the September 12, 2019 post trial hearing that Livingstone should be treated like every other tenant entitled to post-trial equitable relief upon filing his motion for order to show cause and paying all the rent:

> MR. IZZO:
> He's just asking for the same relief any other tenant gets. It is inequitable that he would be evicted. (Exhibit "N. 2," Page 8, Lines 1-3)

*Certification- Memo of Law in support of Plaintiff's motion for leave to amend initial complaint.*

Instead of eviction for "nonpayment of rent," on the third eviction Complaint, the State compelled the discriminatory action by allowing Haddon Point to reject the rent payment and evict Livingstone on grounds of "equity for filing this federal complaint" and other petitions against Defendants (Exhibit N.2, Pages 12-13, Lines 11-20 *et seq* to Page 13, lines 1). Accordingly, the private defendants acted jointly with the State to compel the discriminatory action that led to Plaintiff's eviction from housing; therefore, they are State actors.

### iii) No futility under COUNT III--N. J. S. A. 46:8-21.1 – Illegally-Withheld Security Deposit

Next, this is a new claim appearing on the face of the proposed amended complaint because it was not part of Plaintiff's initial federal Complaint filed on June 5, 2019.The actual injury happened in October 2019 (Exhibit Z). COUNT III of the proposed amended complaint will not be futile because Defendants have illegally -withheld Plaintiff's security deposit of $1,520 to pay themselves attorney fees no Court has awarded to them over the first eviction case docket in which Defendants did not prevail anyway (i.e. Exhibit "F"). Defendants unsuccessfully attempted to claim a $1000 of this amount during June 6, 2019 second eviction trial as "judgement of possession" and the State Court denied it on grounds of bad-faith and *doctrine of laches* (Exhibit "P," pp. 5-8). Instead of respecting the ruling of the Court, Defendants have taken it upon themselves to use Plaintiff's security deposit to pay themselves the $1000 attorney fees. Defendants trumpet a claim of entitlement to the $1000 as attorney fees because Plaintiff did not win his May 2019 post- judgment motions (Exhibit "O") although Plaintiff was the prevailing party in that same case docket dismissing the complaint at trial on April 25, 2019 (Ex. F). After Defendants' unsuccessful attempt to claim the $1000 for judgement for possession on June 6, 2019, Defendants now claim entitlement to the $1000 as "monetary damages." COUNT

*Certification- Memo of Law in support of Plaintiff's motion for leave to amend initial complaint.*

III of p try opposed amended complaint will not be futile because similar thing happened in the case of *Dawson v. Cross*, NJ: Appellate Div. (2017) (applying the *doctrine of laches* and holding that it was illegal for Landlord to pay himself late fees and other additional rent from a Tenant's Security deposit after the tenant vacated the property).

Moreover, Haddon Point has illegally witheld Plaintiff's $1000 attorney fees as monetary damages because it is well -established by the dictum of the New Jersey Supreme Court that "additional rent" can only be pursued for judgment for possession only, not for monetary damages. *See Green v. Morgan Properties*, 73 A.3d 478(N.J. 2013) (holding that additional rent and rent is only collectable for judgment for possession). The lease (Ex. A) characterizes the $1000 as "additional rent" which makes it collectable for "judgement for possession" *only*, not as monetary damages. Haddon Point was unsuccessful to claim it as judgement for Possession on June 6 trial. Yet, in October 2019, Haddon Point has illegally awarded itself the attorney fees and illegally withheld plaintiff's security deposit to pay it.

The question becomes whether the definition of "prevailing party" includes a party who won a "motion" without winning the actual case or complaint. Plaintiff contends that merely winning a motion does not make any party the prevailing party in a litigation at all. A Court awards attorney fees to the prevailing party. See *Pressler & Verniero*, Current N.J. Court Rules, comment 4.4.5 on R.1:10-3 (2012) (observing that the prevailing party is the party who prevails on the merits of the case itself); *see also N. Bergen Rex Transp.v. Trailer Leasing Co.*, 158 N.J. 561, 570 (1999) (citing *Singer v. State*, 95 N.J. 487, 494, *cert. denied*, 469 U.S. 832, 105 S. Ct. 121, 83 L. Ed. 2d 64 (1984)).

*Certification- Memo of Law in support of Plaintiff's motion for leave to amend initial complaint.*

Conversely, Haddon Point has awarded itself attorney fees and withheld it from Livingstone's security deposit despite their own admission that Plaintiff was the prevailing party. *See* Exhibit "P" at Page 5, Lines 8-10 (emphasis added) where Defendant Rotsides says:

> "…and we would ask this Court to consider that, yes, while it's **an unusual** request, he prevailed on April 25th."

Plaintiff brings this claim before this Federal Court because on July 18, 2019, the State Court advised Haddon Point to sue Plaintiff now or later for the Court to determine whether to award Haddon Point the $1000 or not. Instead of complying with the Court's admonition, Haddon Point rather chose to award themselves the $1000 attorney fees and withhold it from Plaintiff's security deposit.

Plaintiff therefore has to sue Haddon Point for the security deposit. Given that Plaintiff already has this federal case against Haddon Point in this Court, Plaintiff now brings that claim to this Court because one legal policy is to avoid "circuity of action" and settle related matters in one suit, *Scott v. Walter Kidde Portable Equip., Inc.,* No. 02-1460, 2002 U.S. Dist. LEXIS 15337, at *1 (E.D. Pa. Aug. 12, 2002).

As for the other $520 of Plaintiff's $1520 security deposit, Haddon Point has illegally withheld $405 from it in October 2019 (Exhibit Z). That is the same $405 additional rent payment that the same Haddon Point rejected in exchange for Plaintiff's eviction from housing in September 12, 2019 (Ex.N.2) and the Court ordered its return (Exhibit Y) to Livingstone. So, what has happened here is Haddon Point has obtained both Plaintiff's eviction from housing and the money at the same time. That is illegal.

*Certification- Memo of Law in support of Plaintiff's motion for leave to amend initial complaint.*

The statute N. J. S. A. 46:8-21.1 is clear that a landlord should be caused by a Court to pay **double** the amount of a tenant's security deposit if the Landlord illegally-withholds the security deposit.

Accordingly, this claim is not futile. Plaintiff will file a Rule 65 motion for preliminary injunction to disgorge the security deposit from Defendants.

**iii) No futility under**
**-COUNT II: New Jersey Tenant Anti-Reprisal Act (Section 2A:42-10.10 through 10.14)**
**-COUNT V:**
1) **42 U.S.C. § 1983 – Retaliation Under U.S. Constitution First Amendment Right To Petition;**
2) **NJ Const. § V, ¶ 2; and**
3) **NJ Const. Art. 1, ¶18**

Next, the proposed amended complaint brings this new claim. The Court opined in ECF Nos. 40 &41 that Plaintiff did not plead actual damages that Defendants' pattern of antagonism against his petitioning conduct and motion practice caused. Instantly, the proposed amended complaint now pleads this new claim alleging retaliatory actions that occurred leading to Plaintiff's eviction from Haddon Point apartments by Defendants in September – October 2019 — which happened after the initial complaint was filed last June 2019. Defendants sued in State Court to evict Plaintiff for "non-payment of rent" for July 2019 month and its additional rent (Ex. M). The Court tried that case on August 15, 2019 in the Landlord-Tenant Court. Plaintiff paid all the base rent $1,520 for July 2019 and June 2019 water bill before that trial. Plaintiff also paid intermittent August 2019 rent $1520 on time. Plaintiff paid the additional remaining rent of late fees and attorney fees and court fees for $405 and even subsequent September 2019 rent of $1520. It was no longer equitable to evict plaintiff as a matter of law. *Morristown v. Little*, 135 N.J. 274, 639 A.2d 286 (1994). Defendants rejected the additional $405 rent and Defendants rejected the September 2019 rent too (Ex. 3.F).

*Certification- Memo of Law in support of Plaintiff's motion for leave to amend initial complaint.*

There is direct evidence attached herewith showing that Defendants evicted Plaintiff in reprisal and retaliation for filing this federal lawsuit against them. Defendants demanded Plaintiff's eviction in equity for filing this federal Lawsuit against them as well as filing other State Court Appeals and motions. *See* the retaliatory utterance in Exhibit "N.2" at Pages 12, Lines 11-20 *et seq* to Page 13, lines 1. The attached adjudicative public record shows that defendants evicted Plaintiff in October 2019. (*See* generally Exhibits Y & W).

Instantly, Plaintiff pleads actual damages in the attached proposed Amended Complaint (*see* specifically Pages 44-46 at ¶¶ 235-242). The retaliatory "eviction from housing" itself was actual injury and harm that has caused severe irreparable damage that rendered plaintiff homeless and placed him at risk of illnesses and danger. Plaintiff can prove these damages and much more at trial.

COUNT II & IV can therefore not be futile because in the case of *Crowe v. De Gioia,* 447 A. 2d 173 - NJ: Supreme Court (1982) at 133, the Supreme Court of New Jersey observed that eviction from housing is actual irreparable damage because of the "trauma of eviction from one's home." *Id.*

The case law is clear that severe personal inconvenience can constitute irreparable injury. In the case of *Hodge v. Giese,* 43 *N.J. Eq.* 342, 350 (Ch. 1887) (one tenant temporarily granted right to enter other tenant's premises to service heater). Pecuniary damages may be inadequate because of the nature of the injury or of the right affected. *Outdoor Sports Corp. v. A.F. of L. Local 23132, AFL,* 6 *N.J.* 217, 229-30 (1951); *Scherman v. Stern,* 93 *N.J. Eq.* 626, 631 (E. & A. 1922).

*Certification- Memo of Law in support of Plaintiff's motion for leave to amend initial complaint.*

### iv)   Disclaimer against prejudice in exhibit N. 2

Plaintiff has presented Exhibit N. 2 to show direct evidence of Defendants' retaliatory statement over this federal complaint in Pages 12, Lines 11-20 *et seq* to Page 13, lines 1. Plaintiff beckons this Court not be prejudiced by other statements of State Court Judge Wells regarding his unfounded claim Plaintiff's "gamesmanship" and intentional "refusal to pay the rent." These are palpable abuses of discretion on the record for the State Appellate Court to reverse the judgement of possession because Plaintiff is not stupid person, as Judge Wells seems to think by making those shapeless statements. Plaintiff has also had it with Judge Wells' Court because of his repeated failure to go with the record and misconceptions. Reasonable minds will agree that only as stupid person and foolish student will intentionally choose not to pay their rent to be sued in Court for the rent and additional rent, not to mention the time wasted to sit in the landlord – tenant court waiting for a case to be called because unlike this federal court's punctuality with cases, although the summons says 8:30 am, Plaintiff sometimes had to wait in court for hours for the case to be called around 1:00 PM for example. Meanwhile, my classmates in School studying. Meanwhile, I have exams and academic research to do. Only a stupid person would choose not to pay rent intentionally to do that. At least, the record shows the first time I appeared before Judge Wells on April 25, 2019 for the first eviction trial, he saw great potential in me to the extent that he went out of his way during court session to urge me *repeatedly* to go to Law School (*see* generally Exhibit "F"). If I were a stupid foolish man, Judge Wells would not have discerned such potential in me out of the lot of people to urge me openly to go to Law School and now he eventually put me out homeless on the dangerous streets of America.

Plaintiff resents those highly prejudicial statements by Judge Wells because Plaintiff is a noble man not stupid. I have come very far immigrating to America with nobody and to Nobody

*Certification- Memo of Law in support of Plaintiff's motion for leave to amend initial complaint.*

and worked very hard to get my education and citizenship to make ends meet, for example. When Livingstone first arrived in America at JFK airport in NY in my early 20's and there was sudden power outage with nobody to receive me and welcome me to America at a young age, I had to use my intelligence and God's guidance to find my own way with bravity and valor in this land of the brave. No stupid person can do that. After coming thus far, it would be stupid for me to *intentionally* choose not to pay rent to spend my time sitting for hours in Landlord – Tenant Court while my classmates are studying and my aged dying parents in Africa looking up to me as their hope and bread winner. Plaintiff cannot wait for his day in court to appear for oral argument before the three- panel of Appellate Judges to move them to reverse the decisions of the Judge Wells for abusing his discretion. It is a matter of time and justice will be done.

To the credit of this federal District Court, Honorable Judge Kugler wrote a memorandum-opinion that refers to the record that Plaintiff's rent payments were late because of delayed financial aid payments from his University, as pleaded in the initial complaint with exhibits. It was not intentional that Plaintiff did not pay rent on time. There is documented cause.

As for the other unfounded prejudicial claims of "gamesmanship," the record does not show any gamesmanship on Plaintiff's part. Instead the records itself shows gamesmanship on the part of Defendants. The defendants summoned the Court for trial on April 25, 2019 (Exhibit "F") and Ms. Beacher and her attorney Defendant Rotsides had the audacity not to show up in Court by giving a rather shapeless excuse that she had "conflict of schedule with someone else," for example. Perhaps it was a meeting with someone else more important than the powers of the State of New Jersey Court and Judge Wells, forgetting that it is a civil duty to ignore everything else and honor a Court summoned date. After insulting the State Court with such an excuse, Defendant Rotsides had the audacity to advise her client to go against the ruling of the Court and

*Certification- Memo of Law in support of Plaintiff's motion for leave to amend initial complaint.*

demand the court- dismissed money from Plaintiff (Exhibits O & P). This rather shows the real

gamesmanship on the part of Haddon Point when Defendants insulted the powers of the Court

with that excuse and then they went against the ruling of the Court on top of it. Nothing in the

record shows any gamesmanship on Plaintiff's part.

So, plaintiff beckons this Federal Court not to be prejudiced by those parts of the

adjudicative factual record transcript within Exhibit N.2. Instead, Plaintiff beckons this federal

Court to re-focus its focus upon defendants' retaliatory statement for filing this federal lawsuit

(i.e. in Exhibit N.2 at Pages 12, Lines 11-20 *et seq* to Page 13, lines 1). That is the quintessential

retaliatory issue Plaintiff brings to this Federal Court.

To the retaliatory statement also takes issue with Plaintiff filing notices of appeal in State

Court to reverse the eviction too. This is retaliation against my right to appeal.

### v)    Prayer to Hon. Judge Kugler and this Federal Court.

On that note, Plaintiff prays to the Court and Honorable Judge Kugler for Justice to be

done. Plaintiff draws attention to the injury of a student's eviction from housing to street

homelessness in the snow and the ripple effects of the injury that the retaliatory eviction inflicted

upon Plaintiff including the inconvenience it presented to him as a graduate student and

immigrant -Citizen of the United States without any Family Support. Plaintiff is attaching exhibit

"J" as document from his other school —West Chester University of Pennsylvania (WCUPA)

where Plaintiff is facing civil trespass allegations of misconduct for sleeping in university

buildings because the University has written that they think Livingstone does not have stable

housing. Plaintiff is explaining himself to WCUPA to be exonerated because he caused no harm

and he accessed buildings with permission and general student access ID cards. Plaintiff is

*Certification- Memo of Law in support of Plaintiff's motion for leave to amend initial complaint.*

student at WCUPA completing prerequisite science classes for admission to dual Doctorate degree in Neuroscience and Law (PhD-JD) at Vanderbilt University, Tennessee. The eviction appears on plaintiff's rental history which has prevented other landlords from giving him Housing. So, talking about "actual injury" caused by the Haddon Point reprisal, there is so much and here is just one proof. Plaintiff therefore invokes the scepter of Justice against these wicked and heartless money-hungry Defendants.

Plaintiff cries out before the Honorable Judge Kugler who is not a heartless Judge that let there be justice over this. Let Defendants' gross wickedness and greed for eviction over a "$405" money that was paid and rejected for plaintiff's "eviction in equity for suing them in this federal court" never escape your scepter of Justice unpunished. Defendants, all of them, should not escape justice. Even $ millions cannot compensate for this and Defendant Delco, the parent corporate entity, should be able to pay the $ millions in punitive damages by *respondeat superior* or *vicarious liability* for the unlawful and sadistic acts of Defendants and the Attorney-Defendants they retained.

## CONCLUSION

Based on the foregoing, the proposed amended complaint, exhibits thereto, Plaintiff's five claims will not be futile. Plaintiff respectfully move this Court to grant his motion for leave to amend the Complaint. If this Court finds that any of the five Counts will be futile, then plaintiff requests that the Court permit him to eliminate that Count and file the amended complaint without it.

Respectfully Submitted,

*Certification- Memo of Law in support of Plaintiff's motion for leave to amend initial complaint.*

Michael O. Livingstone, *pro se*
P.O. Box 34246
Philadelphia, Pennsylvania 19101.
Telephone: 856-356-2224
Email: mikeosei@gmail.com

Dated: March 25, 2020

## CERTIFICATE OF SERVICE

I, Michael O. Livingstone, hereby certify that around March 25, 2020, I filed this

Document with the Court. Thereafter, I caused to be served a true and correct copy of the

foregoing to be served by United States Postal Service postal mail/email upon the Attorney (s)

for Defendants at the following address:

Travis Richards, Esquire & Nicolas Rotsides, Esquire
Weishoff and Richards, LLC.
141 High Street
Mount Holly, New Jersey 08060
Emails: nick@wr.legal;
weishoffandrichards@gmail.com

Respectfully Submitted,

Michael O. Livingstone, *pro se*
P.O. Box 34246
Philadelphia, Pennsylvania 19101

Email: mikeosei@gmail.com
Telephone: 856-676-6951

Dated: March 25, 2020