# *FORM* AMENDED COMPLAINT

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED
2020 MAR 27 P 2: 29

## (Loc. Civ. R. 15.1(a) (1)

## With strikethroughs and underlines.

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY
### (CAMDEN COURTHOUSE)

===============================================================================

**MICHAEL O. LIVINGSTONE**                   :    *Jury Trial Demanded*

                *Plaintiff*                   :

            **v.**                   :    **Civil Case No.13412-RBK-AMD**

**HADDON POINT MANAGER, LLC.,**                   :
being sued as Manager and Landlord of                   :
Haddon Point Apartments;                   :
                       :
**HADDON POINT URBAN RENEWAL, LLC.,**                   :
being sued as owner of Haddon Point Apartments;                   :

**DELCO DEVELOPMENT LLC.,**                   :
being sued as business entity owner
of Haddon Point Apartments;                   :
                       :
**TOM JULIANO,**                   :
being sued individually and in his official capacity as                   :
CEO of Delco Development, LLC,                   :
Owner and Landlord of Haddon Point Apartments;                   :
                       :
**WEISSHOFF & RICHARDS, LLC.,**                   :
being sued in official capacity as                   :
a Law Firm and Debt Collector for                   :
Haddon Point Manager, LLC;                   :
                       :
**NINA BEACHER,**                   :
being sued individually and her official capacity as                   :
Director of Residential Development at                   :
Haddon Point Apartments & Agent of                   :
Landlord of Haddon Point Apartments;                   :
                       :
**TRAVIS J. RICHARDS, ESQUIRE,**                   :
being sued individually and his official capacity                   :
as Attorney and Debt Collector for                   :
Haddon Point Manager, LLC,                   :
                       :
**NICOLAS G. ROTSIDES, ESQUIRE,**                   :
being sued individually and in his official capacity                   :
as Attorney and Debt Collector for                   :
Haddon Point Manager, LLC.

*Defendants*

**FORM AMENDED COMPLAINT (Loc. R. Civ. Proc. 15.1(a) (2)**

*Form Amended Complaint With Strikethroughs and Underlines*

Plaintiff Mr. Michael O. Livingstone ( "Plaintiff" or "Livingstone") proceeding *pro se*, by way of this Federal Complaint against Defendants Haddon Point Manager, LLC., and all the other above-named Defendants ("Haddon Point" or "Defendants") states as follows:

## A.    PARTIES & ADDRESSES

*1.*     Plaintiff, **Mr. MICHAEL O. LIVINGSTONE**, is an adult black male Citizen of the United States of America and resident of ~~the State of New Jersey~~ Pennsylvania. Plaintiff maintains an address at: P.O. Box 34246, Philadelphia, Pennsylvania 19101.

*2.*     Defendant, **HADDON POINT MANAGER, LLC**, is a business entity being sued in its official capacity as a Landlord, Creditor, Property Manager, Landlord, agent of Haddon Point Apartments (Exhibit "A," page 1, Exhibits D, E) and maintains an address at:

2100 Haddonfield Road, Pennsauken, New Jersey 08110.

*3.*     Defendant, **HADDON POINT URBAN RENEWAL, LLC.**, is a business entity being sued as sister company of Haddon Point Manager, LLC and business owner of Haddon Point Apartments (Exhibit A, p.1) and maintains an office address at:

200 Campbell Drive, Suite 200, Willingboro, New Jersey 08046

*4.*     Defendant, **WEISSHOFF & RICHARDS, LLC**, is being sued individually in its official capacity as a Law Firm that represents defendant Haddon Point Manager, LLC, and has been held as a Debt Collector. *See* 15 USC 1692a § 803(6); *see* also *Hodges v. Feinstein*, 189 N.J. 210 (2007). Defendant WEISSHOFF & RICHARDS, LLC, maintains an office address at:

141 High Street, Mount Holly, New Jersey 08060.

*Form Amended Complaint With Strikethroughs and Underlines*

5.      Defendant, **DELCO DEVELOPMENT LLC.**, is a business entity being sued in its official capacity as Owner of Haddon Point Apartments and maintains an office address at:

200 Campbell Drive, Suite 200, Willingboro, New Jersey 08046.

6.      Defendant, **Mr. TOM JULIANO**, is an adult Caucasian male being sued individually and in his official capacity as Landlord and/or Owner of Haddon Point Apartments and his name appears in Page 2 at ¶1 of attached Exhibits B and C. Defendant Tom Juliano maintains an office address at:

200 Campbell Drive, Suite 200, Willingboro, New Jersey 08046

7.      Defendant, **Ms. NINA BEACHER**, is an adult Caucasian female being sued individually and in her official capacity as Director of Residential Development at Haddon Point Apartments, an Agent of Landlord of Haddon Point Apartments, and she maintains an office address at:

2100 Haddon Point Manager, LLC, and Pennsauken, New Jersey 08110

8.      Defendant, **Mr. TRAVIS J. RICHARDS, Esquire**, is an adult Caucasian male being sued individually and in his official capacity as an Attorney and Debt Collector for Haddon Point Manager, LLC. Defendant Travis J. Richards appears in Exhibits "B" to "E" and he maintains an office address at:

141 Street, Mount Holly, New Jersey 08060

9.      Defendant, **Mr. NICOLAS G. ROTSIDES, Esquire**, is an adult Caucasian male being sued individually and in his official capacity as an Attorney who represents defendant Haddon Point Manager, LLC, and has been held as a Debt Collector. *See* 15 USC 1692a §

*Form Amended Complaint With Strikethroughs and Underlines*

803(6); *see* also *Hodges v. Feinstein*, 189 N.J. 210 (2007). Defendant Nicolas G. Rotsides maintains an office address at:

141 High Street, Mount Holly, New Jersey 08060

## B.   JURISDICTION AND VENUE

10. This District Court has original jurisdiction pursuant to 28 U.S.C. § 1331 in that there are federal causes of actions pled in this Complaint.

11. This Court exercises supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

12. This Court has Diversity Jurisdiction pursuant to 28 U.S. Code § 1332 because Plaintiff is from Pennsylvania and Defendants are New Jersey Residents.

13. Venue properly lies within the United States District Court for the District of New Jersey-Camden Courthouse because the alleged violations of Plaintiff's federal and state law rights occurred within the geographical boundaries of the Camden County and Pennsauken Township of the State of New Jersey.

## C.   FACTUAL BACKGROUND

1. Plaintiff Michael O. Livingstone ("Livingstone" or "Plaintiff") is a young adult black male Citizen of the United States of America ~~and a current resident or tenant at Haddon Point Apartments located at 2100 Haddonfield Road 1302, Pennsauken, New Jersey 08110.~~

2. At all times during the events leading to this action, Plaintiff was a resident and tenant at Haddon Point Apartments and maintained an address at :

2100 Haddonfield Road, Apartment Number 1302, Pennsauken, New Jersey 08110

*Form Amended Complaint With Strikethroughs and Underlines*

3.      Plaintiff is a matriculated full-time graduate student at Keller Graduate School of Management of DeVry University, (hereinafter "DeVry University" or "DeVry" or "University").[1]

4.      On December 24, 2018, Plaintiff entered into a one (1) year residential lease agreement for one (1) bedroom apartment at Haddon Point Apartments, which is owned / managed by defendants Haddon Point Urban Renewal, LLC.; Tom Juliano; Haddon Point Manager, LLC., and Delco Development LLC (collectively "Haddon Point" or "Defendants"). *See* Exhibits "A." *See* also Exhibits B and C.

5.      Haddon Point Apartments is ~~a non-section 8~~ residential housing Apartment Complex that recently replaced the old Pennsauken Mart. See https://www.haddonpoint.com/

6.      Defendant Nina Beacher (hereinafter "Ms. Beacher" or "Beacher" or defendant Beacher or "Nina") is an agent of the Landlord for Haddon Point Apartments whose name appears as the lessor on Page 19 of the residential lease agreement attached to this instant Complaint as Exhibit "A," as well as *Landlord Verification* components in ~~Page 4 of Exhibits "B" and "C" attached herewith~~ all three summary dispossession eviction complaints Exhibits "B," "C," and "M" attached herewith.

7.      Defendant Beacher maintains an office on the premises of Haddon Point Apartments in her official capacity as Director of Residential Development.

8.      During the apartment application process and during the contracting of the residential lease in December 2018, by way of a series of emails dated ~~from~~ December 11, 2018, 11:45 AM, Plaintiff informed Defendant Beacher that he would be using his federal student

---

[1]      https://www.devry.edu/about/keller-graduate-school-of-management.html

financial aid refunds under the provisions of Title IV of Higher Education Act of 1965 (as amended) to pay for rent.

9.      In a number of emails around December 2018, Plaintiff Livingstone gave defendant Beacher his FERPA (20 U.S.C. § 1232g; 34 CFR Part 99) waiver to permit defendant Beacher to verify from DeVry University that Plaintiff was in fact a graduate student of DeVry University receiving federal student financial aid.

10.     By emails dated from Dec 11, 2018, 1:52 PM, defendant Beacher verified from DeVry University that Plaintiff was in fact a graduate student of DeVry University receiving federal student financial aid award that includes room and board.

11.     On December 15, 2018, Plaintiff Livingstone toured Haddon Point Apartments and submitted his application that same day for a one (1)-bedroom apartment. Plaintiff attached a copy of his federal student financial aid award letter to the housing application ~~and indicated on the application his employment status as "full- time graduate student."~~

12.     That same day of December 15, 2018, defendant Beacher informed Plaintiff that she would accept Plaintiff's federal student financial aid award letter as ~~Plaintiff's~~ "form of income" for rent payment.

13.     By emails around December 16, 2018, defendant Beacher approved Plaintiff's application for Plaintiff to rent the apartment at Haddon Point.

14.     On December 24, 2018, Plaintiff signed a one (1) year lease to rent the one (1) bedroom apartment at Haddon Point Apartments starting December 27, 2018 through December 26, 2019. Exhibit "A."

*Form Amended Complaint With Strikethroughs and Underlines*

15. ·On December 24, 2018, Defendant Beacher signed the lease as the lessor on behalf of defendants Haddon Point Manager LLC, Tom Juliano, and Delco Development LLC. *See* Exhibit A, at Page 19.

16. The one-bedroom apartment Haddon Point rented to ~~Plaintiff~~ Livingstone was not furnished by Haddon Point. The Bedroom unit itself did not have any pre-installed lighting at all.

17. Monthly rent for the one-bedroom apartment is $1,520.00. *See* Exhibit "A."

18. No utilities are included at all in the ~~exorbitant~~ rent.

19. As part of move-in costs to Haddon Point Apartments in December 2018, ~~Plaintiff~~ paid a security deposit of $1,520, pro-rated December 2018 rent of $253.33, one –time Amenities fee of $250, and January 2019 rent for $1,520.

20. Plaintiff moved-in to live at Haddon Point Apartments on December 27, 2018.

21. ~~Plaintiff currently resides at Haddon Point Apartments.~~

22. Plaintiff paid January 2019 rent for $1,520 on time.

23. By email dated Fri, Jan 11, 2019 at 2:48 PM, DeVry University informed students that disbursement of federal student financial aid funds from the U.S. Department of Education is delayed and so refunds to students will be delayed. (Exhibit "G")

24. By email dated Feb 2, 2019, 1:56 PM sent before the five-day grace period for late rent payment fees accrued, Plaintiff informed defendant Beacher that February 2019 rent payment is delayed because Plaintiff's form of income, i.e. federal student financial aid from DeVry University, which the parties previously agreed and accepted as Plaintiff's form of income for rent payment, is delayed and so Plaintiff does not want it to appear that he missed rent payment without telling Beacher anything at all. Plaintiff attached an email from DeVry

*Form Amended Complaint With Strikethroughs and Underlines*

dated Fri, Jan 11, 2019 at 2:48 PM informing students about the delay together with his February 2, 2019 email to defendant Beacher. *See* Exhibit "G."

25.    By email dated Feb 19, 2019, 3:42 PM, defendant Beacher informed Plaintiff as follows:

> "…I am giving you some extra time because you have been forthcoming with your situation. Please keep us posted."

Subsequently, Plaintiff ~~Livingstone~~ continued to keep defendant Beacher posted in a series of emails.

26.    By email dated March 6, 2019, 3:17 PM, defendant Beacher informed Livingstone as follows: "…I extended our grace period an additional month..."(Note: the term "grace period" as used in New Jersey Landlord-Tenant Law and in the lease (Ex. A. p.2, section 1.7a) is the 5-day grace period before late fees accrue after the rent payment due date).

27.    Notwithstanding her February 19 and March 6 emails cited above extending the 5-day grace period, Defendant Beacher still imposed late fees upon Plaintiff Livingstone despite her statement that the (five-day) grace period was extended by one month.

28.    By email dated February 23, 2019, 10:14 AM, Plaintiff informed defendant Beacher that he expects DeVry University to release the funds by March 10, 2019 and the amount will be enough to pay the rent owed for February 2019 and March 2019.

29.    By email dated March 6, 2019, 3:17 PM, defendant Beacher informed Plaintiff that she has sent Plaintiff's paperwork to her Attorney i.e. defendant Travis Richards, Esquire, of defendant Weishoff and Richards LLC, to file eviction action against Plaintiff for non-payment of February 2019 rent and March 2019 rent @ $ 1,520 each, together with 10% late fees of $152 for each Month, as well as $200 Attorney fees and $54 Court costs.

*Form Amended Complaint With Strikethroughs and Underlines*

*30.* By attached <u>collections</u> letter dated March 6, 2019 (Exhibit "D"), defendant

Travis Richards sent ~~an ambiguous self-contradictory~~ standard collections letter to Plaintiff

Livingstone *inter alia* stating as follows:

> (a) This Office represents your Landlord, Haddon Point Manager, LLC;
> (b) We have been advised that the total amount you owe as of this date is $3625.36 which includes court costs and attorney fees for the recently- filed eviction action;
> c) Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.
> d) if, however, you dispute the debt or any portion thereof, in writing within the thirty(30) day period that begins with your receipt of this letter, the law requires us to suspend our efforts (through litigation or otherwise) to collect the debt until we mail the requested information to you. Once verification is mailed, we can resume collection efforts.

*31.* By email dated Wed, March 13, 1:59 PM, DeVry University disbursed the

delayed funds to Plaintiff Livingstone.

*32.* By email dated March 15, 2019, 10:50 AM, Plaintiff informed defendant Beacher

that he has submitted full payment of the February 2019 & March 2019 rent arrears with water

bill payments in the form of Money Orders total $3,053.22 to Haddon Point (i.e. $1,520 for

February 2019 rent; $13.22 for February 2019 Water Bill; $1,520 for March 2019 Rent). Plaintiff

attached a letter with the payment specifically itemizing what Plaintiff was paying.

*33.* Plaintiff paid all the base rent arrears for the months of February and March 2019.

Plaintiff declined to pay the $152 late rent payment fees each for February 2019 and March 2019

and $254 Attorney fees and Court Fees demanded by Haddon Point ~~because the delayed payment~~

~~stems from federal student financial aid disbursement delays, which Plaintiff avers is a risk~~

~~Haddon Point assumed when Haddon Point accepted Plaintiff's financial aid award letter as "form~~

~~of income" for the rent payment.~~

Page 9 of 85

*Form Amended Complaint With Strikethroughs and Underlines*

*34.* In a reply email dated March 17, 2019, 10:06 AM, defendant Beacher acknowledged receipt of the $3,053.22 payment and copied her Attorney, defendant Travis Richards, who also acknowledged receipt of Plaintiff's payment of February 2019 and March 2019 rent arrears.

*35.* Plaintiff disputed the additional rent on time by email dated March 20, 2019, 10:43 PM. Plaintiff sent a Memorandum to defendant Beacher and her Attorneys outlining why Plaintiff declines to pay the late rent payment fees and attorney fees for the delayed February and March 2019 rent payment and disputing the accuracy of the water bill (*see* generally attached Exhibit "R").

*36.* ~~In that March 20, 2019 Memorandum, Plaintiff argued *inter alia* that defendant Beacher assumed the risk with Plaintiff's form of income as Plaintiff's federal student financial aid for rent payment because defendant Beacher knew or should have known that disbursement and processing of federal student financial aid can be delayed when she accepted Plaintiff's student financial aid award letter as form of income to pay for the rent.~~

*37.* ~~In that March 20, 2019 memorandum, Plaintiff also argued that Defendant Beacher previously stated in her aforementioned email dated Mar 6, 2019, 3:17 PM that she had extended the five-day grace period by one-month before late fees accrue. Accordingly, Plaintiff avers that defendant Beacher cannot now impose the late fees upon Plaintiff.~~

*38.* In Plaintiff's March 20, 2019 Memorandum (Ex.R), Plaintiff also disputed the validity of the $3,625.36 total debt mentioned in a March 6, 2019 collections letter (Exhibit "D") defendant Travis Richards sent to Plaintiff. Plaintiff paid the base rent arrears of $3,040 for the Months of February and March 2019.

*39.*     Defendants Beacher and Travis Richards did not address the arguments raised in Plaintiff's March 20, 2019 memorandum disputing the debt.

*40.*     Both Defendant Travis Richards, as well as Defendant Weishoff & Richards, LLC timely received Plaintiff's Memorandum by sending Livingstone a reply email dated Thu, Mar 21, 2019 at 9:40 AM attached within Exhibit "R" at Pages 4-5.

*41.*     Defendant Nina Beacher received Plaintiff's timely Memorandum disputing the debt. Beacher sent a reply email dated Thu, Mar 21, 2019 at 10:18 AM (attached within Exhibit "R" at pp.4-5)

*42.*     Despite Defendants' timely receipt of Plaintiff's timely Memorandum disputing the debt (Exhibit "R," Pages 6-13), Defendants did not address the dispute; defendants did not pause the collections activities and the litigation proceedings; and the eviction trial occurred as originally scheduled on April 25, 2019 (*cf.* Exhibit "F").

*43.*     On March 23, 2019, Plaintiff received process service of the attached Court Summons and eviction complaint notice (Exhibit "B") notice posted in front of his apartment door that Defendant Haddon Point Manager, LLC., has filed a March 18, 2019 court-stamped eviction complaint against Plaintiff Livingstone for non-payment of back rent of $3,625.36 for February and March 2019 and it is docketed as Case Number LT-2379-19 in the Superior Court of New Jersey, Law Div. Special Civil Part, Camden County Hall of Justice, 101 S. 5th St, Camden, New Jersey 08103 (i.e. "New Jersey Landlord –Tenant Court").

*44.*     Plaintiff observed in section 9A of that eviction summons (Ex. B, p.2) that a breakdown of the $3,625.36 debt demands and alleges the following:

> "Feb. and March rent @ 1520 = $3,040.00, Feb. and March Late Fees @152.00 =$304.00, Feb. utilities $14.14, Mar. utilities $13.22, Ct costs $54.00, atty's fee $200"

*Form Amended Complaint With Strikethroughs and Underlines*

(NOTE: The "utilities" are water bills that are not valid, illegitimate, never invoiced to Plaintiff, and never appears on the accumulated ledger account maintained by Haddon Point.)

45.     Despite Plaintiff's March 15, 2019 payment of the February and March 2019 rent before defendants filed the eviction action (Ex. B), the eviction Complaint did not accurately reflect Plaintiff's March 15, 2019 payment of the base rent arrears for February 2019 and March 2019.

46.     ~~Plaintiff asked defendants to file an amended eviction complaint by April 5, 2019 to accurately reflect only the actual remaining disputed total additional rent of $558.00 (i.e. $152 x 2 = $304 late rent payment fees for February and March 2019, Attorney fees and Courts fees of $254).~~

47.     ~~By email dated March 25, 2019, 2:31 PM and letter, Plaintiff asked defendants to file an amended eviction complaint with the Landlord–Tenant Court by April 5, 2019 reflecting the actual disputed amounts because Plaintiff already made a payment on March 15, 2019 in the amount of $3,053.22 for February 2019 and March 2019 rent. However, Defendants never filed the amended eviction complaint to correct.~~

48.     ~~By the same email dated March 25, 2019, 2:31 PM and its Memorandum attached thereto, Plaintiff also asked defendants to amend the first eviction complaint because Plaintiff never owed $13.22 March water bill contrary to what the eviction complaint (Exhibit "B") stated.~~

14.     By the email dated March 20, 2019, at 10:43 PM ( Exhibit "R," Pages 2-4) and its Memorandum attached thereto (Exhibit R, pp. 11-18), and email dated Tue, Mar 26, 2019 at 12:57 PM (contained within Exhibit "R," pages 6-10), Plaintiff disputed the debt in the first eviction complaint and its collection letter:

*Form Amended Complaint With Strikethroughs and Underlines*

    i.    Plaintiff asked defendants to amend the first eviction complaint because Plaintiff never owed $13.22 March water bill contrary to what the eviction complaint (Exhibit "B") stated; and

    ii.    Plaintiff asked defendants to file an amended eviction complaint with the Landlord –Tenant Court by April 5, 2019 reflecting the actual disputed amounts rent of $558.00 (i.e. $152 x 2 = $304 late rent payment fees for February and March 2019, Attorney fees and Courts fees of $254) because Plaintiff already made a payment on March 15, 2019 of $3,053.22 for February 2019 and March 2019 rent remaining a disputed $558 for the April 25 trial.

49.    Defendants neither filed the amended eviction complaint to correct nor address the dispute about the debt.

50.    By email dated March 21, 2019 at 9:40AM, Defendant Travis Richards and for that matter his law firm, defendant Weishoff & Richards, LLC. acknowledged receipt of Livingstone's timely email memorandum disputing the debt (Exhibit R, at Page 4).

51.    By email dated March 21, 2019 at 10:18 AM, Defendant Beacher and for that matter Defendants Haddon Point Manager, LLC; Haddon Point Renewal, LLC, and Delco acknowledged receipt of Livingstone's timely email memorandum disputing the debt (Exhibit R, Page 4).

52.    ~~Haddon Point never billed Plaintiff Livingstone for $13.22 March 2019 water bill utilities at all.~~ At the time of filing the first eviction complaint on March 18, 2019 (Ex. B), the March 2019 water bill was never due and not even posted. Yet, Defendants' March 18 eviction complaint also sought to evict Plaintiff for nonpayment of $13.22 March 2019 water bill (Ex.B, p.2).

*Form Amended Complaint With Strikethroughs and Underlines*

53.     Defendants used the erroneous $13.22 March water bill to compute the debt that reflects in their March 6, 2019 Collections letter (Ex. D) without correcting it when Plaintiff disputed it.

54.     The accurate March 2019 water bill was $14.11, not $13.22, as evidenced in the accounting entries of the Haddon Point tenant accumulated ledger account ( Exhibit Z, pp.3-4).

55.     During the April 25, 2019 first eviction hearing in the New Jersey Landlord – Tenant Court, Defendant Rotsides appeared and argued as an Attorney on behalf of Haddon Point for argument. Plaintiff Livingstone proceeded *pro se.*

56.     The presiding Judge was Honorable Richard F. Wells ("Judge Wells") of the Superior Court of New Jersey Law Division Civil Special Part or New Jersey Landlord –Tenant Court.

57.     A copy of the transcript of that April 25, 2019 hearing is attached as Exhibit "F."

58.     During that April 25, 2019 hearing, defendant Rotsides informed the Court that defendant Beacher is not able to appear before the Court in-person as witness for Haddon Point because of emergency conflict of schedule ~~she has~~ with someone else and so Haddon Point seeks continuance of the hearing or Ms. Beacher can do the trial by phone (Exhibit "F").

59.     Whereupon, Plaintiff Livingstone objected on grounds that the so-called "schedule conflict with someone else" is not one of the grounds to ignore or continue a Court date or Summons. Moreover, there are barriers to telephone communication to do court trial by phone. (Exhibit "F")

60.     Plaintiff Livingstone (then-defendant) argued that it will be unconstitutional for the Court to proceed without Ms. Beacher physically present before the Court as a witness for

*Form Amended Complaint With Strikethroughs and Underlines*

Haddon Point to be cross-examined. Consequently, the Court should dismiss the eviction

complaint.( Exhibit "F")

61.     Whereupon, Judge Wells agreed with Livingstone and declared the eviction

~~complaint (Ex.B)~~ dismissed (Exhibit "F").

62.     ~~Subsequent to that,~~ Despite the Court's dismissal of the first Eviction Complaint,

Livingstone observed that Haddon Point is still keeping the remaining disputed late rent payment

fees for February and March 2019 on its systems and accumulated ledger account (Exhibit Z,

pp.3-4) as payable balance.

63.     By email dated Apr 30, 2019, 5:38 PM, (Exhibit "H"), Plaintiff asked defendant

Beacher that consistent with the Court's dismissal of the eviction action, Haddon Point should

also cancel the remaining disputed fees that formed the basis of that eviction action (Ex. B).

64.     ~~Plaintiff attached a proposed addendum to the lease to change the rent due date~~

~~from the 1st of every month to the 17th of every month because of changes in disbursement~~

~~schedule of Plaintiff's form of income as federal student financial aid. Exhibit "H." See also~~

~~Exhibit "I" explaining the payment schedule of Plaintiff student financial aid that Haddon Point~~

~~accepted as form of income for the rent.~~

65.     ~~Plaintiff signed his part of the proposed addendum Exhibit "H" and requested~~

~~Haddon Point to also sign so that the parties can avoid future disputes over late fees. However,~~

~~Haddon Point declined to sign the addendum.~~

66.     ~~On May 6, 2019, Plaintiff filed consolidated motions with the Superior Court of~~

~~New Jersey Landlord-Tenant Court to move the Court to order the proposed addendum; to enjoin~~

~~Haddon Point to reduce the 10% late rent payment fees for all tenants because the 10% is~~

*Form Amended Complaint With Strikethroughs and Underlines*

~~unreasonable and unconscionable; and to hold Haddon Point in contempt of Court, and other reliefs.~~

67.     On May 6, 2019, Plaintiff filed a consolidated motion with the Landlord-Tenant Court to (i) order a proposed addendum to the lease rent payment due date because of changes in payment schedule from DeVry University; (2) to enjoin Haddon Point to reduce the 10% late rent payment fees for all tenants because the 10% is unreasonable and unconscionable; (3) to hold Haddon Point in contempt of court for going against the State Court's April 25 ruling dismissing the first eviction complaint in favor of Livingstone; and (4) attorney fees for Livingstone [because Livingstone consulted and paid a small attorney fee to Mr. Izzo prior to the April 25 trial ] (see generally Exhibit "O").

68.     ~~A post-trial motion hearing was scheduled on May 16, 2019.~~ The State Court scheduled a post-trial motion hearing on May 16, 2019. Due to a medical exigency on that day, Plaintiff could not attend that motion hearing and so the Court denied that motion. ~~However,~~ Plaintiff submitted medical documentation to Judge Wells and filed a motion to vacate or reconsider. ~~However,~~ on May 30, 2019 Judge Wells declined to vacate and encouraged Plaintiff to bring the motion again.

69.     On May 16, 2019, Plaintiff submitted $1,534.02 money orders as total payment for May 2019 rent and $14.02 April water bill. Plaintiff notified defendant Beacher by email dated May 16, 2019 at 5:14 PM about the payment and advised her to inform her Attorneys as well.

70.     On May 30, 2019, the State Court conducted a motion hearing regarding Plaintiff's motion to vacate the Court's default order denying his post –trial motions.(Exhibit " O")

71.     During that May 30, 2019 motion hearing, the State Court Judge misunderstood Plaintiff's request seeking enforcement of the Court's April 25th ruling. Judge Wells explained

that since Livingstone is still a resident of Haddon Point Apartments, the dismissal of the eviction complaint is already in effect. The State Court Judge added that if Haddon Point brings another eviction lawsuit containing the previous April 25th dismissed fees, he would hear it. (Exhibit "O" at Pages 5-16).

72.     On May 27, 2019, Plaintiff received another ~~ambiguous standard~~ collections letter dated May 15, 2019 from defendants Travis Richards and Weishoff & Richards, LLC on behalf of Defendants Haddon Point Manager, LLC claiming that Plaintiff owes $2,998.02 as May 2019 base rent and additional rent. *See* Exhibit "E."

73.     On May 27, 2019, Plaintiff received a second eviction complaint by defendant Haddon Point that is court-stamped and filed with the Landlord-Tenant Court on May 20, 2019 with docket number LT-3820-19 (Exhibit "C").

74.     Defendant Beacher signed the verification form appended to the eviction complaint. *Id*

75.     Attorney-Defendant Richards and his law firm defendant Weishoff & Richards, LLC prepared and filed that second eviction complaint. *Id*

76.     Specifically, the attached May 20, 2019 second eviction complaint claims non-payment of rent against Livingstone as follows: "Prev. legal $754.00, May rent $1520.00, Feb., Mar. and May Late fees @$ 152.00 =$426.00, April Water $14.02, ct costs $54.00, atty fee $200" (*see* Ex. C, Page 2).

77.     On May 16, 2019, Plaintiff already paid the May 2019 rent and April 2019 water bill to Haddon Point before defendants filed that second eviction complaint on May 20, 2019.

*Form Amended Complaint With Strikethroughs and Underlines*

*78.*      The State Court scheduled a trial for the second eviction complaint (Ex.C) for June 6, 2019 at the Superior Court of New Jersey Law Division Civil Special Part. The transcript is attached as Exhibit "P" as an adjudicative fact.

*79.*      On June 1, 2019, Plaintiff paid June 2019 rent $1,520 to defendant Haddon Point.

*80.*      Attorney Charles M. Izzo represented Plaintiff during the June 6, 2019 second eviction Trial. Attorney Izzo persuaded the Court that the previous April 25, 2019 first eviction trial in Exhibit "F" was in fact a Trial where the Court ruled in favor of Livingstone and dismissed the rent and additional rent. Whereupon, the State Court Judge asked Haddon Point about how Haddon Point was going to get fees over a case Haddon Point did not prevail (Exhibit "P" at Page 8).

*81.*      During the June 6, 2019 trial, Haddon Point conceded defeat over the April 25th trial as a ruling in favor of Livingstone in Exhibit "P" at Page 15, Lines 7-12 ( emphasis added):

> THE COURT:
> Well... I'm just saying I think it was probably **a ruling in favor of the tenant**. I mean, it's not like –
> MR. ROTSIDES: **It certainly was**, your Honor....

*82.*      During the June 6, 2019 eviction trial, Haddon Point also demanded $1000 attorney fees collectable as additional rent under the lease for judgment of possession because of the previous May 2019 post-judgment motions Livingstone filed to enforce the Court's previous April 25, 2019 ruling dismissing the first eviction complaint (Exhibit "P" at Page 5).

*83.*      Meanwhile, the second eviction Complaint and Summons (Exhibit "C") did not plead $1000 attorney fees on its face. Only $500 of the $1000 attorney fees appears on the face of the second eviction complaint as part of "Prev. legal $754.00."

*Form Amended Complaint With Strikethroughs and Underlines*

84.    The breakdown of the $754 includes $500 attorney fees for Plaintiff's May 2019 post-judgment motion to enforce the Court's April 25th ruling dismissing the first eviction complaint in Plaintiff's favor. ( Exhibit C)

85.    The other $254 component of the $754 was attorney fees and court costs as additional rent that was previously dismissed in the first eviction complaint. Yet, Defendants sought the April 25, 2019 previously dismissed $254 in a second eviction complaint that was tried on June 6, 2019 (*see* generally Exhibits C, F, O, and P).

86.    During the June 6, 2019 trial, Attorney Izzo argued that Plaintiff's May 2019 post- trial motions were not frivolous, but necessary because Haddon Point had gone against the April 25 ruling of the Court. (Exhibit "P").

87.    During the June 6, 2019 second eviction trial, Attorney Izzo further argued that the April 25, 2019 first eviction trial ( Ex. F) was a trial because the elements of a trial were evident in that proceeding ( Ex. P).

88.    The second collections letter (Exhibit "E") did not include the full $1000 attorney fees on its face as part of the total amount in the letter because only $500 of the $1000 Defendants' demanded during the June 6, 2019 trial (Ex. P. Page 5) appears on the face of the second collections letter as part of the total amount being collected (Ex. E).

89.    Livingstone never got 30 days to dispute the other $500 of the $1000 attorney fees collectable as additional rent before the June 6, 2019 trial because it was during the June 6 trial itself that Defendants orally demanded the $1000 attorney fees all to Livingstone's surprise.

90.    During the June 6, 2019 second eviction trial (Ex. P), Haddon Point admitted that Livingstone was in fact the prevailing party during the previous April 25, 2019 first eviction trial on the case docket No. LT-2379-19 (Complaint's Ex. F). Haddon Point stated this:

*Form Amended Complaint With Strikethroughs and Underlines*

"…and we would ask this Court to consider that, yes, while it's **an unusual request,** he prevailed on April 25th."

*(See* Exhibit "P," Page 5, Lines 8-10, emphasis added).

91.     Notwithstanding the fact that Haddon Point was not the prevailing party on the April 25, 2019 trial, Haddon Point demanded $1000 as May 2019 attorney fees (Ex. P) and used Plaintiff's security deposit to pay themselves for it later in October 2019.

92.     During the June 6, 2019 trial, Attorney Izzo argued that Plaintiff's May 2019 post- trial motions were not frivolous, but necessary because Haddon Point had gone against the April 25 ruling of the Court.( Exhibit "P").

15.     ~~During the June 6, 2019 trial, Attorney Izzo persuaded the Court that Plaintiff's May 2019 post- trial motions (Ex. O) was not frivolous, but necessary because Haddon Point went against the April 25th ruling of the Court to demand court-dismissed fees from Livingstone (Exhibit "P").~~

16.     ~~During the June 6, 2019 second eviction trial, Attorney Izzo persuaded the Court that the April 25, 2019 first eviction trial ( Ex. F) was a trial because the elements of a trial including administration of Oath was evident in that April 25th proceeding ( Ex. P).~~

17.     ~~It was during the second eviction trial on June 6, 2019 when Haddon Point conceded defeat over the April 25th first eviction trial (Ex. F) as a ruling in favor of Livingstone. See Exhibit "P" at Page 15, Lines 7-12 ( emphasis added):~~

~~THE COURT:~~
        ~~Well… I'm just saying I think it was probably **a ruling in favor of the tenant.** I mean, it's not like –~~
~~MR. ROTSIDES: **It certainly was,** your Honor.…~~

18.     ~~Whereupon, the State Court Judge queried Haddon Point about how Haddon Point was going to get the $254 attorney fees and court fees, as well as the $558 additional rent over a~~

Page 20 of 85

*Form Amended Complaint With Strikethroughs and Underlines*

dismissed case (Ex. F) in which Haddon Point did not prevail (Exhibit "P" at Page 8). Accordingly, during the June 6th trial, the Court once again dismissed the remaining additional rent and court fees that formed the basis of the previous April 25th trial.

19. During the June 6, 2019 eviction trial, Haddon Point also demanded $1000 attorney fees collectable as additional rent under the lease for judgment of possession because of the previous May 2019 post-judgment motions Livingstone filed *inter alia* to enforce the Court's previous April 25, 2019 ruling dismissing the first eviction complaint (Exhibit "P" at Page 5).

20. Meanwhile, the second eviction Complaint and its Summons (Exhibit "C") did not plead $1000 attorney fees on its face. Only $500 of the $1000 attorney fees appears on the face of the second eviction complaint as part of the "Prev. legal $754.00."

21. The breakdown of the $754 includes $500 attorney fees for Plaintiff's May 2019 post-judgment motions to enforce the Court's April 25th ruling dismissing the first eviction complaint in Plaintiff's favor (Exhibits F, O, and C). The other $254 component of the $754 is attorney fees and court costs that was previously dismissed in the first eviction complaint during the April 25, 2019 trial (Exhibits B & F). The State Court once again dismissed those $254 fees during the June 6, 2019 trial (Exhibit "P").

22. The second collections letter (Exhibit "E") did not include the full $1000 attorney fees on its face as part of the total amount demanded in the collections letter. Indeed, only $500 of the $1000 attorney fees defendants demanded during the June 6, 2019 trial (Ex. P, at Page 5) appears on the face of the second collections letter as part of the total amount being collected (Ex. E).

Page 21 of 85

*Form Amended Complaint With Strikethroughs and Underlines*

23. ~~Livingstone never got 30 days to dispute the other $500 of the $1000 attorney fees collectable as additional rent before the June 6, 2019 trial because it was during the June 6th trial itself when Defendants orally demanded the $1000 attorney fees to Livingstone's surprise.~~

24. ~~During the June 6, 2019 second eviction trial (Ex. P), Haddon Point admitted that they are making an out-of-place unusual demand for the $1000 attorney fees over the May 2019 post-trial motions Livingstone filed in a case docket where Livingstone was the prevailing party. *See* Exhibit "P," Page 5, Lines 8-10, emphasis added).~~

> ~~"…and we would ask this Court to consider that, yes, while it's **an unusual request,** he prevailed on April 25th…."~~

25. ~~Notwithstanding the fact that Haddon Point was not the prevailing party on the April 25, 2019 trial, Haddon Point demanded $1000 as May 2019 attorney fees (Ex. P) and used Plaintiff's security deposit to pay themselves for it later in October 2019 (Ex.Z).~~

26. ~~During the June 6, 2019 eviction trial, the State Court denied Haddon Point's demand for the $1000 attorney fees as additional rent for judgment of possession on these grounds: (1) bad faith; and (2) doctrine of *laches*. The Court reasoned that it was too late in June 2019 for Haddon Point to pursue attorney fees that accrued in May 2019 (*see* Exhibit "P" at Pages 7-8).~~

27. ~~The ultimate outcome of that June 6, 2019 trial was that Livingstone should pay $406 as May 2019 late rent payment fee $152; attorney fees $200; and Court costs of $54. (Exhibit "P.")~~

28. ~~Livingstone paid the $406 immediately after trial on that June 6, 2019 to dismiss the second eviction complaint. (Ex. P).~~

*Form Amended Complaint With Strikethroughs and Underlines*

29. ~~Livingstone prevailed during the second eviction trial on June 6, 2019 because no judgment of possession was entered against him. Livingstone continued to live at Haddon Point Apartments.~~

30. ~~Haddon Point went against the ruling of the State Court once again and continued to demand the $1000 attorney fees from Livingstone by keeping it as a collectable balance on Livingstone's accumulated tenant ledger account (Ex. Z, pp.3-4). This prevented Livingstone from paying his rent conveniently online because of the retroactive payment clause in the lease.~~

31. ~~In July 2019, Livingstone filed a post-trial motion with the State Court to hold Haddon Point in contempt of court and impose sanctions against Haddon Point and its Attorneys for violating the June 6, 2019 judgment of the Court denying the $1000 attorney fees.~~

32. ~~The State Court conducted a post-judgment motion hearing on July 18, 2019.~~

33. ~~Livingstone appeared *pro se* on July 18, 2019 and argued that no Court has awarded Haddon Point the $1000 as Attorney fees over the May 2019 motions and so it is illegal for Haddon Point to demand and maintain the $1000 on Livingstone's rental ledger account as collectable balance.~~

34. ~~Livingstone argued that a Court must award Attorney fees before any party can take any steps to collect it.~~

35. ~~During the July 18, 2019 post-judgment motion hearing, the State Court ruled that it did not decide the $1000 for monetary damages despite the prior June 6, 2019 ruling of the Court (Ex. P, page 8) that it was too late in June 2019 for Haddon Point to demand alleged attorney fees that accrued in May 2019.~~

36. ~~During the July 18, 2019 post-judgment motion hearing, the State Court advised that Haddon Point can sue Livingstone for the $1000 attorney fees later on or now and then~~

*Form Amended Complaint With Strikethroughs and Underlines*

~~either the same Judge (Hon. Richard Wells) or someone else will hear it and determine whether to award Haddon Point the May 2019 attorney fees $1000 against Livingstone for filing the May 2019 post-trial motions to enforce the Court's ruling upon Haddon Point.~~

37. ~~On October 31, 2019, Haddon Point once again went against the July 18, 2019 post-trial ruling of the Court to award itself the alleged $1000 attorney fees by using Livingstone's security deposit to pay the $1000 to themselves (Exhibit "Z")~~

38. ~~Around July 19, 2019, Defendants filed a third eviction complaint against Livingstone in State Court for non-payment of July 2019 base rent of $1520; $13.77 July water bill~~[2]~~; and additional rent total $405 (i.e. late rent fee $152; attorney fees $200; and Court Costs $53). The Summons declares a trial date for August 15, 2019 (*see* Exhibit "M").~~

39. ~~Around July 22, 2019, Livingstone paid the base rent and the water bill for June 2019 to Haddon Point remaining the $405 additional rent.~~

40. ~~Defendants Travis Richards and defendant Weishoff & Richards, LLC, acting on behalf of Haddon Point sent a third collections letter dated July 19, 2019 to Livingstone (Exhibit M.2) citing the same $1938.77 rent appearing on the eviction complaint and summons (Ex. M) The third Collections letter provided Plaintiff thirty (30) days to dispute all or part of the debt.~~

41. ~~By email dated July 31, 2019, 9:59 AM to Defendants Haddon Point, Beacher, and Richards (Exhibit M.3), Livingstone timely disputed the debt on the third collections letter (Ex. M.2) especially the $13.77 July 2019 water bill as an erroneous water bill.~~

42. ~~Defendants did not pause the collections and litigation efforts to address the disputed debt. The eviction trial proceeded as scheduled on August 15, 2019.~~

---

[2]    This water bill is not accurate for July 2019, but rather, it is the accurate water bill for June 2019

*Form Amended Complaint With Strikethroughs and Underlines*

43. ~~Defendants never corrected the erroneous water bill on the third collections letter or the third eviction Complaint (Exhibits M & M.1)~~

44. ~~On July 22, 2019, Livingstone paid the July 2019 base rent and June 2019 water bill for a total of $1,533.77 to Haddon Point.~~

45. ~~Around August 1-2, 2019 Livingstone also paid the August 2019 base rent $1520 that became due long before the August 15, 2019 trial.~~

46. ~~On August 15, 2019, Haddon Point went to trial with Livingstone over the third eviction complaint (Ex. M) in State Court regarding the remaining $405 additional rent.~~

47. ~~Defendant-Attorney Rotsides represented Haddon Point during the August 15, 2019 eviction trial. Defendant Beacher attended the trial as witness for Haddon Point. Livingstone appeared *pro se*.~~

48. ~~At the end of the August 15, 2019 trial, the Court required Livingstone to pay the $405 additional rent.~~

49. ~~Livingstone could not pay the remaining additional rent of $405 on that same trial day of August 15, 2019 to dismiss the third eviction complaint.~~

50. ~~By email dated Aug 15, 2019, 4:02 PM, Livingstone requested for extension of time from Defendants Haddon Point, Rotsides, and Beacher to pay the remaining $405 additional rent. By email dated Aug 16, 2019, 9:09 AM, Defendants declined Livingstone's request for extension of time to pay the remaining $405 additional rent.~~

51. ~~Given that Livingstone could not pay the $405 during that same trial day of August 15, 2019, the State Court entered a judgment for possession against Livingstone.~~

*Form Amended Complaint With Strikethroughs and Underlines*

52. ~~Defendants subsequently applied for Warrant of Removal (Exhibit "Y" at pp.3-4) and a State representative posted it on the front door of Livingstone's Apartment unit around August 22, 2019~~

53. ~~Around August 26, 2019, Livingstone filed post-judgment relief motion for order to show cause to vacate the judgment for possession and warrant of removal. Plaintiff found the $405 and attached it as a money order payment to show that all the rent and remaining $405 additional rent was fully paid.~~

54. ~~On August 26, 2019, the State Court granted Livingstone's motion for order to show cause and scheduled a hearing for September 12, 2019. The Court ordered a temporary stay of eviction proceedings pending the September 12th order to show cause hearing.~~

55. ~~A transcript of the September 12, 2019 order to show cause post-trial hearing is attached herewith as Exhibit "N.2"~~

56. ~~Attorney Mr. Charles Izzo represented Livingstone during the September 12, 2019 order to show cause hearing (Ex. N.2) in State Court. Defendant-Attorney Rotsides represented Haddon Point. Livingstone appeared and participated in the hearing.~~

57. ~~During the September 12, 2019 post-trial hearing, Attorney Izzo argued that it was no longer equitable by law to evict Livingstone because Livingstone has paid all the rent for a total of more than $3000, as well as all the $405 additional rent Haddon Point demanded in the third eviction complaint(Exhibits M; and N.2).~~

58. ~~During the September 12th motion hearing, Livingstone also brought with him to Court September 2019 rent $1520 payment and water bill that became due at the time, which Haddon Point rejected (Exhibit 3.F).~~

Page 26 of 85

*Form Amended Complaint With Strikethroughs and Underlines*

59. Attorney Izzo argued that Livingstone should be treated like every other tenant who is entitled to post -judgment relief upon motion for order to show cause to vacate the judgment of possession when all rent is paid (Exhibit N.2).

60. During the September 12, 2019 order to show cause hearing, Defendants Haddon Point and Rotsides rejected the $405 additional rent payment, as well as September 2019 rent payment and demanded Livingstone's eviction (Ex. N.2).

61. During the September 12, 2019 motion hearing, Defendant Rotsides argued that the State Court should return the $405 rent to Livingstone and instead proceed with the lockout to evict Livingstone in equity for bringing this instant federal lawsuit against Defendants for filing motions; and for filing State Court Appeals (Exhibit N. 2).

62. Specifically, the attached transcript Exhibit N.2, Page 12, Lines 11-20 to Page 13, Lines 1; Page 16 (Lines 23-25); Page 17, Lines 1-4 contains the pertinent exchange between Haddon Point's Defendant Attorney Rotsides, Plaintiff's Attorney Mr. Charles Izzo, and the State Court Judge Richard Wells:

MR. ROTSIDES:

> …In the interest of equity, Your Honor, I would ask this Court to consider that my office has spent 45.7 hours not on the evictions, but defending his various motions, both in the state and **federal level, all of which thus far, without exception, have been dismissed.** In sum, my client has racked up a bill of a hair under $12,000 defending against his motions. There were three in the LT, two notices appeal, and **three federal motions, all of which have been dismissed.** There are currently pending two more landlord/tenant motions, three more federal motions, two more attempts at his misfiled appeals, and of course **the federal complaint itself,** which is pending, my Motion to Dismiss, Your Honor.

MR. IZZO:

> Your Honor, **the bill was $405, and Mr. Livingstone has paid the $405.**

*Form Amended Complaint With Strikethroughs and Underlines*

MR. ROTSIDES:

Your Honor, for point of clarification, **there is the $405 he did post** with the court. **We're asking that can be returned to him and we'll proceed with the lockout in normal course.**

THE COURT: All right.

MR. ROTSIDES: Thank you, Your Honor.

(Proceedings concluded at 11:15:33 a.m.)

63.     Whereupon, on September 12, 2019, the State Court denied Livingstone's post-judgement motion to show cause to vacate the judgment of possession ( Ex. N.2)

64.     As requested by Haddon Point and Rotsides, the State Court ordered that the $405 additional rent payment should be returned to Livingstone for the eviction to proceed (Exhibit "Y," Page 2; Ex. N.2).

65.     After Haddon Point rejected the rent payment in September 2019 in exchange for Livingstone's eviction in October 2019, Haddon paid itself the $405 by deducting it from Livingstone's security Deposit (*see* Exhibit "Z").

66.     On September 13, 2019, Livingstone proceeded *pro se* to the Appellate Division of the Superior Court of New Jersey in Trenton and filed emergent motions to stay the eviction proceedings pending appeal.

67.     On September 13, 2019, the Appeals Court granted an interim stay of the eviction proceedings on condition that Livingstone should pay the September 2019 rent by September 16, 2019 and Livingstone should pay subsequent rent when due (Exhibit "Y," at Page 7).

68.     The Appellate Court did not specify whether Livingstone should make the rent payment directly to Haddon Point or to Haddon Point Attorneys. (Exhibit "Y," at Page 7).

*Form Amended Complaint With Strikethroughs and Underlines*

69. Livingstone submitted the September 2019 rent payment to Haddon Point consistent with the Appeals Court's ordered timeline before September 16, 2019 (Ex. 3.F)

70. In the September 13, 2019 order staying the eviction proceedings, the Appellate Court gave Haddon Point time to respond to the interim stay of the eviction proceedings (Ex. Y, p.7).

71. Haddon Point repeatedly rejected the September 2019 despite the Court's Order (*see* generally Exhibit 3.F).

72. Around September 18, 2019, Defendants Richards and Haddon Point communicated ***ex-parte*** with the Appellate Court to amend the September 13, 2019 Order to say that Livingstone's rent payment should be made payable to Defendant Weishoff & Richards, LLC, not payable to Haddon Point ( Ex. " W," Page 5).

73. On September 18, 2019, the Appellate Court entered an Amended Order specifying that Livingstone should make the rent payment to Defendants Weishoff & Richards, LLC, not to Haddon Point Manager, LLC. (Ex. Y, pp.8-9).

74. The Appellate Court made a clerical error in the September **18,** 2019 Amended Order by failing to amend the September **16,** 2019 ordered date to pay the September 2019 rent ( Ex. "Y"). It was therefore impossible on September 18, 2019 for Livingstone to receive the already-submitted September 2019 from Haddon Point in the mail to convert it and go back into time to pay it on the September 16, 2019 court-ordered date (Ex. 3.F).

75. On September 20, 2019, Defendants Richards and Haddon Point responded to the Appellate Court and argued that the Court's interim stay of the eviction proceedings should be dissolved because Haddon Point did not receive the Court-ordered September 2019 rent payment from Livingstone ( Exhibit "W") despite the evidential payment in Exhibit 3.F.

*Form Amended Complaint With Strikethroughs and Underlines*

76.    ~~In Defendants' September 20, 2019 response to the State Appellate Court, Defendants Richards, Haddon Point, and Weishoff & Richards, LLC argued that the Appellate Court's interim stay of the eviction proceedings should be dissolved for Livingstone to get evicted because Livingstone owes defendants $12,000 attorney fees for filing this Federal Complaint; Motions, and State Court Appeals (Exhibit "W," Page 4).~~

77.    ~~On September 25, 2019, the Appellate Court entered an Order dissolving the interim stay of eviction proceedings. (Exhibit "Y," pp. 11-12). For orderly removal, the Court allowed up to October 7, 2019 for Livingstone to be evicted. *Id.*~~

78.    ~~Livingstone attempted to get the eviction proceedings stayed by the higher New Jersey Supreme Court. However, due to page-length limit constraints on the form-motion the Court provided Livingstone, Livingstone did not get opportunity to demonstrate merits.~~

79.    ~~On October 3, 2019, New Jersey's Justice Barry T. Albin entered an order denying Livingstone's emergent motion for stay of eviction proceedings on grounds that Livingstone did not demonstrate merits on the motion form. (Exhibit "Y," at Page 14) Justice Albin advised that Livingstone can file a regular motion for the entire NJ Supreme Court to review later on. *Id.* Justice Albin stayed the eviction proceedings till October 7, 2019 to allow orderly removal. *Id*~~

80.    ~~Inasmuch as filing a regular motion with New Jersey Supreme Court would not stay the eviction proceedings, and in consideration of the short time remaining, Livingstone did not file the motion.~~

81.    ~~Livingstone vacated his apartment at Haddon Point on October 7, 2019 consistent with the orderly removal by October 7, 2019.~~

82. ~~Between November 2019 to February 2020, Livingstone focused on perfecting his State Court Appeal at the New Jersey Superior Court (Trenton) seeking to reverse the judgment of possession/eviction. In February 2020, that Appeal is perfected and docketed as case no A-005647-18 at the New Jersey Superior Court (Trenton) and briefing schedules are issued.~~

- ~~**Allegations and Averments that All Defendants Are Liable.**~~

83. ~~Livingstone avers that all the Defendants — the Parent Company, the sister Companies, the CEO, the Director, the Attorneys, their Law firm — all of them, should be held liable under COUNT I Fair Debt Collections Practices Act (FDCPA) and other applicable causes of action before this Court because the Haddon Point Defendants acted as Clients who retained the services of the Attorneys and the Attorneys acted on behalf of these Clients. So, the clients should be equally liable for the wrongs of the Attorneys.~~

84. ~~Plaintiff pleads that the CEO of Delco, Mr. Tom Juliano, should not be exonerated from liability because he is identified as the individual owner or individual Landlord of Haddon Point Apartments on all the three (3) eviction complaints (Page 2 at ¶1 of Exhibits "B," "C," and "M"). As the individual identified as the Landlord of Haddon Point Apartments, Tom Juliano was supposed to review all three (3) eviction complaints (Page 2 at ¶1 of attached Exhibits "B," "C," and "M") and verify the debts demanded in all three collections letters for accuracy before the Attorneys filed the eviction complaints.~~

85. ~~Plaintiff avers that this Court should not exonerate the Director, defendant Ms. Beacher, from liability because Ms. Beacher is the one who initiated all the three debt collection and eviction litigation by completing and signing all the three "Landlord Verification" forms that appears in Page 4 of all three (3) eviction complaints (Exhibits "B," "C," and "M").~~

*Form Amended Complaint With Strikethroughs and Underlines*

86.    ~~Plaintiff pleads that this Court should not exonerate defendant Haddon Point Manager, LLC from liability under any of the causes of action in this Complaint because Haddon Point Manager, LLC is the Landlord entity whose name appears in the lease contract (Exhibit A), all three (3) collections letters, and the caption of all three eviction complaints.~~

87.    ~~Plaintiff avers that Defendant Haddon Point Renewal, LLC should be held equally liable for the unlawful conduct of defendant Haddon Point Manager, LLC, under the causes action in this complaint because defendant Haddon Point Renewal, LLC is the sister company whose name appears on the lease contract (Exhibit "A") together with Haddon Point Manager, LLC as the business owner and Manager of Haddon Point Apartments.~~

88.    ~~Plaintiff pleads that Defendant Delco Development, LLC should be held liable under all the causes of action in this complaint because Delco Development, LLC is the corporate parent company of Defendants Haddon Point Renewal, LLC and its sister company defendant Haddon Point Manager, LLC. Thus, Delco should be held ultimately liable for the unlawful conducts of all Defendants.~~

89.    ~~Plaintiff pleads that Attorney-Defendant Rotsides should be held liable under all causes of action in this complaint because although Rotsides is not an Owner or Managing Partner of Defendant Weishoff and Richards, LLC, and Rotsides did not sign the three eviction complaints nor write the three collections letters, Rotsides is the Litigation Attorney who appeared in State Court to represent and argue for Haddon Point Manager, LLC. Rotsides is the one who uttered the alleged retaliatory statements in Ex. N.2. It was Rotsides who advised his client to go against the rulings of the State Court. Rotsides handled all oral arguments during all three eviction complaints and other motion hearings (Exhibits F, O, and P).~~

*Form Amended Complaint With Strikethroughs and Underlines*

90.    Plaintiff pleads that Attorney Travis Richards should be held liable under all causes of action in this complaint because the record shows that Defendant Richards is an Owner and Managing Partner of the law firm (Defendant Weishoff & Richards, LLC) that used its Letterhead to prepare and write the eviction complaints. Defendant Richards is the Attorney who prepared, signed, and filed all three eviction complaints with the State Courts. Defendant Richards is the one who also wrote and signed all the three collections letters.

91.    Plaintiff pleads that Defendant Weishoff and Richards, LLC is liable for the actions of all the defendants because it is the law firm that was retained by Haddon Point and its parent and sister companies to collect the debt by filing and defending the three eviction complaints against Livingstone and sending all the three collections letters.

92.    Around February 25, 2019, this Federal District Court ordered that Livingstone may file a motion for amended complaint by March 11, 2020 (ECF Nos. 40 & 41).

93.    On March 11, 2020, Livingstone moved this Court for extension of time due to illness and restrictions with Coronavirus pandemic (ECF No. 43) and Addendum thereto.

Plaintiff hereby amends the initial complaint and now brings the following five (5) COUNTS

## COUNT I

### 42 U.S.C. § 1983 CHALLENGE AGAINST CONSTITUTIONALITY OF N.J.S.A. 2A:18-53 IN VIOLATION OF EQUAL PROTECTION OF THE LAWS

93.    Plaintiff incorporates herein by reference each and every one of the allegations contained in the preceding paragraphs as though fully set forth at length herein.

94.    The conduct of Defendants, as set forth hereinabove, constitutes conduct under color of state law which deprived Plaintiff Equal Protection of the Laws under the Fourteenth

amendment to the United States Constitution in the manner described in the following paragraphs.

95. Plaintiff challenges the constitutionality of N.J.S.A. 2A:18-53 as violative of 42 U.S.C. § 1983 Equal Protection of the Laws.

96. Plaintiff brings this instant action for the District Court to order the intervention of the Attorney General of New Jersey pursuant to 28 U.S.C. § 2403(b) because the constitutionality of N.J.S.A. 2A:18-53 has been brought to question in this instant complaint (*see also Crocker v. First Hudson Associates*, 569 F. Supp. 97 (D.N.J. 1982).

97. On March 18, 2019, Defendants filed their first eviction complaint under N.J.S.A. 2A:18-53 against Plaintiff (Exhibit B). The Landlord-Tenant Court of New Jersey scheduled April 25, 2019 as the Court date.

98. Plaintiff appeared before that Court on April 25, 2019 with Attorney for Haddon Point, now-defendant Rotsides.

99. Defendant Rotsides informed the Court that defendant Beacher cannot make it to the Court for the trial because of an emergency conflict of schedule with someone else and so Haddon Point requests a continuance for one-week. *See* transcript of hearing (Exhibit F).

100. Plaintiff objected to the continuance and moved the Court to dismiss the eviction complaint because "emergency conflict of schedule with someone else" is not grounds to miss a summoned court date for which the same defendant Beacher convened. Consequently, the Court should dismiss the complaint. Whereupon, the Landlord Tenant Court declared the complaint dismissed (*see* Ex. F).

101. However, on May 20, 2019, defendants filed a second eviction complaint against Plaintiff Livingstone bringing the same fees and costs in the previously-dismissed first eviction

complaint (Ex.C.). A court date is set for trial on June 6, 2019 at the New Jersey Landlord Tenant Court.

102.    Plaintiff brings this instant cause of action for this Federal District Court to enter declaratory relief that N.J.S.A. 2A:18-53 is unconstitutional against the Equal Protection of the Laws Clause of Fourteenth Amendment to the United States Constitution because a procedurally-dismissed case should remain dismissed and not brought again in the same Court.

103.    Further, Plaintiff brings this instant cause of action for this Federal District Court to declare N.J.S.A. 2A:18-53 as unconstitutional against the Equal Protection of the Laws clause of Fourteenth Amendment to the United States Constitution because the proper recourse for a disappointed litigant is appeal as of right to the next higher court or to use motion practice such as motion to vacate or reconsideration motions to restore their case, not bring the same dismissed complaint in the same Court. Accordingly, this District Court should declare that that N.J.S.A. 2A:18-53 is patently- unconstitutional.

104.    By allowing Landlords to re-plead the same procedurally-dismissed actions in the same Court, Landlords will abuse court process by failing to show up on Court dates with shapeless excuses as it happened in this case because Landlords such as Haddon Point know that they can bring the same eviction case again even if they do not show up in Court and their case is procedurally-dismissed.

105.    Plaintiff avers that this violates Tenants' equal protections of the law clause of the Fourteenth Amendment to the United States Constitution.

106.    WHEREFORE, this District Court should grant declaratory judgment that N.J.S.A. 2A:18-53 is unconstitutional in that regard.

*Form Amended Complaint With Strikethroughs and Underlines*

## COUNT I

### FEDERAL FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA" OR "THE ACT"), 15 U.S.C. §§ 1692 *ET SEQ*

### MICHAEL O. LIVINGSTONE V. ALL DEFENDANTS

*107.*    Plaintiff incorporates herein by reference each and every one of the allegations contained in the preceding paragraphs as though fully set forth at length herein.

*108.*    The conduct of Defendants –all of them--as set forth hereinabove constitutes conduct under color of law, which deprived Plaintiff's rights under the Federal Fair Debt Collection Practices Act ("FDCPA") in the manner described in the following paragraphs.

*94.*    ~~Between March 2019 to July 2019, Defendants brought three (3) eviction complaints or summary dispossession actions against Livingstone, all of which implicate the FDCPA in the manner described in the following paragraphs.~~

*95.*    ~~Between March 2019 to July 2019, Defendants sent three (3) collections letters to Livingstone, all of which implicate the FDCPA in the manner described in the following paragraphs:~~

> • ~~**First Eviction Complaint and First Collections Letter**~~

*96.*    ~~Around March 18, 2019, Defendants filed into public court record their first eviction complaint against Livingstone. The first eviction complaint contained an erroneous $13.22 as March 2019 water bill (Exhibit "B," at Page.2). *See* also Exhibit "F," Page 7 (Judge Wells taking issue with defendants' failure to amend the complaint when plaintiff indicated he brought this to defendants' attention.)~~

*97.*    ~~Defendants failed to correct the erroneous and deceptive water bill from public court record and pause collections and litigation efforts even after Livingstone sent postal mail and emails dated March 25, 2019, 2:31 PM (Exhibits "R") asking Defendants to file an amended~~

*Form Amended Complaint With Strikethroughs and Underlines*

eviction Complaint by April 5, 2019 before the April 25 trial reflecting the correct March 2019 water bill of $14.11, which Plaintiff already paid.

98.     Defendants used the erroneous $13.22 March water bill to compute the debt that reflects in their March 6, 2019 collections letter (Ex. D) without correcting it when Plaintiff disputed it.

99.     The accurate March 2019 water bill was $14.11, not $13.22, as evidenced on the Haddon Point tenant accumulated ledger account entry (Exhibit "Z," pp.3-4).

100.     Defendants never amended the first eviction complaint (Exhibit "B") to reflect the correct amount of debt and the accurate water bill.

101.     Plaintiff had already paid the February 2019 and March 2019 base rent for a total $3,053.22 including March 2019 water bill to defendants and so the remaining disputed balance on the eviction complaint should have been $558. Yet, Defendants failed to file an amended eviction complaint to reflect the accurate amount in the public court record.

102.     Defendant Travis Richards and Defendant Weishoff & Richards, LLC sent Livingstone first collections letter on behalf of defendant Haddon Point Manager, LLC dated March 6, 2019 (Exhibit "D") that is ambiguous, deceptive, and self-contradictory on its face. The collections letter says this in Paragraph 4:

> ...if, however, you dispute the debt or any portion thereof, in writing within the thirty(30) day period that begins with your receipt of this letter, the law requires us to suspend our efforts (through litigation or otherwise) to collect the debt until we mail the requested information to you. Once verification is mailed, we can resume collection efforts.

103.     In a March 20, 2019 Memorandum ( Ex. R), Livingstone disputed late rent fees as a debt on grounds that Defendant Beacher previously stated in her email dated Mar 6, 2019, 3:17 PM that she had extended the five-day grace period by one month before late fees accrue.

Page 37 of 85

*Form Amended Complaint With Strikethroughs and Underlines*

Livingstone argued that Ms. Beacher waived the late fee and so Ms. Beacher should not now impose the late fees upon Livingstone. (Exhibit "R").

104. In the March 20, 2019 Memorandum, Livingstone also disputed the validity of the $3,625.36 total debt mentioned in the March 6, 2019 collections letter (Exhibit "D") because Livingstone had already paid the base rent arrears of $3,040 for the Months of February and March 2019 remaining a disputed amount of $558.

105. Both Defendants Nina Beacher and Travis Richards received Livingstone's timely March 20th Memorandum disputing the debt at the time because these defendants sent Livingstone a reply email dated Thu, Mar 21, 2019 at 10:18 AM (Exhibit "R" at pp.4-5).

106. Despite Defendants' timely receipt on March 21 of Livingstone's timely March 20th Memorandum disputing the debt (Exhibit "R," Pages 6-13), Defendants Beacher and Travis Richards did not address the debt dispute; defendants did not pause the collections activities and the litigation proceedings send a verified amount; and the eviction litigation trial proceeded as originally scheduled on April 25, 2019 (*cf.* Exhibit "F").

107. To the extent that Defendants claim that Livingstone did not dispute the debt on time, this argument should fail because the factual exhibits attached herewith shows that Defendants sent the collections letter dated March 6, 2019 giving Livingstone 30-days to dispute the debt (Exhibit "D"). Livingstone sent memorandum on March 20, 2019 disputing the debt (Exhibit "R"); and defendants acknowledged received of the Memorandum by reply emails on March 21, 2019 (Exhibit "R").

108. To the extent that Defendants argue that Defendants never received Livingstone's March 20, 2019 Memorandum disputing the debt on time, this argument should fatally fail as a matter of fact because the attached Exhibit "R" shows that Defendants Beacher and therefore

*Form Amended Complaint With Strikethroughs and Underlines*

defendant Haddon Point; Defendant Travis Richards; and Defendant Weishoff & Richards, LLC, received Livingstone's March 20, 2019 Memorandum by sending Livingstone a reply email dated Thu, Mar 21, 2019 at 9:40 AM on the same thread of email containing Livingstone's March 20 Memorandum disputing the debt (*see* Exhibit "R," at Pages 4-5).

109.    On March 23, 2019, Plaintiff received process service of Court Summons and eviction complaint (Exhibit "B") posted in front of his door that Defendant Haddon Point Manager, LLC., has filed eviction complaint against Livingstone for non-payment of back rent of $3,625.36 for February and March 2019 and it is docketed as Case Number LT-2379-19 in the Superior Court of New Jersey, Law Div. Special Civil Part, Camden County Hall of Justice, 101 S. 5th St, Camden, New Jersey 08103 (i.e. "New Jersey Landlord - Tenant Court").

110.    Livingstone observed in section 9A of the eviction Summons (Ex. B, p.2) that a breakdown of the $3,625.36 debt demands and alleges the following disputed debt:

> "Feb. and March rent @ 1520 = $3,040.00, Feb. and March Late Fees @152.00 =$304.00, Feb. utilities $14.14, Mar. utilities $13.22, Ct costs $54.00, atty's fee $200"

(NOTE: The "utilities" are water bills that are not valid, illegitimate, never invoiced to Plaintiff, and never appears on the accumulated ledger account maintained by Haddon Point.)

111.    Despite Plaintiff's March 15, 2019 payment of the February and March 2019 rent before defendants filed the eviction action, the eviction Complaint (Exhibit "B") did not reflect Plaintiff's March 15, 2019 payment of more than $3,040 the base rent arrears for February 2019 and March 2019.

112.    Livingstone sent email dated Tue, Mar 26, 2019 at 12:57 PM (contained within Exhibit "R," Pages 6-10) asking defendants to file an amended eviction complaint by April 5, 2019 that accurately reflects only the actual remaining disputed total additional rent of **$558.00** (i.e. $152 x 2 = $304 late rent payment fees for February and March 2019, Attorney fees and

Courts fees of $254) because Livingstone already made the rent payment on March 15, 2019 in the amount of $3,053.22 for February 2019 and March 2019 rent.

113.    To the extent that Defendants may claim that they never received Plaintiff's Memorandum, during a short mediation meeting on the day of the April 25, 2019 trial, Defendant Rotsides told Livingstone that he received Plaintiff's Memorandum.

114.    For each of the above-stated reasons, Livingstone was entitled to the protections of the "FDCPA" that is implicated in the first eviction litigation proceedings and the first collections letter.

•    **Second Eviction Complaint and Second Collections Letter.**

115.    Around May 23, 2029, Livingstone received a second collections letter dated May 15, 2019 (Exhibit "E") from defendants Travis Richards and Weishoff & Richards, LLC on behalf of Defendant Haddon Point Manager, LLC. The Collections letter claimed that Livingstone owes $2,998.02 as May 2019 base rent and additional rent. *Id.* The Collections letter provided Livingstone with thirty (30) days to dispute all or part of the debt.

116.    On May 27, 2019, Livingstone received a second eviction complaint from defendants that was filed with the Landlord-Tenant Court around May 20, 2019 with docket number LT-3820-19 citing the $2,998.02 debt (Exhibit "C").

117.    Specifically, the second eviction complaint claims non-payment of rent against Livingstone as follows: "Prev. legal $754.00, May rent $1520.00, Feb., Mar. and May Late fees @$ 152.00 =$426.00, April Water $14.02, ct costs $54.00, atty fee $200" (*see* Ex. C, Page 2).

118.    Livingstone already paid the May 2019 rent and April 2019 water bill to Haddon Point on May 16, 2019 before defendants filed the second eviction complaint on May 20, 2019.

119.   The State Court scheduled June 6, 2019 as the trial date at the Superior Court of New Jersey Law Division Civil Special Part (Exhibit "P")

120.   To Livingstone's surprise, during the June 6, 2019 second eviction trial, Haddon Point demanded $1000 attorney fees collectable as additional rent under the lease for judgment of possession because of the previous May 2019 post-judgment motions Livingstone filed *inter alia* to enforce the Court's previous April 25, 2019 ruling dismissing the first eviction complaint (Exhibit "P" at Page 5, Lines 12-14):

> …and then $1,000 broken up between having to defend against the two motions that the defendant [Livingstone] filed.

121.   Meanwhile, the second eviction Complaint and Summons (Exhibit "C") did not plead $1000 total as the attorney fees on its face. Only $500 of the $1000 attorney fees appeared on the face of the second eviction complaint as part of the $"Prev. legal $754.00" showing on Page 2 of the Complaint.

122.   The breakdown of the $754 includes $500 attorney fees for Plaintiff's May 2019 post-judgment motion to enforce the Court's April 25th ruling dismissing the first eviction complaint in Plaintiff's favor. (Exhibits "F," "O," and "C"; and Exhibit "P," at Page 3)

123.   The other $254 component of the $754 was attorney fees and court costs as additional rent that was previously dismissed in the first eviction complaint. Yet, Defendants sought the April 25, 2019 previously dismissed $254 in a second eviction complaint that was tried on June 6, 2019 (*see* generally Exhibits C, F, O, and P).

124.   Further, the second collections letter dated May 15, 2019 (Exhibit "E") does not include the full $1000 attorney fees on its face as part of the total amount demanded in that letter.

*Form Amended Complaint With Strikethroughs and Underlines*

*125.*    ~~Only $500 of the alleged $1000 attorney fees appeared on the face of the second collections letter as part of the total amount being collected (Ex. E) contrary to the $1000 Defendants demanded during the June 6, 2019 trial to Livingstone's surprise (Ex. P, at Page 5).~~

*126.*    ~~Inasmuch as Defendants demanded two $500's as attorney fees collectable as additional rent to Plaintiff's surprise during the June 6, 2019 eviction trial (Exhibit "P," Page 5), Livingstone never got 30 days to dispute the other $500 of the $1000 attorney fees collectable as additional debt before the June 6, 2019 trial.~~

*127.*    ~~After Haddon Point evicted Livingstone from housing between October 4-7, 2019 (Exhibit "Y"), Haddon Point issued a security deposit statement around October 31, 2019 to Livingstone (Exhibit "Z") stating that Haddon Point has used Livingstone's Security Deposit of $1520 to pay themselves the disputed $1000 attorney fees stemming from the May 2019 post-trial motions (Ex. O) to enforce the Court's April 25th dismissal in Livingstone's favor (*cf* Exhibits "F" & "P").~~

*128.*    ~~Livingstone pleads that defendants' actions flies in the face of the FDCPA because no Court awarded Haddon Point the disputed $1000 as attorney fees collectable as additional rent or debt before Haddon Point used Livingstone's security deposit to pay itself the disputed $1000 in October 2019.~~

• ~~**Third Eviction Complaint and Third Collections Letter.**~~

*129.*    ~~Around July 19, 2019, Defendants filed a third eviction complaint against Livingstone in State Court for non-payment of July 2019 base rent of $1520; $13.77 July water~~

*Form Amended Complaint With Strikethroughs and Underlines*

~~bill [3] .; additional rent total $405 (i.e. late rent fee $152; attorney fees $200; and Court Costs $53). The Summons declares a trial date for August 15, 2019 (*see* Exhibit "M").~~

130. ~~Around July 22, 2019, Livingstone paid the base rent $1,520 and June water bill $13.77 to Haddon Point remaining the $405 additional rent.~~

131. ~~Defendants Travis Richards and defendant Weishoff & Richards, LLC, acting on behalf of Haddon Point sent a third collections letter dated July 19, 2019 to Livingstone (Exhibit M.2) citing the same $1,938.77 rent appearing on the eviction complaint and summons (Ex. M). The third Collections letter provided Plaintiff thirty (30) days to dispute all or part of the debt. *Id*~~

132. ~~By email dated July 31, 2019, 9:59 AM to Defendants Haddon Point, Beacher, and Richards (attached Exhibit M.3), Livingstone timely disputed the debt appearing on the third collections letter (Ex. M.2) within 30 days. Livingstone especially disputed the $13.77 July 2019 water bill as an erroneous water bill. *Id.*~~

133. ~~Defendants did not pause the collections and litigation efforts to address the disputed debt. The eviction litigation trial proceeded as scheduled on August 15, 2019 without Defendants addressing Livingstone's disputes.~~

134. ~~Defendants never corrected the erroneous $13.77 water bill on neither the third collections letter nor the third eviction Complaint (Exhibits M & M.1) at all.~~

135. ~~After Haddon Point evicted Livingstone from housing between October 4 -7, 2019 (Exhibit "Y," Pages 3-14), Haddon Point issued a Security Deposit statement around October 31, 2019 to Livingstone (Exhibit "Z") stating that Haddon Point has used part of Livingstone's Security Deposit of $1,520 to pay themselves the same $405 additional rent. This~~

---

[3]   The water bill is not accurate for July 2019. Instead, it is the accurate water bill for June 2019.

*Form Amended Complaint With Strikethroughs and Underlines*

was the same $405 payment Haddon Point previously rejected during the September 12, 2019 post trial hearing in exchange for Livingstone's eviction. (Exhibit N. 2, Pages 12-13, Lines 11-20). This was the same $405 payment which the State Court ordered its return to Livingstone on September 12, 2019 (Exhibit "Y," page 2).

136.   During the order to show cause post-trial motion hearing on September 12, 2019, Haddon Point demanded Livingstone's eviction from housing on grounds that Livingstone owes $12,000 in Attorney fees stemming from this instant federal litigation; State and federal motions; and State Court Appeals. *See* specifically Transcript Exhibit N.2, Pages 12-13, Lines 11-20 *et seq* to Page 13, lines 1 for adjudicative factual exchange between Haddon Point's Defendant Attorney Rotsides, Plaintiff's Attorney Mr. Charles Izzo, and the State Court Judge Richard Wells (Emphasis added):

MR. ROTSIDES:

> …In the interest of equity, Your Honor, I would ask this Court to consider that my office has spent 45.7 hours not on the evictions, but defending his various motions, both in the state and **federal level, all of which thus far, without exception, have been dismissed.** In sum, my client has racked up a bill of a hair under $12,000 defending against his motions. There were three in the LT, two notices appeal, and **three federal motions, all of which have been dismissed.** There are currently pending two more landlord/tenant motions, three more federal motions, two more attempts at his misfiled appeals, and of course **the federal complaint itself,** which is pending, my Motion to Dismiss, Your Honor.

MR. IZZO:

> Your Honor, **the bill was $405, and Mr. Livingstone has paid the $405.**

MR. ROTSIDES:

> Your Honor, for point of clarification, **there is the $405 he did post** with the court. **We're asking that can be returned to him and we'll proceed with the lockout in normal course.**

*Form Amended Complaint With Strikethroughs and Underlines*

THE COURT: All right.

MR. ROTSIDES: Thank you, Your Honor.

(Proceedings concluded at 11:15:33 a.m.)

(Emphasis added)

137.    As a result, on September 12, 2019, the State Trial Court denied Livingstone's order to show cause to vacate the judgment of possession (Exhibit "Y," page 2). This paved the way for Livingstone to be evicted from his housing.

138.    In defendants' September 20, 2019 response to the State Appellate Court, Defendants Richards, Haddon Point, and Weishoff & Richards, LLC argued that the Appellate Court's interim stay of the eviction proceedings should be dissolved so that Livingstone can get evicted because Livingstone has filed this instant Federal Complaint; Motions, and State Court Appeals and owes defendants $12, 000 attorney fees (*see* Exhibit "W," Page 4).

139.    As a result, on September 25, 2019, the Appellate Court entered an Order dissolving the interim stay of eviction proceedings. For orderly removal, the Court allowed up to October 7, 2019 for Livingstone to be evicted (Exhibit "Y," pp. 11-12).

140.    Defendants filed an eviction complaint in July 2019 demanding Livingstone's eviction for nonpayment of **$1,938.77** rent as a debt appearing on the face of the eviction complaint and summons (Ex. M) as well as the Collections Letter (Ex. M.1). Yet, in September 2019, after Livingstone paid all the base rent and additional rent, Defendants cobbled a **$12,000** debt against Livingstone, demanded, and obtained Livingstone's eviction over it the $12,000 (Exhibits "N.2" & "Y") to evict, injure, and harm Livingstone.

141.    Meanwhile, the $12,000 Attorney fees does not appear anywhere on the face of both the third collections letter and the eviction complaint (Exhibits "M" & "M.1") at all.

Page 45 of 85

142. ~~Defendants never sent Livingstone any collections letter at all stating the $12,000 debt to give Livingstone the required 30 days to dispute the $12, 000 debt.~~

143. ~~For each of the above-stated reasons, Livingstone was entitled to the protections of the FDCPA in connection with the eviction proceedings unilaterally scheduled by Defendants and the State Court which actually resulted in Livingstone's eviction from housing.~~

144. ~~Defendants knowingly and recklessly denied Livingstone protections under the FDCPA by formulating, implementing, and applying procedures which deprived Livingstone of the right to a fair debt collection and the right to eviction hearings by an impartial and unbiased Court.~~

145. ~~Plaintiff pleads that this Federal Court and the jury should award substantial punitive damages against Defendants, very substantial enough to deter Defendants and other Landlords and Attorneys, because the foregoing shows a *pattern* whereby Defendants repeatedly, intentionally, deliberately, maliciously, and recklessly disregarded the FDCPA safeguards in their collection and litigation efforts over the debt.~~

146. ~~By direct and proximate cause, Livingstone has incurred actual irreparable harm and injury as a result of the aforementioned reckless and malicious disregard to the safeguards of the FDCPA by defendants' and malicious and deceptive practices because both the State Trial Court and the Appellate Court relied upon the erroneous, disputed, or undisputed debts defendants presented to evict Livingstone from the comfort of his housing at Haddon Point Apartments to street homelessness for which no amount of money can compensate.~~

147. ~~As a further direct and proximate cause, Livingstone has incurred irreparable informational harm and injury as a result of the aforementioned reckless disregard to the safeguards of the FDCPA because the State Trial Court and the State Appellate Court relied~~

*Form Amended Complaint With Strikethroughs and Underlines*

upon the erroneous and disputed debts to evict Livingstone from the comfort of his housing at Haddon Point Apartments.

148.     Defendants have inflicted irreparable injury and inconvenienced Livingstone because the collections, eviction litigation proceedings, and the eviction from housing that occurred in October 2019 dislocated Livingstone from housing at Haddon Point Apartments in October 2019 and inconvenienced him as a graduate student who needed his own stable housing to remain organized in pursuit of his graduate studies.

149.     Defendants have caused informational harm to Livingstone because none of the three eviction complaint in public record were amended for accuracy and the busy state Court Judges who never reviewed the dockets of this federal court for accuracy of Defendants' claim also relied upon the $12, 000 attorney fees demand whereas this Federal Court has not awarded any attorney fees to any party in this action.

150.     As a result of Defendants' sadistic and unlawful conduct, Livingstone had to withdraw from a Physics class at Rowan University because the eviction proceedings distracted his academic focus and inconvenienced him from timely completion of the required Physics class which is prerequisite class for timely admission into a dual Doctorate degree Program in Neuroscience and Law (i.e. joint PhD-JD degrees) or dual medical and law degree programs (MD-JD) at Vanderbilt University, for example. [4] The withdrawal from the Physics ultimately resulted in educational debt at Rowan University.

151.     As a direct and proximate result of Defendants' unlawful conduct as described herein, Livingstone has suffered, and continues to suffer, irreparable injury which cannot be fully

---

[4]     See https://www.lawneuro.org/; see also, https://law.vanderbilt.edu/prospective-students/dual-degree-programs.php

*Form Amended Complaint With Strikethroughs and Underlines*

~~compensated by an award of monetary damages for which Livingstone is entitled to preliminary and permanent injunctive relief as well as damages in an amount to be determined by the Court and reasonable costs of this lawsuit, including reasonable attorney fees.~~

*152.* ~~As a further direct and proximate result of Defendants' unlawful conduct as described herein, Plaintiff Livingstone has been caused and will continue indefinitely into the future to be caused severe mental anguish, humiliation, anxiety, stress, and emotional and/or psychological distress, all with associated physical symptoms.~~

*153.* ~~WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against all Defendants named in the caption of this instant complaint jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $20 million, exclusive of interest and costs; including repayment of double the security deposit $1520; preliminary, declaratory, and injunctive relief; an award of reasonable attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.~~

## COUNT IV

## 42 U.S.C. § 1983 -- VIOLATION OF DUE PROCESS CLAUSE— PROCEDURAL DUE PROCESS
## MICHAEL O. LIVINGSTONE v. DELCO DEVELOPMENT, INC., HADDON POINT RENEWAL, LLC; HADDON POINT MANAGER, LLC; WEISSHOFF AND RICHARDS, LLC

*109.* Plaintiff incorporates herein by reference each and every one of the allegations contained in preceding paragraphs as though fully set forth at length herein.

*110.* The conduct of Defendants, as set forth hereinabove constitutes conduct under color of State Law which deprived Plaintiff of the due process and equal protection of the laws

*Form Amended Complaint With Strikethroughs and Underlines*

as secured by the Fourteenth Amendment to the United States Constitution in the manner described in the following paragraphs.

- **Allegations demonstrating that the Private Defendants Are State Actors Because Defendants Acted In Conspiracy and Joint Action with the State Of New Jersey to Evict Plaintiff from Housing.**

*154.* Plaintiff pleads that this Court should hold the private Defendants as State Actors for the purposes of section 1983 because of the following reasons:

i) The private Defendants acted in direct nexus, joint action, and direct conspiracy with State of New Jersey through the State Judiciary Branch of Government in their quest to evict Livingstone from Housing.

ii) The private Defendants used the State Government to file three (3) eviction complaints against Livingstone that are attached as exhibits to this Complaint bearing the seal of the State of New Jersey ( Exhibits "B," "C," and "M").

iii) The attached factual and adjudicative records show that unlike other private Landlords who evict tenants on their own or by agreement, Haddon Point conspiratorially sought, obtained, and used the coercive and compulsive powers of the State of New Jersey to achieve their collections activities and evict Livingstone from Haddon Point Apartments.

iv) The attached adjudicative records show that the private Defendants sought, obtained, and used the coercive powers of the State Court of New Jersey to command Livingstone's eviction from Haddon Point Apartments in September - October 2019 (Exhibits W & Y).

v) The attached factual and adjudicative records show that the private Defendants conspired and took joint action with the State of New Jersey by using the Judicial Branch of New

*Form Amended Complaint With Strikethroughs and Underlines*

Jersey Government to issue Summonses to compel Livingstone's appearance before the State Trial Court during the summary dispossession eviction litigation and debt collection efforts.

vi) In July 2019, the private Defendants conspired and took joint action with the State of New Jersey by obtaining a Warrant of Removal and other Court Orders to achieve Livingstone's eviction from Haddon Point Apartments (Exhibit. "Y," pp.3-4).

vii) It was a New Jersey State Representative who publicly posted the Warrant of Removal in front of Livingstone's Apartment door at Haddon Point Apartments, although Haddon Point applied for the Warrant of Removal and obtained it from the State of New Jersey (Exhibit. "Y," pp.3-4). Hence, there was joint action between Haddon Point and the State of New Jersey to evict Livingstone.

viii) The private defendants used the coercive powers of the State to evict Livingstone. During the September 12, 2019 post-trial motion hearing, the private Defendants conspired with the State of New Jersey to retaliate against Livingstone by specifically asking the State of New Jersey to reject Livingstone's payment of the $405 additional rent and evict Livingstone from Haddon Point Apartments in equity for bringing this federal complaint against Defendants including filing other petitions such as Appeals and motions (Exhibit N.2, Page 12, Lines 11-20 to Page 13, Lines 1). The State of New Jersey agreed with Defendants and allowed the lockout /eviction to proceed against Livingstone and ordered the $405 additional rent payment to be returned to Livingstone for the eviction to proceed. *Id.*

ix) For each of the foregoing statements, Plaintiff pleads that this Federal Court should hold the private defendants as State actors for the purposes of section 1983 on grounds that there was sufficient joint action, sufficient state coercion and compulsion, and sufficient conspiracy between the Defendants and the State of New Jersey.

*Form Amended Complaint With Strikethroughs and Underlines*

155.    For each of the following reasons, Plaintiff was entitled to the protections of the Due Process Clause of the Fourteenth Amendment to the United States Constitution in connection with the summary dispossession eviction proceedings and debt collections efforts that was unilaterally scheduled by the defendants and tried or heard by the State Court on April 25, 2019, June 6, 2019, August 15, 2019, and September 12, 2019, which could result or resulted in eviction, and which resulted in deprivation or impairment of Plaintiff's constitutionally-protected property interests in his leasehold to stable housing; liberty interests to his reputation and rental reputation; and liberty interests against the stigma and psychological impact of homelessness.

156.    The following facts demonstrate that all three (3) eviction complaints were defective against the procedural safeguards of proper notice requirements under due process:

157.    The first eviction complaint (Exhibit "B") was improper notice because it was defective complaint demanding *inter alia* an erroneous $13.22 March 2019 water bill (Exhibit "B," Page 2; *see* also Exhibit "F," Page 7).

158.    Defendants failed to correct the erroneous and defective water bill from the first eviction Complaint in public record even after Plaintiff used postal mail and emails between March 21-26, 2019 (Exhibit "R") to ask Defendants to file an Amended Complaint by April 5, 2019 reflecting the accurate March 2019 water bill of $14.11.

159.    Defendants also intentionally failed to correct the erroneous and defective Complaint in public record even after Plaintiff used postal mail and emails on March 26, 2019 (Exhibit "R") asking Defendants to file amended complaint reflecting the remaining disputed additional rent debt of $558 because Plaintiff had already paid the base rent of $3,053.22 around March 15, 2019.

*Form Amended Complaint With Strikethroughs and Underlines*

*160.*   Further, to Livingstone's surprise, during the June 6, 2019 second eviction trial itself, Defendants demanded $1000 attorney fees collectable as additional rent under the lease for judgment of possession because of previous May 2019 post-judgment motions Livingstone filed to enforce the Court's previous April 25, 2019 ruling dismissing the first eviction complaint. *See* Exhibit "P" at Page 5, Lines 12-14:

> …and then $1,000 broken up between having to defend against the two motions that the defendant [Livingstone] filed.

Nowhere does the second eviction Complaint and Summons (Exhibit "C") plead $1000 attorney total on its face as May 2019 attorney fees. Indeed, only $500 of the $1000 attorney fees appears on the face of the second eviction complaint as part of the $"Prev. legal $754.00" component showing on Page 2 of the second eviction Complaint.

*161.*   Further, around July 19, 2019, Defendants filed a third eviction complaint (Exhibit "M") containing a defective and erroneous $13.77 *July* water bill, which was not accurate for *July* 2019. Instead, it is accurate water bill for *June* 2019. (*See* Ledger entry Exhibit Z, Pages 2-3). Defendants did not correct the erroneous $13.77 July 2019 water bill on the third eviction complaint. The eviction trial proceeded as scheduled on August 15, 2019.

*162.*   Further, during the September 12, 2019 motion hearing, Haddon Point demanded Livingstone's eviction from housing on equitable grounds that Livingstone owes $12,000 in Attorney fees stemming from this instant federal litigation, State and federal motions, and State Court Appeals. (Exhibit N.2, Pages 12-13, Lines 11-20 *et seq* to Page 13, lines 1).

*163.*   Meanwhile, the $12,000 does not appear anywhere on the third eviction complaint at all ( Exhibit "M")

*164.*   In their September 20, 2019 response to the State Appellate Court, Defendants Richards, Haddon Point, and Weishoff & Richards, LLC argued that the Appellate Court's

*Form Amended Complaint With Strikethroughs and Underlines*

interim stay of the eviction proceedings should be dissolved so that Livingstone can get evicted because Livingstone has filed this instant Federal Complaint; Motions, and State Court Appeals and owes defendants $12,000 attorney fees (Exhibit "W," Page 4). Accordingly, on September 25, 2019, the Appellate Court entered an Order dissolving the interim stay of eviction proceedings for Livingstone to be evicted (Exhibit "Y," Pages 11-12). Meanwhile, the $12,000 does not appear anywhere in the third eviction complaint at all.

165.    Defendants' third eviction complaint filed in July 2019 demands Livingstone's eviction in equity for nonpayment of $1,938.77 rent as a debt appearing on the face of the eviction complaint and summons (Ex. M). Yet, in September 2019, Defendants surprisingly demanded that Livingstone should be evicted because he owes $12,000 debt for his eviction.

166.    Livingstone avers that defendants' actions flies in the face of the notice requirements of procedural due process notice requirements because the $12,000 Attorney fees does not appear anywhere on the face of the third eviction complaint notice at all (Exhibits "M" & "M.1") at all.

167.    Defendants never notified Livingstone before the September 12, 2019 hearing that Livingstone owes them $12,000 attorney fees before Defendants demanded that $12,000 for Livingstone's equitable eviction. Livingstone was therefore surprised by the $12,000 demand because it never appeared on the face of the third eviction complaint itself and he was unaware that he owes defendants $12,000.

168.    Moreover, this Federal Court has not awarded any $12,000 attorney fees to Defendants over this ongoing instant case. Yet, Defendants went against procedure to award themselves $12,000 attorney fees over this case in State Court and demanded and obtained Livingstone's eviction in equity over it in September-October 2019.

*Form Amended Complaint With Strikethroughs and Underlines*

169. The Landlord –Tenant Court and the Appellate Court has never awarded any $12,000 attorney fees for Defendants against Livingstone for filing motions and Notices of Appeal. Yet, Defendants went against procedure to award themselves $12,000 attorney fees and demanded and obtained Livingstone's eviction in equity over it in September-October 2019.

170. Further, after Haddon Point evicted Livingstone from housing between October 4-7, 2019 (Exhibit "Y"), Haddon Point issued a security deposit statement around October 31, 2019 to Livingstone (Exhibit "Z") stating that Haddon Point has used $1000 of Livingstone's Security Deposit of $1520 to pay themselves the disputed $1000 attorney fees stemming from Livingstone's May 2019 post-trial motions (Ex. O) to enforce the Court's April 25th dismissal in Livingstone's favor (*cf.* Exhibits "F" & "P").

171. Livingstone pleads that this flies in the face of procedural due process because no Court awarded Haddon Point the disputed $1000 as attorney fees collectable as additional rent or debt before Haddon Point used Livingstone's security deposit to pay itself the disputed $1000.

172. Procedure requires that Attorney fees should be awarded by a Court before it can be collected. Haddon Point failed to comply with procedures by awarding itself $1000 Attorney fees and impermissibly used Livingstone's security deposit to pay themselves without going through the necessary litigation procedures for the Court to award the attorney fees or not.

173. For each of the above-stated reasons, Livingstone was entitled to the protections of proper notice under procedural due process clause in connection with the eviction proceedings and collections efforts that was unilaterally scheduled by Defendants and the State Court.

174. As a direct and proximate result of Defendants' unlawful conduct as described herein, Livingstone has suffered, and continues to suffer irreparable damages which cannot be fully compensated by an award of monetary damages for which Livingstone is entitled to

*Form Amended Complaint With Strikethroughs and Underlines*

preliminary and permanent injunctive relief as well as damages in an amount to be determined by the Court and reasonable costs of this lawsuit, including reasonable attorneys' fees.

175. As a further direct and proximate result of Defendants' unlawful and sadistic conduct as described herein, Livingstone suffered the traumatic event of eviction from housing which rendered him homeless with despair, which in turn affected his graduate studies.

176. As a further direct and proximate result of Defendants' unlawful and sadistic conduct as described herein, Livingstone has been caused and will continue indefinitely into the future to be caused severe mental anguish, humiliation, anxiety, stress, and emotional and/or psychological distress, all with associated physical symptoms.

177. WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against all Defendants named in the caption of this instant complaint jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $30 million, exclusive of interest and costs; preliminary, declaratory, and injunctive relief, an award of reasonable attorneys' fees, costs and other costs and disbursements in this action; double repayment of the $1000 and such other and further relief as the Court may deem just and equitable.

## ~~COUNT IV~~

### ~~DEFAMATION, DEFAMATION PER SE~~
### ~~MICHAEL LIVINGSTONE V. ALL DEFENDANTS~~

111. ~~Plaintiff incorporates herein by reference each and every one of the allegations contained in preceding paragraphs as though fully set forth at length herein.~~

112. ~~At all times mentioned herein, Plaintiff was a law-abiding Citizen of New Jersey who enjoyed the respect, confidence, and esteem of his neighbors, as well as of all others in the community, and has never been guilty of any crime, offense, or violation of the law which would~~

*Form Amended Complaint With Strikethroughs and Underlines*

tend to lessen the respect, confidence, and esteem which he has enjoyed, and to which he was entitled.

113.    Defendants, well knowing the facts set forth in the preceding paragraph concerning plaintiff's reputation in the community and with intent to injure Plaintiff and bring him into public scandal and disgrace, knowingly and maliciously, or with reckless disregard for the truth or negligently and carelessly published or caused to be published the scandalous, defamatory, and libelous statements of and concerning Plaintiff Livingstone.

114.    Specifically, Defendants caused to be published into public records that Plaintiff owes and cannot pay $13.22 March 2019 water bill. Yet, Plaintiff never owed defendants $13.22 water bill for March 2019 at all.

115.    On March 18, 2019, Defendants filed into public court record an eviction complaint that is defamatory because Plaintiff never owed $13.22 as March 2019 water bill to defendant Haddon Point at all. (Ex.B. p.2). *See* also Ex.F, Page 7 (Judge Wells taking issue with defendants' failure to amend the complaint.)

116.    Defendants failed to correct this erroneous and deceptive $13.22 March 2019 water bill from public record even after Plaintiff used postal mail and several emails to ask Defendants to file an amended complaint reflecting the actual paid March 2019 water bill of $14.11

117.    Now that the March 18, 2019 eviction complaint is dismissed by the Landlord-Tenant Court on April 25, 2019 (Ex.F) and it can no longer be amended in the public record, Defendants have forced Plaintiff Livingstone to be permanently perceived and stigmatized by the public as someone who cannot pay a mere $13.22 March 2019 water bill (which Plaintiff never owed).

*Form Amended Complaint With Strikethroughs and Underlines*

118.   To the extent that $13.22 is a small amount, therein lays the defamation that Plaintiff is an irresponsible person who cannot pay mere $13.22 water bill and so Defendant Haddon Point sued to seek Plaintiff's eviction over mere $13.22 water bill too.

119.   The statements contained in the written communications identified and described above are entirely false insofar as they reflect upon Plaintiff's conduct as well as his character and reputation.

120.   Defendants knew that the statements contained in the written communication identified and described above were false when made, and Defendants published them either intentionally and maliciously, or with reckless disregard for their truth or falsity, or negligently and carelessly

121.   The false and defamatory statements contained in the written communication identified and described above applied to Plaintiff Livingstone will understood by recipients of the statements to have a defamatory meaning

122.   The publication of the false and defamatory statements contained in the written communications identified and described above and other similar false and defamatory statements of which Livingstone is not yet aware may have been and may continue to be republished, and so Plaintiff Livingstone likewise demands presumed, compensatory, economic and punitive damages for the harm flowing from any and all such republications of the false and defamatory statements in addition to damages for the harm flowing from their initial publication.

123.   To the extent Defendants may attempt to assert in their own defense the privileged character of the occasion on which the false and defamatory statements were published, any such conditional privilege was abused by Defendants and thereby waived and forfeited.

*Form Amended Complaint With Strikethroughs and Underlines*

*124.* ~~The aforementioned false and defamatory statement maliciously, intentionally, recklessly, and falsely, by words, innuendo, inference and manner in which they were presented holds Livingstone out to public scorn and ridicule and attributed irresponsible conduct to Livingstone. The aforementioned false and defamatory statements were in no manner privileged nor constitutes fair comment on matters of public concern or interest.~~

*125.* ~~The aforementioned false and defamatory statements were published with knowledge that said statements; innuendo, inference and manner in which they were presented were false and/or with reckless disregard for whether said material was false, said conduct constituting actual malice.~~

*126.* ~~The written defamatory $13.22 March 2019 water bill communication were published by defendants into public records in a negligent manner without adequately investigating the underlying facts.~~

*127.* ~~The $13.22 March 2019 water bill was false and implications set forth above were false, and Defendants either knew or should have known at the time of publication that they were false and even after repeatedly drawing defendants' attention to it, defendants still failed to correct it.~~

*128.* ~~The statements and implications set forth above constitute defamatory publications that are actionable *per se* and were published with actual malice.~~

*129.* ~~The above statement has severely injured and caused special harm to Plaintiff Livingstone in that they have tended to (a) blackened his reputation; (b) expose him to hatred, contempt, ridicule, and humiliation as irresponsible man who cannot pay $13.22 water bill; and (c) ascribe to him characteristics incompatible with the proper conduct expected of a law abiding and trustworthy citizen.~~

*Form Amended Complaint With Strikethroughs and Underlines*

130.   As a direct and proximate result of the intentional, malicious, reckless, negligent and/or careless statements and charges contained in the written communications identified and described above and their publication to third parties, Livingstone's reputation and esteem in the community has been adversely affected.

131.   As a further direct and proximate result of the aforementioned defamatory written communications third party landlords who access the court public records will be deterred from associating with or otherwise doing business with Livingstone; and a loss of his enjoyment of life; and Livingstone otherwise suffered in reputation, feelings, and peace of mind, to his damage. The conduct of the aforementioned false and defamatory statements was outrageous and Defendants acted in bad faith and/or with reckless disregard and indifference to the truth to the interests of Livingstone for which Livingstone claims an additional sum for punitive damages.

132.   As a result of Defendants' malicious publication of the false and defamatory statements complained of herein, Livingstone is entitled to recover from Defendants such presumed, compensatory, and economic damages in excess of $300,000.00 as will compensate him for his actual injury to his personal reputation, and for mental anguish, suffering, and severe emotional distress; and in addition, punitive damages which will punish Defendants and deter them from repetition in the future.

133.   As a direct and proximate result of Defendants' unlawful conduct as described herein, Livingstone has suffered, and continues to suffer, irreparable injury which cannot be fully compensated by an award of monetary damages for which Livingstone is entitled to preliminary and permanent injunctive relief as well as damages in an amount to be determined by the Court and reasonable costs of this lawsuit, including reasonable attorneys' fees.

134.   As a further direct and proximate result of Defendants' unlawful conduct as described herein, Plaintiff Livingstone has been caused and will continue indefinitely into the future to be caused severe mental anguish, humiliation, anxiety, stress, and emotional and/or psychological distress, all with associated physical symptoms.

135.   WHEREFORE, Plaintiff Michael Livingstone demands judgment against all Defendants named in the caption of this instant complaint jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $300,000, exclusive of interest and costs; preliminary, declaratory, and permanent injunctive relief; an award of reasonable attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

## COUNT V

## FRAUD

## MICHAEL LIVINGSTONE V. ALL DEFENDANTS

136.   Plaintiff incorporates herein by reference each and every one of the allegations contained in preceding paragraphs as though fully set forth at length herein.

137.   On March 18, 2019, Defendants filed into public court record an eviction complaint that is deceptive and fraudulent because it contained a $13.22 March 2019 water bill whereas Plaintiff Livingstone never owed $13.22 as March 2019 water bill to Haddon Point. (Ex.B. p.2). *See* also Ex.F, Page 7 (Judge Wells taking issue with defendants' failure to amend the complaint.)

138.   Defendants failed to correct their erroneous and deceptive water bill from public record even after Plaintiff used postal mail and several emails to ask Defendants to file an

*Form Amended Complaint With Strikethroughs and Underlines*

amended complaint reflecting the actual already-paid March 2019 water bill in the accurate amount of $14.11, not $13.22.

139.  On March 15, 2019, Plaintiff already paid the February 2019 rent with water bill and March 2019 rent for $3,053.22 to defendants and so the remaining disputed balance on Ex. B should have been $558. Yet, Defendants failed to file an amended eviction complaint to reflect the accurate amount in the public court record.

140.  Plaintiff disputed the debt with a timely memorandum and email dated March 20, 2019, 10:43 PM that was also sent by postal mail. However, Defendants did not "suspend efforts (through litigation or otherwise) to collect the debt until …"despite what defendants' March 6 standard collections letter says.

141.  For each of the above-stated reasons, Plaintiff is entitled and was entitled to proper and accurate notice.

142.  Now that the March 18, 2019 eviction complaint is dismissed by the Landlord-Tenant Court on April 25, 2019 (Ex.F) and it can no longer be amended in the public record, Defendants have forced Plaintiff Livingstone to be permanently-perceived and stigmatized by the public as someone who cannot pay a mere $13.22 March 2019 water bill (which Plaintiff never owed).

143.  As a direct and proximate result of Defendants' unlawful conduct as described herein, Plaintiff Livingstone has suffered, and continues to suffer, irreparable injury which cannot be fully compensated by an award of monetary damages for which Livingstone is entitled to preliminary and permanent injunctive relief as well as damages in an amount to be determined by the Court and reasonable costs of this lawsuit, including reasonable attorneys' fees.

144. ~~As a further direct and proximate result of Defendants' unlawful conduct as described herein, Livingstone has been caused and will continue indefinitely into the future to be caused severe mental anguish, humiliation, anxiety, stress, and emotional and/or psychological distress, all with associated physical symptoms.~~

145. ~~WHEREFORE, Plaintiff Michael Livingstone demands judgment against all Defendants named in the caption of this instant complaint jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $300,000, exclusive of interest and costs; preliminary, declaratory, and injunctive relief; an award of reasonable attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.~~

## COUNT V

1) **42 U.S.C. § 1983 – RETALIATION UNDER U.S. CONSTITUTION FIRST AMENDMENT RIGHT TO PETITION**

2) **NJ Const. § V, ¶ 2;**

3) **NJ Const. Art. 1, ¶18**

**MICHAEL O. LIVINGSTONE v. DELCO DEVELOPMENT, INC., HADDON POINT RENEWAL, LLC; HADDON POINT MANAGER, LLC; WEISHOFF & RICHARDS, LLC**

178. Plaintiff incorporates herein by reference each and every one of the allegations contained in preceding paragraphs as though fully set forth at length herein.

179. The conduct of Defendants, as set forth hereinabove, constitutes conduct under color of State Law which retaliated Plaintiff' right to petition for redress of grievances and access to the Courts under both the United States Constitution and the New Jersey Constitution in the manner described in the following paragraphs.

*Form Amended Complaint With Strikethroughs and Underlines*

*180.* Particularly, Plaintiff incorporates herein by reference the aforementioned allegations that the private Defendants are state actors because Defendants acted in conspiracy and joint action with the State of New Jersey, and used the coercive powers of the State to evict Plaintiff from Housing.

*181.* On September 12, 2019, defendant Rotsides uttered the alleged retaliatory statement in reprisal against Livingstone's protected activities and Livingstone's exercise of his right to petition.

*182.* Specifically, the alleged retaliatory statement can be found in the attached Transcript Exhibit "N.2," Page 12, Lines 11-20 to Page 13, Lines 1; *et seq* Pages 16 (Lines 23-25); Page 17 (Lines 1- 4) during an exchange between Haddon Point's Defendant-Attorney Rotsides, Plaintiff's Attorney Mr. Charles Izzo, and the State Court Judge Richard Wells (Emphasis added):

MR. ROTSIDES:

…In the interest of equity, Your Honor, I would ask this Court to consider that my office has spent 45.7 hours not on the evictions, but defending his various motions, both in the state and **federal level, all of which thus far, without exception, have been dismissed**. In sum, my client has racked up a bill of a hair under $12,000 defending against his motions. There were three in the LT, two notices appeal, and **three federal motions, all of which have been dismissed.** There are currently pending two more landlord/tenant motions, three more federal motions, two more attempts at his misfiled appeals, and of course **the federal complaint itself,** which is pending, my Motion to Dismiss, Your Honor.

MR. IZZO:

Your Honor, **the bill was $405, and Mr. Livingstone has paid the $405.**

MR. ROTSIDES:

Your Honor, for point of clarification, **there is the $405 he did post** with the court. **We're asking that can be returned to him and we'll proceed with the lockout in normal course.**

THE COURT: All right.

MR. ROTSIDES: Thank you, Your Honor.

*Form Amended Complaint With Strikethroughs and Underlines*

(Proceedings concluded at 11:15:33 a.m.)

(Emphasis added)

183.    The above statement shows that Plaintiff was not evicted for non-payment of rent contrary to what the third eviction complaint (Ex. M) demanded. Instead, Plaintiff was evicted in equity for engaging in the protected activities including: (i) bringing this federal lawsuit against Defendants; (ii) filing motions in State Court and in this Federal Court to defend against the eviction and motions to challenge the lease clauses; and (iii) filing Notices of Appeal in State Court against his Landlord and the other Defendants.

184.    In essence, Defendants filed and served the third eviction action (Exhibit "M") upon Livingstone in July 2019 on grounds of "non-payment of rent" to seek the equitable relief of Livingstone's eviction from housing at Haddon Point Apartments. When Livingstone paid all the rent remaining the additional rent, Defendants rejected the additional rent $405 and pursued the eviction on grounds that Livingstone has filed federal and state petitions against Defendants.

185.    As a United States Citizen and a Tenant at Haddon Point Apartments, Plaintiff cannot be retaliated against with adversarial eviction from housing for filing Federal and State petitions against his Landlord and the defendants.

186.    Livingstone avers that he has a right under NJ Const. § V, ¶ 2; and NJ Const. Art. 1, ¶18 to file Notices of Appeal for appellate review of adverse State Court action to the State's Appellate Division without suffering any adversarial eviction from housing in retaliation.

187.    As a United States Citizen and a Tenant at Haddon Point, Plaintiff has a constitutionally-protected interest to his continued housing which is negatively impacted by the eviction which has resulted in Plaintiff's eviction from Haddon Point Apartments in retaliation

Page 64 of 85

*Form Amended Complaint With Strikethroughs and Underlines*

for asserting and exercising his constitutionally- protected *rights to petition* and *right of access* to the Courts.

188.    Plaintiff avers that he was irreparably-injured and inconvenienced by the eviction from housing that occurred in October 2019 (Exhibits Y & W).

189.    Plaintiff was actually-injured and harmed by Defendants' retaliatory eviction from Housing because the eviction dislocated Plaintiff from housing at Haddon Point Apartments in October 2019.

190.    WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against all Defendants named in the caption of this instant complaint jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $50 million exclusive of interest and costs; declaratory, preliminary, and permanent injunctive relief; an award of reasonable attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable to prevent defendants from further retaliation from Defendants.

## COUNT VII

### SUBSTANTIAL WASTE OF TIME.
### MICHAEL LIVINGSTONE V. ALL DEFENDANTS

146.    Plaintiff incorporates herein by reference each and every one of the allegations contained in preceding paragraphs as though fully set forth at length herein.

147.    The conduct of Defendants, as set forth hereinabove, constitutes conduct under color of state law which deprived Plaintiff of the due process and equal protection of the laws as secured by the Fourteenth Amendments to the United States Constitution in the manner described in the following paragraphs.

Page 65 of 85

*Form Amended Complaint With Strikethroughs and Underlines*

148. ~~Defendant Beacher caused Plaintiff to be served with a Court Summons and Complaint demanding possession Plaintiff's apartment under N.J.S.A. 2A:18-53 filed by the Landlord-Tenant Court on March 18, 2019 with a court trial date scheduled for April 25, 2019 ( Exhibit B)~~

149. ~~On the court trial date of April 25, 2019, Defendant Beacher did not show up at the Court house at all.~~

150. ~~Defendant Rotsides informed the Landlord-Tenant Court that defendant Beacher is unable to appear before the Court because of an "emergency conflict of schedule with someone else" and so Haddon Points seeks continuance. *See* Exhibit "F."~~

151. ~~Whereupon, Plaintiff objected and moved the Court to dismiss the complaint and the Court dismissed that first eviction complaint. *See* Exhibit "F"~~

152. ~~On May 15, 2019, Defendant Beacher acting through her Attorney-- defendants Rotsides and Richards-- caused Plaintiff to be served with another Summons and Complaint demanding possession under N.J.S.A. 2A:18-53 filed by the Landlord-Tenant Court on March 20, 2019 with a new court trial date scheduled for June 6, 2019 (Exhibit C) which once again brings the disputed February and March 2019 late rent payment fees that formed the basis of the first dismissed eviction complaint (Exhibit B).~~

153. ~~By bringing the second eviction action against Plaintiff containing the previously dismissed fees, Plaintiff once again has to spend precious time to appear before the Landlord-Tenant Court on June 6, 2019 over the same previously-dismissed case, which presents a waste of time.~~

154. ~~Defendant Beacher knowing very well one-month in advance that a court trial date was scheduled for April 25, 2019 over the first eviction complaint she filed chose to honor a~~

Page 66 of 85

*Form Amended Complaint With Strikethroughs and Underlines*

meeting with "someone else" on the April 25, 2019 Court trial date, thereby wasting the precious time of Plaintiff who spent his time to appear before the Landlord-Tenant Court that day, thereby wasting Plaintiff's time.

155.    Plaintiff appeared in that Landlord—Tenant Court on April 25, 2019 expecting to get that matter done with only for his precious time to be wasted by the absence of Defendant Beacher.

156.    Plaintiff will now have to appear before the Landlord-Tenant Court once again on June 6, 2019, which presents another waste of his time.

157.    Plaintiff believes and therefore aver that Defendant Rotsides failed to counsel Defendant Beacher not to schedule anything else on the April 25, 2019 Court date.

158.    As a graduate student with a rigorous academic workload and strict academic deadlines to meet, Plaintiff does not have time to be wasted like that. Yet, Defendant Beacher wasted Plaintiff's time by causing Plaintiff to be summoned before the Landlord—Tenant Court on April 25, 2019 and failing to appear before the Court and then suing Plaintiff once again over the same matter that was dismissed for Plaintiff to be compelled once again to appear before that same court on June 6, 2019.

159.    As a full-time graduate student with a rigorous academic workload and academic deadlines to meet, Plaintiff's focus on his academic work has been recklessly distracted by defendant Beacher's failure to honor court dates she summoned against Plaintiff.

160.    Defendant Beacher recklessly and intentionally wasted Plaintiff's time by causing Plaintiff to be summoned before the Landlord—Tenant Court on April 25, 2019 and failing to appear before the Court with pretextual excuse of "conflict of schedule with someone else" and

*Form Amended Complaint With Strikethroughs and Underlines*

then suing Plaintiff again over the same case or controversy that was dismissed for Plaintiff to spend his time again on June 6, 2019 on the second eviction complaint hearing.

161.   As a direct and proximate result of Defendants' unlawful conduct as described herein, Plaintiff Livingstone has suffered, and continues to suffer, irreparable injury which cannot be fully compensated by an award of monetary damages for which Livingstone is entitled to preliminary and permanent injunctive relief as well as damages in an amount to be determined by the Court and reasonable costs of bringing this lawsuit, including reasonable attorneys' fees.

162.   WHEREFORE, Plaintiff Michael Livingstone demands judgment against all Defendants named in the caption of this instant complaint jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $300,000, exclusive of interest and costs; declaratory, preliminary, and permanent injunctive relief against the second eviction proceedings scheduled for June 6, 2019; an award of reasonable attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable to prevent defendants from further retaliation from Defendants.

## COUNT VIII

### FAIR HOUSING ACT OF 1968, AS AMENDED IN 1988 (42 U.S.C. 3601 *et seq)* or EQUAL HOUSING OPPORTUNITY ACT
### MICHAEL LIVINGSTONE v. HADDON POINT MANAGER LLC.; HADDON POINT RENEWAL, LLC; DELCO DEVELOPMENT LLC.

163.   Plaintiff incorporates herein by reference each and every one of the allegations contained in preceding paragraphs as though fully set forth at length herein.

164.   Plaintiff asserts his standing as a Tenant at Haddon Point Apartments, and brings this cause of action on behalf of all Tenants of Haddon Point Apartments.

*Form Amended Complaint With Strikethroughs and Underlines*

165.   ~~The conduct of Defendants, as set forth hereinabove, constitutes conduct which deprived Plaintiff's rights in the manner described in the following paragraphs:~~

166.   ~~Defendants impose 10% late rent payment fees upon Haddon Point Tenants, which is inconsistent with the lower 5% late fees the Courts of New Jersey normally enforce. See Exhibit A, Page.2, at 1.7(b).~~

167.   ~~Plaintiff avers that the 10% late rent payment fees is not fair, unreasonable, and unconscionable and must be stricken down or reduced to 5% by this Court.~~

168.   ~~By charging 10% late rent payment fees, this unfairly imposes undue financial hardship upon low-income tenants or non-income generating tenants such as students like Plaintiff Livingstone who equally need off-campus housing at Haddon Point to do their coursework.~~

169.   ~~Plaintiff avers that the one-bedroom unit defendants have rented to Plaintiff for $1520.00 rent per month was not furnished and it does not include any utilities. Charging 10% late rent payment fees on top of that is therefore unfair.~~

170.   ~~Moreover, Defendants accepted Plaintiff's federal student financial aid award letter from DeVry University as "the form of income" during contracting of the lease.~~

171.   ~~By accepting Plaintiff's federal student financial aid as "the form of income" during contracting of the lease, Defendants knew or *should have known* that there can be delays in the disbursement of federal student financial aid.~~

172.   ~~By accepting Plaintiff's federal student financial aid refunds as "the form of income" during contracting of the lease, Plaintiff alleges that Defendants *assumed the risk* of delayed processing of federal student financial aid for timely payment of housing rent.~~

Page 69 of 85

173. ~~Plaintiff alleges that after assuming the risk by accepting Plaintiff's federal student financial aid as "the form of income" during contracting of the lease, Plaintiff avers that Defendants now seek to make more money from Plaintiff through unreasonable, unconscionable, and exorbitant 10% late fees.~~

174. ~~In addition, by email dated, Apr 30, 2019, 5:38 PM, Plaintiff requested an addendum to the lease to reform the lease contract and change the rent payment due date from the 1st of every month to the 17th of every month due to changes in the payment schedule of Plaintiff's federal student financial aid refunds from DeVry University. *See* Exhibit "H." However, Defendants declined to sign the addendum to the lease so that they can keep charging Plaintiff the 10% late fees on top of the exorbitant $1520 rent.~~

175. ~~As a direct and proximate result of Defendants' unlawful conduct as described herein, Plaintiff Livingstone has suffered, and continues to suffer, irreparable injury which cannot be fully compensated by an award of monetary damages for which Livingstone is entitled to preliminary and permanent injunctive relief as well as damages in an amount to be determined by the Court and reasonable costs of bringing this lawsuit, including reasonable attorneys' fees.~~

176. ~~Defendants should be enjoined to execute the addendum to the lease and reduce the late rent payment fees from 10% to 5% for all tenants of Haddon Point.~~

177. ~~WHEREFORE, Plaintiff Michael Livingstone demands judgment against Defendants Haddon Point Manager LLC, Haddon Point Renewal, LLC ; Delco Development LLC., jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $300,000 exclusive of interest and costs; declaratory, preliminary, and permanent injunctive relief against the second eviction proceedings scheduled for June 6, 2019; an award of~~

*Form Amended Complaint With Strikethroughs and Underlines*

reasonable attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

178. Particularly, this federal court should enjoin defendants to sign the addendum in Exhibit H and enjoin defendants to reduce the 10% unreasonable late fees to 5% for all Haddon Point tenants.

### COUNT IX

### UNJUST ENRICHMENT
### Michael Livingstone v. Haddon Point Manager LLC, Haddon Point Renewal, LLC; Delco Development LLC

179. Plaintiff incorporates herein by reference each and every one of the allegations contained in preceding paragraphs as though fully set forth at length herein.

180. As a tenant at Haddon Point Apartments, Plaintiff also brings this cause of action on behalf of all Tenants of Haddon Point Apartments.

181. The conduct of Defendants, as set forth hereinabove, constitutes conduct which deprived Plaintiff's rights in the manner described in the following paragraphs:

182. Defendants impose 10% late rent payment fees upon Plaintiff and tenants of Haddon Point which is inconsistent with the lower 5% late fees the Courts of New Jersey normally enforce. *See* Exhibit A, Page.2, at 1.7(b).

183. Plaintiff avers that the 10% late rent payment is not fair, unreasonable, and unconscionable for unfurnished rooms with exorbitant rent that does not include utilities.

184. By charging 10% late rent payment fees, this imposes undue financial hardship upon low-income tenants or non-income generating tenants such students like Plaintiff Livingstone who equally need housing.

*Form Amended Complaint With Strikethroughs and Underlines*

185. ~~The one-bedroom unit defendants have rented to Plaintiff for $1520.00 rent per month was not furnished and it does not include any utilities. The bedroom itself did not have any pre-installed lights. Plaintiff avers that charging 10% late rent payment fees on top of that is therefore unfair.~~

186. ~~Defendants accepted Plaintiff's federal student financial aid refunds as "the form of income" during contracting of the lease.~~

187. ~~By accepting Plaintiff's federal student financial aid refunds as "the form of income" during contracting of the lease, Defendants knew or should have known that there can be delays with the disbursement of federal student financial aid. Yet, defendants now seek to take advantage of the delays to make more money from Plaintiff.~~

188. ~~By accepting Plaintiff's federal student financial aid refunds as "the form of income" during contracting of the lease, Defendants assumed the risk of delayed processing of federal student financial aid for timely payment of housing rent.~~

189. ~~After assuming the risk by accepting Plaintiff's federal student financial aid refunds as "the form of income" during contracting of the lease, Plaintiff avers that Defendants now seek to make more money from Plaintiff through unreasonable, unconscionable, and exorbitant 10% late fees.~~

190. ~~By email dated, Apr 30, 2019, 5:38 PM, Plaintiff requested an addendum to the lease to reform the lease contract and change the rent payment due date from the 1st of every month to the 17th of every month due to changes in the payment schedule of Plaintiff's federal student financial aid refunds from DeVry University. See Exhibit G. *See* also Exhibit "H." Defendants declined to sign the addendum to the lease so that they can keep charging Plaintiff the 10% late fees on top of the exorbitant $1520 rent all to the unjust enrichment of defendants.~~

*Form Amended Complaint With Strikethroughs and Underlines*

191. As a direct and proximate cause of Defendants' unlawful conduct as described herein, Plaintiff Livingstone has suffered, and continues to suffer, irreparable injury which cannot be fully compensated by an award of monetary damages for which Livingstone is entitled to preliminary and permanent injunctive relief as well as damages in an amount to be determined by the Court and reasonable costs of bringing this lawsuit, including reasonable attorneys' fees.

192. Defendants should be enjoined to execute the addendum to the lease and reduce the late rent payment fees from 10% to 5% for all tenants of Haddon Point.

193. WHEREFORE, Plaintiff Michael Livingstone demands judgment against Defendants Haddon Point Manager LLC, Haddon Point Renewal, LLC ; Delco Development LLC., jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $300,000 exclusive of interest and costs; declaratory, preliminary, and permanent injunctive relief against the second eviction proceedings scheduled for June 6, 2019; an award of reasonable attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

194. Particularly, this federal court should enjoin defendants to sign the addendum in Exhibit H and enjoin defendants to reduce the 10% unreasonable late fees to 5% for all Haddon Point tenants.

## COUNT II

## NEW JERSEY TENANT ANTI-REPRISAL ACT (section 2A:42-10.10 through 10.14)

## MICHAEL O. LIVINGSTONE V. ALL DEFENDANTS

191. Plaintiff incorporates herein by reference each and every one of the allegations contained in preceding paragraphs as though fully set forth at length herein.

*Form Amended Complaint With Strikethroughs and Underlines*

192.     The conduct of Defendants, as set forth hereinabove, constitutes conduct under color of state law which deprived Plaintiff right to petition for redress of grievances and access to the Courts New Jersey Anti-Reprisal Act (section 2A:42-10.10 through 10.14) in the manner described in the following paragraphs.

193.     During the September 12, 2019 post-trial order to show cause hearing, Defendants specifically asked the State Court to reject Plaintiff's remaining payment of the remaining additional rent $405 and "evict Plaintiff in equity for bringing this federal complaint" against them including Plaintiff's filing of other petitions such as Appeals and motions.

194.     Specifically, the alleged retaliatory statement can be found in the attached Transcript Exhibit N.2, Page 12, Lines 11-20 to Page 13, Lines 1; Pages 16 (Lines 23-25); Page 17 (Lines 1-4) during an exchange between Haddon Point's Defendant-Attorney Rotsides, Plaintiff's Attorney Mr. Charles Izzo, and the State Court Judge Richard Wells:

MR. ROTSIDES:

> …In the interest of equity, Your Honor, I would ask this Court to consider that my office has spent 45.7 hours not on the evictions, but defending his various motions, both in the state and **federal level, all of which thus far, without exception, have been dismissed**. In sum, my client has racked up a bill of a hair under $12,000 defending against his motions. There were three in the LT, two notices appeal, and **three federal motions, all of which have been dismissed.** There are currently pending two more landlord/tenant motions, three more federal motions, two more attempts at his misfiled appeals, and of course **the federal complaint itself,** which is pending, my Motion to Dismiss, Your Honor.

MR. IZZO:

> Your Honor, **the bill was $405, and Mr. Livingstone has paid the $405.**

MR. ROTSIDES:

*Form Amended Complaint With Strikethroughs and Underlines*

Your Honor, for point of clarification, **there is the $405 he did post** with the court. **We're asking that can be returned to him and we'll proceed with the lockout in normal course.**

THE COURT: All right.

MR. ROTSIDES: Thank you, Your Honor.

(Proceedings concluded at 11:15:33 a.m.)

(Emphasis added)

195.    The above statement directly suggests that Defendants sought and obtained Livingstone's eviction from Haddon Point Apartments in equity for exercising his right to petition the Government for redress of his grievances such as filing this instant federal complaint, filing motions in his defense against the eviction, filing motions to enforce the rulings of the court upon Defendants, and filing State Court Appeals.

196.    The above statement exposes Defendants' rationale and intent for evicting Livingstone from Haddon Point Apartments was not "non-payment of rent" because after Livingstone paid all the base rent and the additional rent that appears on the third eviction complaint (Exhibit "M") Complaint, Defendants rejected Livingstone payment of the remaining $405 rent and instead demanded Plaintiff's eviction in equity for filing this federal lawsuit and other petitions against Defendants.

197.    Livingstone avers that in further retaliation and reprisal against Livingstone's petitioning conduct, Defendants Rotsides and Richards advised and conspired with Haddon Point to award themselves $1000 attorney fees over the post-trial motions Livingstone filed in May 2019 on the first eviction case docket where Livingstone was the prevailing party (Exhibits F & P) and then use Livingstone's Security Deposit to pay themselves the $1000 attorney fees in October 2019 ( Exhibit "Z") without any Court awarding the $1000 attorney fees to them.

Page 75 of 85

*Form Amended Complaint With Strikethroughs and Underlines*

*198.*   As a United States Citizen and a Tenant at Haddon Point Apartments who faced eviction from housing, Livingstone has a right to petition the State and Federal Judiciary Government for redress of his grievances against his Landlord Defendants without any reprisal and adversarial eviction from housing whatsoever from the Landlord and the defendants.

*199.*   As a Tenant of Haddon Point Apartments who faced eviction from housing, Livingstone had a right to file motions in his defense during the eviction proceedings and to use the Federal and State forum to challenge the lease clauses to retain his housing without any reprisal and adversarial eviction from housing whatsoever from the Landlord and the defendants.

*200.*   Livingstone pleads that he had a right to file Notices of Appeal to the State Appellate Court against any adversarial action, judgments, and judgment of possession of the Landlord-Tenant Court for appellate review without any reprisal or adversarial eviction from housing from the Landlord and the defendants for appealing a Court decision.

*201.*   Defendants --all of them-- including the CEO, the Director, the Landlord and his sister and parent companies, the Attorneys and their Law Firm, all of them recklessly, knowingly, intentionally, and maliciously disregarded Plaintiff's rights to petition for redress of his grievances and demanded and obtained Livingstone's eviction from Housing to his detriment.

*202.*   The judgement of possession / eviction was reported by agencies and it appears as a stigma in the rental history or landlord background check which prevented other Landlords from renting to Plaintiff.

*203.*   By direct and proximate cause, Plaintiff was actually-injured by Defendants' retaliatory eviction from Housing which technically rendered Plaintiff homeless as a result of Defendants' reprisal against Plaintiff from filing this federal action against them.

*Form Amended Complaint With Strikethroughs and Underlines*

204.   By direct and proximate cause, Plaintiff was actually-injured by the retaliatory eviction because as a young man who bravely immigrated by himself with nobody and to nobody to the United States without relatives and became a US Citizen, Plaintiff was inconvenienced by the retaliatory eviction from housing which rendered Plaintiff homeless while storing his belongings at a U-HAUL storage facility, which the Court should cause defendant to repay such storage costs.

205.   By direct and proximate cause, Plaintiff was actually injured by the eviction because Plaintiff resorted to using local University Fitness Gym Showers for personal care and 24/7 libraries to survive instead of the comfort of housing.

206.   By direct and proximate cause, Plaintiff was irreparably-injured by defendants' retaliatory eviction because Plaintiff suffered from psychological pain, despair, stigma of homelessness.

207.   By direct and proximate cause, Plaintiff was irreparably-injured by defendants' retaliatory eviction because Plaintiff was inconvenienced as a Student who needed his housing to remain organized in pursuit of his academic graduate studies at Keller Graduate School of Management of DeVry University which prevented plaintiff from graduating on time with his MBA graduate degree.

208.   By direct and proximate cause, Plaintiff was irreparably injured because when the eviction prevented Plaintiff from completing his MBA degree on time, it also led to loss of future salary, which is much needed for Plaintiff to establish himself, and which prevented Plaintiff from making enough money to remit his retired, aged, sick, and dying parents in Africa who look up to Plaintiff as their hope in America as their only Son who made it to America. Plaintiff has

therefore been deprived of the self-worth that comes from the cultural and religious imperative of taking care of one's parents.

209.   As a further direct and proximate cause, Plaintiff was irreparably-injured by defendants' retaliatory eviction because Plaintiff was inconvenienced as a Student who needed his housing to remain organized in pursuit of his other prerequisite science academic work at Rowan University from prospective graduate educational contracts. Plaintiff therefore withdrew from his Physics class at Rowan University, which has in turn created unpaid educational debt at Rowan University resulting in financial holds and prevented Plaintiff from seeking timely admission into a *dual* Doctorate Program in Neuroscience and Law (i.e. joint PhD-JD degrees) or dual Medical and Law (MD-JD) degrees at Vanderbilt University, for example. [5] Plaintiff pleads this Court to cause defendants to pay the resultant educational debt at Rowan University stemming from the eviction.

210.   WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $50 million exclusive of interest and costs; declaratory, permanent injunctive relief ; double repayment of the $1000 attorney fees defendants deducted from Plaintiff's Security Deposit (Ex. Z); an award of reasonable attorney fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable to prevent defendants from further retaliation and reprisal from Defendants.

## COUNT III

### N.J.S.A. 46:8-21.1 ILLEGALLY –WITHHELD SECURITY DEPOSIT

### MICHAEL O. LIVINGSTONE V. HADDON POINT MANAGER, LLC

---

[5]   See https://www.lawneuro.org/; *see* also, https://law.vanderbilt.edu/prospective-students/dual-degree-programs.php highlighting the PhD-JD dual program.

195.    Plaintiff incorporates herein by reference each and every one of the allegations contained in preceding paragraphs as though fully set forth at length herein.

211.    The conduct of Defendants, as set forth hereinabove constitutes conduct under color of state law under N.J.S.A. 46:8-21.1 illegally-withheld Security Deposit in the manner described in the following paragraphs:

212.    As relevant background, in New Jersey, a Landlord's only remedy against a Tenant's non-payment of rent or nonpayment of additional rent is judgment of possession, not monetary damages.

213.    As relevant background, in order for a Landlord to seek and obtain both *judgement of possession* and *monetary damages,* New Jersey requires a Landlord to seek and be granted a *pretrial motion to transfer* the eviction action from the summary dispossession Landlord -Tenant Court to the Law Division or Chancery Division where the Landlord can seek both judgement of possession and monetary damages.

214.    As relevant background, Haddon Point never filed *pretrial motion to transfer* the second eviction action from the summary dispossession Landlord-Tenant Court to the Law Division or Chancery Division to seek both judgment of possession and monetary damages over the $1000 attorney fees.

215.    As relevant background, during the June 6, 2019 second eviction trial, Haddon Point demanded $1000 Attorney fees collectable as "additional rent" under the lease for "judgement of possession" (Exhibit "P" at Page 5) over Livingstone's previous May 2019 post-trial motions (Exhibit "O"), which Livingstone filed on the case docket where Livingstone was the prevailing party during the April 25, 2019 trial (Exhibit "F").

*Form Amended Complaint With Strikethroughs and Underlines*

216.    As relevant background, the adjudicative factual record (Exhibit "P") shows that during the June 6, 2019 trial, Haddon Point did not seek to collect the $1000 attorney fees as "monetary damages," but rather, Haddon Point sought to collect the $1000 for judgement of possession only.

217.    During the June 6 trial, Haddon Point sought $1000 attorney fees for judgement of possession over the April 25, 2019 eviction trial case that Haddon Point admits that Livingstone was the prevailing party.

218.    Meanwhile, during the June 6, 2019 trial, the Court, Haddon Point, and its Defendant Rotsides conceded that the April 25, 2019 eviction trial (Ex. F) was a ruling in favor of Livingstone. *See* Exhibit "P" at Page 15, Lines 7-12 (emphasis added):

> THE COURT:
> Well… I'm just saying I think it was probably **a ruling in favor of the tenant**. I mean, it's not like –
> MR. ROTSIDES: **It certainly was**, your Honor….

219.    Meanwhile, during the June 6, 2019 second eviction trial (Ex. P), Haddon Point and its defendant Rotsides admitted that they are making an *unusual* demand for the $1000 attorney fees over Livingstone's May 2019 post-trial motions whereas Livingstone was the prevailing party in the case docket ( Exhibit "F") wherein he filed those motions. *See* Exhibit "P," Page 5, Lines 8-10, emphasis added).

> "…and we would ask this Court to consider that, yes, while it's **an unusual request,** he prevailed on April 25th…."

220.    Notwithstanding the fact that Haddon Point was not the prevailing party on the April 25, 2019 trial, Haddon Point demanded $1000 as May 2019 attorney fees (Ex. P) and eventually used Plaintiff's security deposit to pay themselves for it later in October 2019 (Ex. Z).

*Form Amended Complaint With Strikethroughs and Underlines*

*221.*    As relevant background, during the June 6, 2019 eviction trial, the State Court denied Haddon Point the $1000 attorney fees for judgement of possession based upon these two grounds: (1) bad faith, and (2) *doctrine of laches* by reasoning that it was too late in June 2019 for Haddon Point to seek Attorney fees that accrued in May 2019 (*see* Exhibit "P" at Pages 7-8 for adjudicative fact).

*222.*    Notwithstanding the Court's June 6, 2019 ruling denying the $1000 attorney fees, Haddon Point went against the ruling of the Court again and continued to demand the $1000 attorney fees from Livingstone by maintaining it as a collectable balance on Livingstone's accumulated tenant ledger account; thereby, preventing Livingstone from conveniently paying his rent online because of the retroactive payment clause in the lease.

*223.*    As relevant background, during the July 18, 2019 post-trial motion hearing to enforce the June 6 ruling of the court denying the $1000 to Haddon Point, Livingstone argued that no Court has awarded Haddon Point the $1000 Attorney fees and so it is illegal for Haddon Point to maintain it on Livingstone's rental ledger account as collectable balance.

*224.*    Further, Livingstone argued that Attorney fees should be awarded and ratified by the Court first before they can be collected as damages and posted on his ledger account as collectable balance.

*225.*    During the July 18, 2019 post trial motion hearing, the State Court ruled that it did not adjudicate the $1000 for monetary damages *despite* the prior June 6, 2019 trial ruling of the Court (Exhibit "P") that it was bad faith and too late in June 2019 for Haddon Point to demand the May 2019 attorney fees that accrued in May 2019.

*226.*    During the July 18, 2019 post trial motion hearing, the State Court advised that Haddon Point can bring suit against Livingstone for the $1000 attorney fees either now or later

Page 81 of 85

and then either the same Judge Wells or someone else will hear it and determine whether to award Haddon Point the May 2019 attorney fees $1000 against Livingstone for filing the May 2019 post-trial motions.

227.    Instead of following the Court's admonition on July 18, 2019 to sue Livingstone for the alleged $1000 attorney fees so that a Judge can determine whether to award the $1000 attorney fees to Haddon Point or not, Haddon Point rather took matters into their own hands by awarding itself the $1000 attorney fees in a case Haddon Point acknowledges it did not prevail.

228.    Plaintiff avers that a Court must award attorney fees to a party before the party can collect it. Without any Court awarding the $1000 attorney fees to Haddon Point, around October 31, 2019, Haddon Point illegally withheld Livingstone's $1,520 security deposit by using it to pay the alleged $1000 Attorney fees over Livingstone's May 2019 post judgment motions. *See* attached Exhibit "Z."

229.    Plaintiff avers that no party is entitled to attorney fees for merely winning a *motion* without winning the trial or the complaint itself. Yet, Haddon Point has awarded itself $1000 attorney fees for merely winning the May 2019 post-trial motions Livingstone filed in a case docket where he was the prevailing party (Ex. F).

230.    Defendants should be caused to disgorge double the security deposit to Livingstone because winning a motion without winning the case or the trial itself does not make a party the prevailing party.

231.    Further, in October 2019, Haddon Point also used the remaining part of Livingstone's security deposit to pay for the $405 which Haddon Point rejected on September 12, 2019 in exchange for Livingstone's eviction during the order to show cause post-trial motion hearing where the Court ordered the return of the $405 to Livingstone (Exs. N.2, and Y).

*Form Amended Complaint With Strikethroughs and Underlines*

*232.* The October 2019 security deposit statement shows that Defendants also deducted parts of September 2019 rent or additional rent from Livingstone's security deposit (Exhibit Z). Meanwhile, in September 2019, the same defendants repeatedly rejected the September 2019 rent payment from Livingstone at the State Trial Court on September 12, 2019 and at the State Appellate Court (Exhibits 3.F, Y, W). Defendants argued that Livingstone should live rent –free because if Haddon Point accepts the September & October 2019 rent, it will nullify the judgment of possession.

*233.* To the extent that Livingstone used his federal student loans with interest to pay the security deposit as part of the move-in expenses, Defendants should be caused to disgorge and repay double the full amount of the security deposit with interest on it to Livingstone.

*234.* To the extent that N.J.S.A. 46:8-21.1 requires a Landlord to repay double an amount of illegally- withheld security deposit, this Court should cause Defendants to disgorge and repay double the amount of security deposit i.e. $1520 x 2 = $3,040 including costs of bringing this action.

*235.* As a direct and proximate result of defendants' unlawful and sadistic conduct, Plaintiff was deprived from using his security deposit money to meet important needs and educational expenses.

*236.* WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants jointly, severally and/or severally, for an amount exclusive of interest and costs; declaratory, preliminary and permanent injunctive relief ordering Defendants to disgorge and repay double the security deposit as $3,040 to Plaintiff; an award of reasonable attorney fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

*Form Amended Complaint With Strikethroughs and Underlines*

### D.    RELIEF REQUESTED

~~Plaintiff Michael O. Livingstone hereby declares that the relief requested is set forth under the last paragraph(s) of each Count staring with the *wherefore* clause.~~

### E.    JURY TRIAL DEMAND

Plaintiff Michael O. Livingstone hereby demands a jury trial with respect to all claims.

Respectfully submitted,

Michael O. Livingstone
P.O. Box 34246
Philadelphia, Pennsylvania 19101

Telephone: 856-676-6951

Dated: March, 17, 2020

### F.    FEDERAL RULES OF CIVIL PROCEDURE 65 AFFIDAVIT

~~Plaintiff may file a motion for preliminary injunction for immediate repayment of the illegally-withheld security deposit, as it is very much needed. As such, Plaintiff provides the following affidavit to this instant complaint with exhibits for the purposes of this complaint, this matter, or controversy only.~~

### G.    AFFIDAVIT OF PLAINTIFF MICHAEL O. LIVINGSTONE

~~The within named Plaintiff Michael O. Livingstone, hereby states under penalties of perjury, that the facts set forth and incorporated in the said Complaint with Exhibits are true and correct to the best of his knowledge, information, and belief.~~

Page 84 of 85

*Form Amended Complaint With Strikethroughs and Underlines*

Respectfully submitted,

Michael O. Livingstone
P.O. Box 34246
Philadelphia, Pennsylvania 19101

 Telephone: 856-676-6951

Dated: March, 17, 2020