NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | | |
|---|---|---|
| _____ | : | |
| LIVINGSTONE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil No. 19-13412 (RBK/AMD) |
| v. | : | |
| | : | **OPINION** |
| HADDON POINT MANAGER LLC, et al., | : | |
| | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**KUGLER**, United States District Judge:

Presently before this Court are Plaintiff Michael O. Livingstone's Motion for Leave to File an Amended Complaint (Doc. No. 46), Motion to Refer Defendants for Criminal Prosecution (Doc. No. 50), and Cross-Motion to Impose Sanctions Against Defendants (Doc. No. 52). Also before this Court is Defendants' Motion to Impose Sanctions Against Plaintiff pursuant to Rule 11 (Doc. No. 49). For the reasons stated below, Plaintiff's Motion for Leave to Amend is **GRANTED** in part, but his Motion to Refer Defendants for Criminal Prosecution and Sanctions are **DENIED**. Defendants' Motion for Sanctions are also **DENIED**.

## I.     BACKGROUND

Plaintiff Michael Livingstone ("Mr. Livingstone") is a full-time graduate student at Keller Graduate School of Management of DeVry University and former tenant of the Haddon Point Apartments. (Doc. No. 46-3, Pro. Am. Compl. at ¶ 149).

Defendants are various persons and entities associated with Plaintiff's housing complex, Haddon Point Apartments. The associates are Haddon Point Manager, LLC, the landlord of

Haddon Apartments, Haddon Point Urban Renewal, LLC, the owner of Haddon Point Apartments, Delco Development, LLC, a business entity owner of Haddon Point Apartments, Tom Juliano, the Chief Executive Officer of Delco Development, LLC, Weisshoff & Richards, LLC, the law firm and debt collector of Haddon Point Apartments, Nina Beacher, the Director of Residential Development of Haddon Point Apartments, Travis J. Richards, an attorney at Weisshoff & Rirchards, LLC, and Nicolas G. Rothsides, an attorney and alleged debt collect for Haddon Point Manager, LLC. (Doc. No. 1, Compl. at ¶ 2–9).

The original dispute between the parties was grounded in a failure to pay rent and a subsequent eviction action but has now devolved into protracted federal litigation. Because the parties are familiar with the underlying facts of this case, only those facts relevant to this discussion will be recited.

### A. Factual Background

Mr. Livingstone rented a one-bedroom apartment at Haddon Point Apartments in December of 2018. (Doc. No. 1, Compl. at ¶ 3). During the application process, he informed Defendant Beacher that he would be using his federal student financial aid award refunds to pay for the rent. (*Id.* at ¶ 7). Beacher accepted this form of income, approved Plaintiff's application, and signed Plaintiff's lease as the lessor on behalf of Haddon Point Manager, LLC. (*Id.* at ¶ 11–14; Exhibit A). Mr. Livingstone paid the first month's rent on time; not the second- or third-month's rent, however. (*Id.* at ¶ 21). Mr. Livingstone's late rental payments were allegedly caused by DeVry University's delayed disbursement of federal student financial aid. (*Id.* at ¶ 22, ¶ 28). As a result of Plaintiff's failure to pay rent on time, Defendants filed an eviction action against him in state court and charged him late fees. (*Id.* at ¶ 39). This action was eventually dismissed in

favor of Mr. Livingstone because Defendant Beacher did not appear at the hearing. (*Id.* at ¶ 49–52).

Following dismissal, Plaintiff noticed that the late rent fees for February and March 2019 remained on his ledger as a collectable balance. (*Id.* at ¶ 53). In response, Plaintiff emailed Defendant requesting the fees be removed "consistent with the Court's dismissal of the eviction action." (*Id.* at ¶ 54). Likewise, Plaintiff filed a motion in the Landlord-Tenant court requesting an addendum to the lease and to hold Defendants in contempt for disobeying dismissal of the first eviction by continuing to seek payment of the late fees. (*Id.* at ¶ 57). The Court denied Plaintiff's motion because he failed to appear. (*Id.* at ¶ 58).

Plaintiff paid the May 2019 rent and the April 2019 water bill on May 16, 2019 and notified Beacher of his payment. (*Id.* at ¶ 59). On May 27, 2019, Plaintiff received a second collection letter from Travis J. Richards, with the same language as the first, seeking to collect a debt of $2,998.02, including rent for May 2019 and attorney's fees. (*Id.* at ¶ 60). That same day, Plaintiff also received the second eviction complaint dated May 20, 2019. (*Id.* at ¶ 61). The second eviction complaint listed the total debt owed and then itemized it:

> There is due, unpaid and owing from tenant(s) to landlord(s) $2998.02 for rent and additional rent . . . Prev. legal $754.00, *May rent $1520.00*, Feb., Mar., and May Late fees @ $152.00=$456.00, *April water bill $14.02*, ct costs $54, atty's fees $200.00.

(*Id.* at ¶ 62; Exhibit C). The second eviction proceeding was scheduled for June 6, 2019. (*Id.* at ¶ 64).

One day prior to the second eviction proceeding, Plaintiff filed suit in this Court against Defendants alleging, inter alia, causes of action under the Fair Debt Collections Practice Act, 42 U.S.C. § 1983, defamation, fraud, and unlawful retaliation. (*Id.* at ¶ 75–209). During the second eviction proceeding, the Court agreed, and Defendant conceded, that the first eviction proceeding

resulted in a ruling for Plaintiff. (Doc. No.46-3, Pro. Am. Compl. at ¶ 84–85). This resulted in

Plaintiff only owning one late fee—for May 2019:

> The Court: I think really probably Mr. Izzo carries the day here, persuades. the Court, that
> really what is at issue here is one late fee. The late fee would be obviated if you'd just pay
> it on time, okay?

(Doc. No. 46-13, Exhibit P at 15). In total, Plaintiff paid $406 (comprised of $200 attorney fee,

$54 in court costs, and $152 for May's late fee) after the June 6 eviction proceeding. (Doc. No.46-

3, Pro. Am. Compl. at ¶ 96).

Again, following dismissal, Plaintiff noticed that $1,000 in legal fees remained on

Plaintiff's ledger as a collectable balance. (*Id.* at ¶ 98). In response, Plaintiff filed a motion in state

court to hold Defendant in contempt for disobeying the second eviction proceeding order. (*Id.* at ¶

99). During the state court proceeding, the Court advised Defendant that it could file a motion to

collect the $1,000 in attorney fees from Plaintiff and it would hear the motion. (*Id.* at ¶ 104). A

day later, Defendant filed a third eviction complaint which stated:

> There is due, unpaid and owing from tenant(s) to landlord(s) $1938.77 for rent and
> additional rent . . .   July rent $1520.00, late fee $152.00, July w/s 13.77, ct costs $53.00,
> atty's fee $200.

(*Id.* at ¶ 106; Exhibit M). Plaintiff then received the third collection letter, dated July 19, requesting

payment of $1,938.77 for rent and notifying him that he had 30 days to dispute the debt. (*Id.* at ¶

108). On July 22, 2019, Plaintiff paid $1,533.77 of the $1,938.77 requested; Plaintiff did not pay

the $405 in additional rent [i.e., the late rent fee of $152, attorney's fees of $200, and court costs

of $53].  (*Id.* at ¶ 107, 112, 114).

Through email, on July 31, 2019, Plaintiff disputed the debt requested—specifically the

$13.77 water bill—in the third collection letter. (*Id.* at ¶ 109). On August 15, 2019, the state court

heard arguments on the third eviction complaint and required Plaintiff to pay $405 by end of that

day. (*Id.* at ¶ 116). Plaintiff could not make the payment and thus requested an extension of time from Defendants. (*Id.* at ¶ 117–118). It was denied and the Court entered a judgment of possession against Plaintiff. (*Id.* at ¶ 118–119). Defendants then applied for a Warrant of Removal, which was posted to Plaintiff's front door apartment on August 22, 2019. (*Id.* at ¶ 120). Four days later, Plaintiff paid the $405 and moved for post-judgment relief requesting an order to vacate the judgment of possession and warrant of removal. (*Id.* at ¶ 121). It was denied. (*Id.* at ¶ 131).

Subsequently, Plaintiff filed a motion for emergent relief in the state appellate court to stay the pending eviction. (*Id.* at ¶ 134). This motion too was eventually denied. (*Id.* at ¶ 145). Plaintiff appealed this order to the New Jersey Supreme Court but it was also denied. (*Id.* at ¶ 147). On October 7, 2019, Plaintiff vacated his apartment at Haddon Point. (*Id.* at ¶ 149).

In February of 2020, this Court ruled on the Defendants' motions to dismiss and granted them in part. (Doc. No. 41). We held that save for Plaintiff's claim under Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., against Defendants Travis J. Richards and Weisshoff & Richards, LLC, his other claims would be dismissed without prejudice. (*Id.*). We further ordered that Plaintiff may file a motion to amend his complaint, but any proposed amended complaint must be consistent with the opinion. (*Id.*).

Plaintiff now moves for leave to amend the complaint. He alleges violations of the Fair Debt Collections Practice Act, the Tenant Anti-Reprisal Act, N. J. S. A. § 46:8-21.1, and the New Jersey and federal Constitution. (Doc. No. 46). Defendants oppose this motion. (Doc. No. 47).

## II.    LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 15

Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely grant leave when

justice so requires." Fed.R.Civ.P. 15(a)(2). The Third Circuit has shown a strong liberality in allowing amendments under Rule 15 to ensure that claims will be decided on the merits rather than on mere technicalities. *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990). Thus, motions for "leave to amend must generally be granted unless equitable considerations render it otherwise unjust." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir.2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility." *Arthur*, 434 F.3d at 204; *see also Foman*, 371 U.S. at 182 ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given'."). These factors are not exhaustive; a court can ground its decision on consideration of additional equities, such as judicial economy/burden on the court and prejudice to the plaintiff in denying leave to amend. *Mullin v. Balicki*, 875 F.3d 140, 150 (3d Cir. 2017). However, prejudice to the non-moving party is the touchstone for the denial of an amendment. *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006).

The issue of prejudice requires the Court to focus on the hardship to the defendants if the amendment were permitted. *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984). In determining whether there is substantial prejudice, courts consider whether allowing the amendment would result in additional discovery, cost, or preparation to defendant against new facts or new theories. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).

When considering a motion for leave to amend, the court should grant leave unless the motion, itself, is made in bad faith. *Raymo v. Civitas Media LLC*, No. 3:19-CV-01798, 2020 WL

4003646, at *4 (M.D. Pa. July 15, 2020). The scope of the Rule 15 bad faith inquiry is limited to whether the motion is made in bad faith, not whether the original complaint was filed in bad faith or whether conduct outside the motion to amend amounts to bad faith. *Trueposition, Inc. v. Allen Telecom, Inc.*, No. CIV.A.01-823 GMS, 2002 WL 1558531, at *2 (D. Del. July 16, 2002). Thus, the question of bad faith requires the Court to focus on Plaintiff's motives for not amending the complaint sooner. *Zelma v. Choice Energy*, LLC, No. CV 19- 17535 (CCC), 2020 WL 5201341, at *2 (D.N.J. Sept. 1, 2020).

Our Circuit defines "futility" as whether "the complaint, as amended, would fail to state a claim upon which relief could be granted." *Adams v. Wells Fargo Bank*, N.A., No. 16-0907, 2017 U.S. Dist. LEXIS 212606 at *4 (E.D. Pa. Dec. 27, 2017). "In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, given the liberal standard for the amendment of pleadings, courts place a heavy burden on opponents who wish to declare a proposed amendment futile. *Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 229 (E.D. Pa. 2012). Thus, the proposed amendment must be frivolous or advance a claim that is insufficient on its face. *Aruanno v. New Jersey*, No. Civ.A.06–296, 2009 WL 114556, at *2 (D.N.J. Jan. 15, 2009). "If a proposed amendment is not *clearly* futile, then denial of leave to amend is improper." Wright, Miller & Kane, Federal Practice and Procedure § 1487 (2d ed.1990) (emphasis added).

## B. Fair Debt Collections Practice Act

Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt

7

collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e). It provides a private right of action against debt collectors who violate its provisions. 15 U.S.C. § 1692k*; see also Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006). "As remedial legislation, the FDCPA must be broadly construed in order to give full effect to these purposes." *Caprio v. Healthcare Revenue Recovery Grp.*, LLC, 709 F.3d 142, 148 (3d Cir. 2013). Importantly, the FDCPA is a "strict liability statute to the extent it imposes liability without proof of an intentional violation." *Allen ex rel. Martin v. LaSalle Bank*, N.A., 629 F.3d 364, 368 (3d Cir. 2011).

"To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 358 (3d Cir. 2018) (quoting *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)).

### C.  42 U.S.C. § 1983

42 U.S.C. § 1983 provides:

> Every person who, under color of any [state] statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any . . . other person . . . to the deprivation of any rights . . . secured by the Constitution and laws [of the United States], shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To state a claim under § 1983, a plaintiff must allege two elements: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct deprived plaintiff rights, privileges, or immunities secured by the U.S. Constitution or laws of the United States. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). In most contexts, the § 1983 "acting under color of state law" inquiry is identical to the "state action" requirement under the Fourteenth Amendment. *Id.* at 638 n.15. Plaintiff bears the burden of proof on this issue

because the "color of state law" requirement is part of the prima facie case for § 1983 claims. *West v. Atkins*, 487 U.S. 42, 48 (1988).

### D. Rule 11 Sanctions

Rule 11(c)(1) provides that "if, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any . . . party that violated the rule or is responsible for the violation." Fed.R.Civ.P. 11(c)(1). The standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances. *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir.1995). This is an objective standard and bad faith is not required. *Id.* Reasonableness in the context of Rule 11, is "an objective knowledge or belief at the time of the filing of the challenged paper that the claim was well-grounded in law and fact." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 289 (3d Cir.).

## III.   DISCUSSION

### A. Motion for Leave to File Amended Complaint

Plaintiff's entire motion is devoted to showing that his proposed amendments are not futile. However, Defendants present arguments beyond futility. They also argue the motion should be denied because it is unduly prejudicial and made in bad faith. While we agree that some of Plaintiff's claims are futile, we do not find that Plaintiff's motion is unduly prejudicial or made in bad faith.

#### i.   Undue Prejudice

Defendants maintain that if this Court grants Plaintiff's motion for leave to amend they will continue to be prejudiced by his frivolous filings because they will incur significant expenses in defending the motion. Plaintiff does not contest Defendants argument of prejudice.

As noted above, the issue of prejudice requires the court to focus on the hardship to the defendants if the amendment were permitted. *Adams v. Gould Inc*., 739 F.2d 858, 868 (3d Cir. 1984). Indicia of hardship include additional discovery, cost, or preparation against new facts or new theories. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). Prejudice is most prevalent, and therefore courts are more likely to deny motions for leave to amend, when the amendment is sought after discovery has closed or on the eve of trial. *Luciani v. City of Philadelphia*, 643 F. App'x 109, 111 (3d Cir. 2016) (concluding the district court did not abuse its discretion in denying a motion for leave to amend because plaintiff did not move until discovery had closed); *Frolow v. Wilson Sporting Goods*, Co., No. CIV. A. 05-4813FLW, 2009 WL 904049, at *7 (D.N.J. Apr. 1, 2009) (denying leave to amend when plaintiff revealed his intention to amend the complaint during the final pretrial conference); *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 275 (3d Cir. 2001) (affirming the district court's denial of a motion to amend after summary judgment was entered in favor of defendants because defendants would need to engage in new discovery and significant new trial preparation). The indirect result of amending at the eleventh hour is that the defendant may be forced to incur additional costs by reopening discovery or through additional motions practice.

There is no undue or substantial prejudice here. In our prior order, we expressly permitted Plaintiff to amend his complaint. To now hold that the amendment is unduly prejudicial would be unfair. We will not countenance such a result. Moreover, the present motion for leave to amend is not an eleventh-hour amendment. Plaintiff is not moving for leave to amend after discovery has closed. Plaintiff is not revealing his intention to amend the complaint during the final pretrial conference. Nor Plaintiff is not seeking leave to amend after summary judgment has been entered in favor of Defendants. Plaintiff is simply seeking to cure certain deficiencies identified in the prior

complaint and add causes of action that accrued after the filing of the first complaint. While the motion for leave to amend comes sixteen days after the ordered deadline, the delay is excusable in light of the pandemic. Therefore, we find Defendants are not substantially prejudiced by this amendment.

### ii. Bad Faith

Defendants point to various statements made by Plaintiff and their litigation history to support the contention that the current motion for leave to amend is made in bad faith. For instance, Defendants cite to an email Plaintiff sent to the landlord in which he stated "[e]ven if I lose in the lower landlord-tenant Court, I will exercise my constitutional rights to appeal to the next higher courts until all appeal is exhausted. Your Attorney can attest that anything can happen under appellate review. So, expect a lengthy legal battle in that event." (Doc. No. 46, Exhibit R). We find Defendants' argument unpersuasive.

When considering a motion for leave to amend, the court should grant leave unless the motion, *itself*, is made in bad faith. *Raymo v. Civitas Media LLC*, No. 3:19-CV-01798, 2020 WL 4003646, at \*4 (M.D. Pa. July 15, 2020). Thus, the question of bad faith requires the Court to focus on Plaintiff's motives for not amending the complaint sooner. *Zelma v. Choice Energy*, LLC, No. CV 19- 17535 (CCC), 2020 WL 5201341, at \*2 (D.N.J. Sept. 1, 2020); *see also Foman*, 371 U.S. at 182. (coupling "bad faith" together with "dilatory motive"); *Trueposition, Inc. v. Allen Telecom, Inc*., No. CIV.A.01-823 GMS, 2002 WL 1558531, at \*1–\*2 (D. Del. July 16, 2002) (refusing to deny a motion for leave to amend because defendants' claim that plaintiff filed its initial complaint with the knowledge that the asserted patents were invalid was irrelevant to the determination of bad faith).

Defendants miss the point when they cite to Plaintiff's statements and conduct outside of the current motion to amend. The scope of our inquiry is limited to whether the current motion was made in bad faith, not whether Plaintiff's motives for filing the initial complaint were duplicitous or retaliatory. Defendants do not present any evidence which would support the claim that Plaintiff's current motion was made in bad faith or with a dilatory motive. To the contrary, the record indicates that Plaintiff's motion for leave to amend was filed only sixteen days after the ordered deadline. As noted above, this delay is clearly excusable. Thus, while Defendants' argue Plaintiff's many motions and lawsuits are a form of retribution, we do not find that the current motion was made in bad faith or with a dilatory motive.

### iii.   Futility

Defendants contend Plaintiff's motion must be denied because each of his proposed amendments are futile. There is some merit to Defendants' argument.

As noted above, there is a heavy burden placed on the party opposing a motion for leave to amend, and for the proposed amendment to be futile it must be frivolous or advance a claim that is insufficient on its face. If it is not clearly futile, then denial of leave to amend is not proper.

### 1.   Count I: Federal Fair Debt Collections Practice Act

In Plaintiff's original complaint, we concluded that Plaintiff stated a claim under § 1692g(b) of the Fair Debt Collections Practice Act (FDCPA) because Defendants served Plaintiff with an eviction complaint after he disputed the debts owed. Now Plaintiff attempts to state further violations of the FDCPA by arguing Defendants' conduct in connection with the second and third eviction complaints violated this Act. Likewise, Plaintiff also contends every Defendant should be held liable, not just Defendant Travis Richards. Defendants, on the other hand, contend these additional allegations do not state a claim beyond what Plaintiff pled in the

initial complaint. While the crux of the parties dispute centers on whether the conduct surrounding the two additional eviction complaints state further violations of the FDCPA, we will also briefly address Plaintiff's contention that all Defendants should be held liable and Defendants' argument that Plaintiff suffered no informational injury because he had access to the ledger.

### a. Whether Second and Third Eviction Complaint Allegations Are Futile[1]

Plaintiff maintains his new allegations under the FDCPA are not futile because they show a pattern of Defendants' reckless disregard for the safeguards of the Act. Specifically, for the second eviction complaint Plaintiff alleges Defendants violated the FDCPA by: [2]

- Including the April water bill and May rent as a debt owed even though Plaintiff paid those amounts prior to the filing of the complaint;

- Demanding $1,000 in attorney fees even though the second eviction complaint and collection letter did not list $1,000 in attorneys' fees on its face;

- Failing to give Plaintiff 30 days to dispute the $1,000 in attorney's fees; and

- Using his security deposit to pay themselves the $1,000 in attorney fees even though no court awarded them the fees

For the third eviction complaint, Plaintiff alleges Defendants violated the FDCPA by:

- Failing to pause their collection efforts after he disputed the debts on July 31, 2019;

- Using his security deposit to pay themselves the $405 in additional rent even though they rejected this amount during the September 12, 2019 post trial hearing; and

---

[1] In Defendants' motion for sanctions they raise the argument that the filing of the eviction complaint constitutes verification of the debt. Defendants did not raise this argument in their brief in opposition to Plaintiff's motion for leave to amend. Therefore, it is waived. *See Bradley v. Att'y Gen.*, 603 F.3d 235, 243 n. 8 (3d Cir.2010).
[2] Because Plaintiff appears pro se, we must construe his complaint liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

- Failing to send Plaintiff a collection letter listing the $12,000 in attorneys fee so he could dispute it

Defendants' contend Plaintiff's claim regarding the second eviction complaint is futile because he merely repeats allegations that were unsuccessful in the state and federal courts. For the third eviction complaint, Defendants argue Plaintiff's claim is futile because he did not dispute the debt owed for the water bill but rather contended that it was listed for the wrong month. Likewise, they argue his allegations for the third eviction complaint do not state a claim under the FDCPA because he "merely pleads that the [e]viction court denied his order to show cause and ordered him removed from the subject premises in part because of Defendants' equitable argument that his continued occupancy was causing them thousands of dollars in legal fees." (Doc. No. 47 at ¶ 46).

To establish a prima facie case for violation of the FDCPA, a plaintiff must prove that: (1) he is a consumer; (2) the defendant is a debt collector; (3) the defendant's challenged practice involves an attempt to collect a "debt" as defined in the Act; and (4) the defendant violated a provision of the FDCPA in attempting to collect the debt. *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). We read Defendants' arguments as disputing only the fourth element—whether they violated a provision of the FDCPA when administering the second and third eviction complaint.[3]

Plaintiff's allegations are not clearly futile. First, Defendants' arguments to the contrary are unpersuasive. They merely summarize Plaintiff's allegations without telling the Court why a violation has not occurred and fail to cite any legal authority to support their arguments.

---

[3] This is because we already determined that Defendants Weisshoff & Richards, LLC and Travis J. Richards as an individual appear to be debt collectors under the FDCPA and that their attempt to collect Plaintiff's back rent constituted a debt collection activity.

*Diamond v. Borough of Peapack Gladstone*, No. CIV.A. 11-3703 MLC, 2011 WL 4950169, at

*4 (D.N.J. Oct. 18, 2011) (finding the defendants' arguments that the plaintiff should not be

granted leave to amend the complaint unpersuasive because they cited no law in support of their

argument). This failure is practically fatal given the "heavy burden [placed] on opponents who

wish to declare a proposed amendment futile" and that Plaintiff is pro se, meaning we are

obligated to construe his complaint liberally. *Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 229 (E.D.

Pa. 2012); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Second, Plaintiff's allegations may support a plausible claim for relief. For instance, Plaintiff

alleges he received the third collection letter on July 19, 2019, that he timely disputed the debt in

writing by emailing Defendants on July 31, and that Defendants did not pause their collection

efforts to verify the debt but continued with the eviction proceedings. These allegations are

sufficient to support a plausible claim for relief under § 1692g(b). *Collins v. Phelan Hallinan

Diamond & Jones, LLP*, No. CV 17-3727, 2018 WL 1123743, at *4 (E.D. Pa. Mar. 1, 2018)

(concluding a law firm violated § 1692g(b) when it filed a foreclosure action against the debtor

after he disputed the debts owed but before verifying them); *Simon v. FIA Card Servs., N.A.*, 732

F.3d 259, 265 (3d Cir. 2013) (noting that a "debt collector" includes an attorney who "regularly

engages in consumer-debt-collection activity, even when that activity consists of litigation")

(citing *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995)).

Notably, Defendants do not argue they verified the disputed debt or ceased collection efforts.

Rather, they argue that Plaintiff did not dispute the amount of debt owed, but only when it was

owed. This distinction superficial and would require us to interpolate the word "amount" into the

statute. The plain language of § 1692g(b) only requires a dispute of the debt or any portion

thereof. Moreover, § 1692g(c) provides a gloss on the meaning of the word "dispute" as it

provides "[t]he failure of a consumer to dispute the *validity* of a debt under this section may not be construed by any court as an admission of liability by the consumer." 15 U.S.C. § 1692g(c) (emphasis added). Thus, it would seem that a debtor only needs to dispute the accuracy of the debt. Plaintiff did just that when he emailed Defendants informing them that the $13.77 water bill was not owed for the month of July, but for the month of June. Accordingly, we cannot say that Plaintiff's allegations are clearly futile.

### b. Informational Injury

Plaintiff contends that all Defendants should be held liable because the Pennsylvania state court in *Dep't of Transp. v. Shemer*, 629 A.2d 1063, 1066 (Pa. Cmwlth.1993) observed that "an attorney is an agent of the client and the neglect of one is the neglect of the other." We reject Plaintiff's argument for several reasons. First, the quote cited by Plaintiff is not in that opinion. Second, the case cited by Plaintiff does not involve an interpretation of the phrase "debt collectors" as that phrase is understood in the FDCPA. And third, even if it did, that court's decision is not binding on this Court.

Defendants' miss the point when they argue Plaintiff did not suffer an informational injury because he had the ledger with him the entire time. The injury was not so much the failure to provide Plaintiff with the information as it was his inability to assess his legal liability. In our previous opinion we reasoned that although Plaintiff alleges a procedural violation, it produced a concrete injury because "Defendants denied him information he was legally entitled to, which he needed to assess his legal liability." Thus, by failing to provide Plaintiff with a copy of the verified debt, Defendants effectively deprived him of the ability to evaluate the validity of his debt. In this sense, the injury here is no different from that alleged in *Akins*. *Federal Election Commission v. Akins*, 524 U.S. 11 (1998) (concluding the voters' inability to obtain information

about the organization's donors was a concrete and particular injury in fact because it prevented the plaintiffs from assessing candidates for public office and the role that an organization's financial assistance might play in a specific election); *see also Robertson v. Allied Sols., LLC*, 902 F.3d 690, 694 (7th Cir. 2018) (noting that an "information injury is concrete if the plaintiff establishes that concealing information impaired her ability to use it for a substantive purpose that the statute envisioned). It makes no difference that Plaintiff had access to the ledger. From the very beginning of this controversy, he vigorously disputed the accuracy of the debts posted on the ledger. (Doc. No. 46, Am. Compl. at ¶ 66). Plaintiff cannot assess the accuracy of his debts with a ledger he believes to be incorrect. Indeed, the purported unreliability of the ledger, and other record-keeping documents like it, is precisely why Congress required the debt to be verified before collection efforts could continue—to prevent "collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." S. Rep. No. 95-382, at 4. In other words, Congress clearly envisioned situations where debtors had access to records which set forth the debt purportedly owed but the debtors believed to be inaccurate. The requirements of § 1692g(b) provided a mechanism by which the debt could be verified thereby assuring debtors of its accuracy and preventing overpayment. Thus, by depriving Plaintiff of this information, Defendants impaired his ability to use it for the purpose that the statute envisioned.

Moreover, if we were to carry Defendants' argument to its logical conclusion, it would render the verification requirement a nullity. Defendants argue that Plaintiff's access to the ledger renders his injury in fact non-existent. By this logic, Defendants would not have to verify Plaintiff's debt because he had the debt collection letter which listed the total amount of debt owed. This cannot be what Congress intended.

### 2.   Count II and III: New Jersey Tenant Anti-Reprisal Act[4] and N. J. S. A. § 46:8-21.1

We previously dismissed Plaintiff's claim under the Tenant Anti-Reprisal Act because he failed to plead any specific injury or damages. Plaintiff contends that he has cured this deficiency. However, even if he has, Defendants assert that his claim is futile because he did not make any efforts to secure or enforce any rights under the lease, the laws of the State of New Jersey or its governmental subdivisions, or the United States. Instead, Plaintiff's efforts were directed toward unilaterally modifying his lease agreement and pursuing "unsubstantiated, frivolous causes of action."

With respect to Plaintiff's claim under N. J. S. A. § 46:8-21.1, Defendants argue there is no possibility of success on the merits and that Plaintiff wildly mischaracterizes the law. Plaintiff's contention is that this claim is not futile because Defendants awarded themselves attorneys fee for the expenses incurred during the first eviction case even though no Court awarded them such fees.

The Court finds that Defendants have not sufficiently addressed these matters. As the party opposing the motion to amend, Defendants have not provided an adequate analysis of the Tenant Anti-Reprisal Act or N. J. S. A. § 46:8-21.1 for this Court to properly rule on their motion. It is not the responsibility of the Court to perform the parties research for them. Therefore, we will not engage in a "freewheeling investigation into New Jersey state law without meaningful briefing on the subject." *Sang Geoul Lee v. Won Il Park*, 720 F. App'x 663, 666 (3d Cir. 2017); *see also Green v. 712 Broadway*, LLC, No. CV 17-991, 2018 WL 2754075, at *7 (D.N.J. June 8, 2018) (refusing to consider defendants' argument that plaintiff had failed to

---

[4] To the extent that Plaintiff's allegations under this Count can be read as asserting a claim under 42 U.S.C. § 1983, it is denied for the reasons set forth in subheading four.

allege a claim under the New Jersey Tenant Anti-Reprisal Act because defendants did not provide an adequate analysis of the Act). For these reasons, we do not find Plaintiff's claims futile.

### 3.   Counts IV and V: 42 U.S.C. § 1983 Claims

Plaintiff reasserts two claims under § 1983—one for deprivation of his constitutional procedural due process rights under the 14th Amendment and the other retaliation for exercise of his First Amendment right to petition for redress of grievances under the U.S. and New Jersey Constitutions. We originally dismissed these claims because Plaintiff failed to allege that Defendants were state actors or were acting under color of state law. Plaintiff now attempts to remedy these deficiencies.

Defendants contend Plaintiff's claims under 42 U.S.C. § 1983 are futile because he "merely recites an unsubstantiated formulaic recitation of the elements by stating that Defendants allegedly conspired with the State of New Jersey, then provides 'proof' in the form of excerpted pages from an Appellate brief filed by this office, and other legal pleadings." While we agree that Plaintiff's conspiracy claims are futile under 42 U.S.C. § 1983, Defendants' eschew Plaintiff's claims that there is state action under the joint action and state compulsion tests. Despite this omission, we find there is no state action under any of the three tests articulated by Plaintiff.

Generally, a private individual or association is not the proper "person" for § 1983 claims. *Madero v. Luffey*, 439 F. Supp. 3d 493, 514 (W.D. Pa. 2020). However, even where the actors are not state or municipal officials but private entities, their activity can nevertheless be deemed under color of state law. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995). The inquiry into whether a private individual or association was acting under color of

19

state law is fact specific. *Madero v. Luffey*, 439 F. Supp. 3d 493, 514 (W.D. Pa. 2020). "The

traditional definition of acting under color of state law requires that the defendant in a § 1983

action have exercised power by virtue of state law and made possible only because the

wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988).

In *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n.*, the Supreme Court held

that "state action may be found if, though only if, there is such a close nexus between the State

and the challenged action that seemingly private behavior may be fairly treated as that of the

State itself." 531 U.S. 288, 295 (2001). The cases reflect that this state action inquiry diverges

into a two-part approach. *Diamond v. Pennsylvania State Educ. Ass'n*, 972 F.3d 262, 270 (3d Cir.

2020). First, the deprivation must be caused by the exercise of some right or privilege created by

the State or by a rule of conduct imposed by the state or by a person for whom the State is

responsible. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). Second, the party charged

with the deprivation must be a person who may fairly be said to be a state actor. *Id.* Only the

second element is implicated here. To determine whether the party charged with the deprivation

is a state actor, the Third Circuit has outlined three tests generated by the Supreme Court:

> (1) "whether the private entity has exercised powers that are traditionally the exclusive
> prerogative of the state"; (2) "whether the private party has acted with the help of or
> in concert with state officials"; and (3) whether "the [s]tate has so far insinuated itself
> into a position of interdependence with the acting party that it must be recognized as a
> joint participant in the challenged activity."

*Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009).[5] Importantly, "[a]ction taken by private entities

with the mere approval or acquiescence of the State is not state action." *American Mfs. Mut. Ins.*

*Co. v. Sullivan*, 526 U.S. 40, 52 (1999).

---

[5] The Supreme Court has not clarified whether these are discrete tests or "simply different ways of characterizing the
necessarily fact-bound inquiry." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982); *see also Adickes v. S. H.
Kress & Co.*, 398 U.S. 144, 174 n.44 (1970) (combining the "state compulsion" test and "joint action" test).

Plaintiff alleges Defendants acted under color of state law by: (1) conspiring with the State of New Jersey; (2) acting jointly with State of New Jersey;[6] and (3) using the coercive powers of the State.[7]

### a. Conspiracy

To properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). A conspiracy is not parallel conduct by different parties; it must embody an agreement between the defendants and state officials—a meeting of the minds—to violate the plaintiff's rights. *Startzell v. City of Philadelphia, Pennsylvania*, 533 F.3d 183, 205 (3d Cir. 2008). In the context of an alleged conspiracy with a judge, "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co–conspirator or a joint actor with the judge." *Dennis v. Sparks*, 449 U.S. 24, 28 (1980). Nor does a "private party's mere invocation of state legal procedures constitute 'joint participation' or 'conspiracy' with state officials." Instead, allegations that a private party defendant bribed a state court judge to cause him to issue an injunction in their favor or that defendants and state court judges entered into an agreement to rule in favor of defendants are more likely to state a plausible claim for relief. *Dennis v. Sparks*, 449 U.S. 24, 28 (1980); *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010).

---

[6] Plaintiff's claim that there is state action under the joint action test is insufficient as a matter of law because his allegations amount to an assertion of private misuse of a state statute. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982); *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 172 (3d Cir. 2004).

[7] There is no state action under the state compulsion test because New Jersey's Anti-Eviction Act does not mandate that a tenant be evicted for the non-payment of rent, it merely provides that a landlord is legally entitled to take such action when rent is not paid. *See Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 171 (3d Cir. 2004) (finding no compulsion, coercion, or significant encouragement sufficient for state action because the Mental Health Procedures Act did not coerce or even compel the doctors to file the application that led to the patient's involuntary commitment but merely permitted them to do so).

Plaintiff fails to assert facts from which a conspiracy can be inferred. His allegations are, in effect, assertions that Defendants resorted the normal judicial process to evict him. For instance, Plaintiff alleges Defendants acted under color of state law by "using the Judicial Branch of New Jersey Government to issue Summonses to compel Livingstone's appearance before the State Trial Court" or because "a New Jersey State Representative . . . posted the Warrant of Removal in front of Livingstone's Apartment door at Haddon Point Apartments." These allegations show nothing more than Defendants "mere invocation of state legal procedures"—conduct which is insufficient as a matter of law to establish the existence of a conspiracy. *Lugar*, 457 U.S. at 939 n.21.

Moreover, Plaintiff's allegation that Defendants conspired with the State of New Jersey to retaliate against him during the September 12, 2019 post-trial motion hearing is equally unavailing. Plaintiff alleges Defendants conspired with the State of New Jersey by "asking the [judge] to reject [Plaintiff]'s payment of the $405 additional rent and evict [him] from Haddon Point Apartments in equity for bringing this federal complaint." This conspiracy was consummated, according to Plaintiff, when the court "agreed with Defendants and allowed the lockout/eviction to proceed against Livingstone and ordered the $405 additional rent payment to be returned." While we are not unsympathetic to Plaintiff's predicament, these allegations simply demonstrate Defendants "resorting to the courts and being on the winning side of a lawsuit." *Dennis v. Sparks*, 449 U.S. 24, 28 (1980); *Jiricko v. Allison*, 259 F. App'x 472, 475 (3d Cir. 2007) (concluding the amended complaint failed to state a claim for conspiracy under § 1983 because an unfavorable court ruling does not give rise to an inference of an unlawful agreement). Even taking the allegations in the light most favorable to Plaintiff, they are not sufficient to establish that Defendants are coconspirators with the judge.

Thus, while Plaintiff uses the word "conspired" or "conspiracy," he does not provide the facts necessary to demonstrate any type of unlawful agreement, understanding, or knowledge of conspiratorial actions. *Hammond v. Creative Fin. Planning Org., Inc*., 800 F. Supp. 1244, 1250 (E.D. Pa. 1992). There is nothing talismanic about the word "conspiracy"; it will not transform an otherwise ordinary but unfavorable court ruling into an unlawful agreement to deprive Plaintiff of his rights. In sum, Plaintiff's allegations of conspiracy fall well short of satisfying the liberal notice-pleading standard.

### B.  Rule 11 Sanctions

Both parties move for sanctions. Defendants assert that Plaintiff violated Rule 11(b)(1), (2), and (3). They maintain that Plaintiff violated 11(b)(1) because he filed his motions and pleadings for the improper purpose of retaliating against Defendants. Rule 11(b)(2) was violated, according to Defendants, because Plaintiff's claims were baseless as almost all counts were dismissed, and he fabricated a new cause of action titled "Substantial Waste of Time." Lastly, Defendants argue Rule 11(b)(3) was violated because Plaintiff made factual contentions without evidentiary support as every count of his complaint was dismissed except for one. Plaintiff contends sanctions should be imposed against Defendants because they characterized his filings as "entirely frivolous."

Rule 11 provides that a court may sanction an attorney or party for filing documents for an improper purpose, making frivolous arguments, or making allegations that lack evidentiary support. *See* Fed.R.Civ.P. 11(b) and (c). The Third Circuit has cautioned that Rule 11 sanctions are warranted "only in the exceptional circumstances where a claim or motion is patently unmeritorious or frivolous." *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191,

194 (3d Cir.1988). A district court must look objectively as to whether the imposition of sanctions would be reasonable under the circumstances. *Id.*

As an initial matter, we must determine whether the movants complied with the safe harbor provision of Rule 11(c)(2). Specifically, it requires:

> [a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed.R.Civ.P. 11(c)(2). Thus, before seeking sanctions under Rule 11, a party must give notice of the alleged offending conduct and allow the opposing party 21 days in which to withdraw or otherwise correct the challenged submission. Compliance with this "safe harbor" provision is mandatory. *See In re Schaefer Salt Recovery, Inc.*, 542 F.3d at 99. "If the twenty-one day period is not provided, the motion must be denied." *Id.*

We find that both parties have complied with Rule 11's safe harbor provision. Defendants' motion for sanctions was separate from any other motion and describes the conduct that allegedly violates Rule 11. Likewise, they served Plaintiff with a copy of their motion for sanctions on April 3, 2020 and gave him 21 days to remedy the alleged conduct. Plaintiff also made a motion for sanctions separate from any other motion and described the specific conduct that purportedly violated Rule 11. Similarly, Plaintiff served Defendants with a copy of his motion on June 25, 2020 and gave Defendants 21 days to remedy the alleged conduct.

Now we must determine whether an imposition of sanctions is warranted. Because Plaintiff appears pro se, we must be mindful that while his pleadings are held to less stringent standards than formal pleadings drafted by trained lawyers, he is not shielded from the sanctions offered by Rule 11. *Martin v. Farmers First Bank*, 151 F.R.D. 44, 48 (E.D. Pa. 1993). A court may take a

person's status as a pro se into account when considering Rule 11 sanctions. *Ferreri v. Fox, Rothschild, O'Brien & Frankel*, 690 F. Supp. 400, 405 (E.D. Pa. 1988).

A pleading or motion is presented for an improper purpose if it intended to harass or cause undue delay or a needless increase in litigation expense. *Lieb v. Topstone Indus., Inc*., 788 F.2d 151, 157 (3d Cir. 1986). Courts have found violations of Rule 11(b)(1) and consequently imposed sanctions when a party has repeatedly filed the same or substantially similar meritless causes of action. *Talley v. City of Atl. City New Jersey*, No. CIV A 04-1146 JBS, 2007 WL 2021792, at \*5 (D.N.J. July 10, 2007), aff'd sub nom. *Talley v. City of Atl. City*, N.J., 406 F. App'x 584 (3d Cir. 2011) (imposing sanctions on a pro se litigant for his motion to reopen the case because his underlying claims had been rejected in two courts and he had been warned not to file another frivolous motion); *Lai v. Wei*, No. CIV 07-179 DRD, 2007 WL 1963331, at \*7 (D.N.J. June 29, 2007) (finding a violation of Rule 11(b)(1) and (2) because over a ten year period the plaintiff had consistently violated gate-keeping orders, filed complaints completely lacking merit, and was on notice that her complaint lacked merit but filed it anyway). Likewise, a party's motive for bringing a lawsuit is an important consideration. *Rosenberg v. JCA Assocs., Inc*., No. 03–0274, 2007 WL 1038893, at \*19 (D.N.J. Mar. 30, 2007) (noting a party's "motivation for bringing [the] lawsuit is an important element in determining whether to award attorney's fees and sanctions," and denying a motion for sanctions since there was no evidence that the action was brought for improper purposes).

We find that Plaintiff has not violated Rule 11(b)(1). Defendants cite to a whole host of statements made by Plaintiff to show that he had filed the current lawsuit in retribution for Defendants' evicting him. While the issue is close, we do not believe Plaintiff has filed the instant lawsuit for the improper purpose of harassing Defendants. It just as likely that Plaintiff is

vigorously asserting his rights as he is entitled to under the law. For instance, in one of Plaintiff's emails to the landlord he states "[e]ven if I lose in the lower-landlord-tenant Court, I will exercise my constitutional right to appeal to the next higher courts until all appeal is exhausted." (Doc. No. 46, Exhibit A). In that same email, Plaintiff further writes "I must state with all SINCERITY that I would hate to sue Haddon Point because we had such a good beginning and good beginnings leave indelible impressions on me." (*Id.*). These statements show that the current lawsuit is equally explained by Plaintiff's desire to assert his legal rights as it is his desire to harass Defendants. Moreover, this is Plaintiff's first attempt at filing a lawsuit in this Court. He is not like those litigants who are on notice that their claims were frivolous or patently meritless but filed a complaint regardless. Therefore, we do not find a violation of Rule 11(b)(1).

We find that Plaintiff has not violated 11(b)(2) or 11(b)(3). Defendants' argument that Plaintiff violated Rule 11(b)(2) is premised on the fact that almost all of Plaintiff's claims were previously dismissed and that Plaintiff asserted a claim for "Substantial Waste of Time." With respect to the first part of Defendants' argument, the Third Circuit has made clear that Rule 11 "must not be used as an automatic penalty against an attorney or a party advocating the losing side of a dispute." *Gaiardo v. Ethyl Corp*., 835 F.2d 479, 482 (3d Cir.1987). Thus, the granting of a motion to dismiss does not obligate a court to impose sanctions. Additionally, the second part of Defendants' argument is focused on a claim in the original complaint. Because that claim was dismissed, and Plaintiff does not attempt to reassert it, we will deny the Motion for Rule 11 sanctions without prejudice to renew. *Arunachalam v. Pazuniak*, No. CV 15-259-RGA, 2016 WL 748005, at *8 (D. Del. Feb. 24, 2016) (denying the motion for sanctions without prejudice to renew where the motion was based on allegations in a complaint that was mostly dismissed).

Defendants' argument that Rule 11(b)(3) was violated presupposes that their injury in fact argument is correct. But as noted above, we disagree. Plaintiff did suffer an injury in fact. And Defendants' characterization of the previous dismissal is incorrect. We dismissed some of Plaintiff's claims because he failed to plead certain facts, such as damages for the claim under the Tenant Anti-Reprisal Act. This did not mean Plaintiff's claims lacked evidentiary support or will lack evidentiary support. Further, imposing sanctions against an in forma pauperis plaintiff, although not unheard of, is a measure this Court does not take lightly and especially at the early stages of litigation. *Magerman v. Mercer*, No. 17-CV-3490, 2018 WL 684806, at *4 (E.D. Pa. Feb. 2, 2018) (noting that Rule 11 sanctions are normally determined at the end of litigation). Therefore, we do not find a violation of Rule 11(b)(3).

That said, the numerous factual and legal deficiencies noted in our previous Opinion and the email evidence come close to providing sufficient evidence for the Court to grant sanctions. Nevertheless, this Court will exercise its discretion and not impose Rule 11 sanctions. Nothing in this Opinion prohibits Defendants from making a new motion for Rule 11 sanctions if they believe that it is warranted. Therefore, we are denying Defendants' motion for sanctions without prejudice to renew.

We previously warned Plaintiff in our original opinion that his filings have been in direct contravention of Local Civil Rule 7.2. We noted that "going forward, Plaintiff . . . must strictly comply with the requirements of the Local Rules or be prepared to face the consequences." Plaintiff's motion for sanction is over forty pages long. While Plaintiff has requested leave to file a brief beyond the page limitation, he has not given this Court reasonable advanced notice. Rather, he attached this request as part of his motion. Therefore, Plaintiff's cross motion for sanctions is denied due to his failure to comply with Rule 7.2(b). *In re Nice Sys. Sec. Litig.*, 135 F.Supp.2d 551

(D.N.J.2001) (denying without prejudice a motion to file an amended complaint due to the failure to comply with Rule 7.2(b)).

### C.  Motion to Refer Defendants for Criminal Prosecution

Plaintiff moves for this Court to refer Defendants for criminal prosecution. To show that this Court has the authority to grant such a motion Plaintiff cites to one case, *Constand v. Cosby*, 112 F. Supp. 3d 308, 309 (E.D. Pa. 2015). That case involved a courts determination of whether to lift the seal on certain documents that contained Bill Cosby's deposition testimony. In weighing his privacy interests against the public's interest in the information, the Court noted the public had a significant interest in the information because it was "the subject of serious allegations concerning improper (and perhaps criminal) conduct." *Id.* at 317. We fail to see how this supports Plaintiff's argument. Nor does it explain how this Court has jurisdiction to entertain such a motion. Therefore, Plaintiff's motion to refer Defendants for criminal prosecution is denied.

### IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to Amend the Complaint is **GRANTED**, but his Motion to Refer Defendants to Criminal Prosecution and for Sanctions are **DENIED**. Defendants' Motion for Sanctions are **DENIED** without prejudice to renew.

Dated:  12/7/2020                                            /s/ Robert B. Kugler
                                                             ROBERT B. KUGLER
                                                             United States District Judge