<u>NOT FOR PUBLICATION</u>

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| MICHAEL O. LIVINGSTONE, | : : : | |
|  | : | Civil No. 19-13412 (RBK/AMD) |
| Plaintiff, | : : | |
| v. | : : | **OPINION** |
|  | : : | |
| HADDON POINT MANAGER, LLC, *et al.*, | : : : | |
|  | : : | |
| Defendants. | : : | |

**KUGLER**, United States District Judge:

     **THIS MATTER** comes before the Court upon Plaintiff Michael Livingstone's Motion to Vacate (ECF No. 74) and Motion to Strike and to Vacate (ECF No. 70). For the reasons set forth in the Opinion below, Plaintiff's Motion to Vacate (ECF No. 74) is **DENIED**. Plaintiff's Motion to Strike and to Vacate (ECF No. 70) is **DENIED**.

**I. Background**

     An extensive factual history of this case has been set out in previous opinions (ECF Nos. 40, 55) and is not repeated here. In short, Plaintiff Michael Livingstone ("Plaintiff") is a full-time graduate student at Keller Graduate School of Management of DeVry University and former tenant of the Haddon Point Apartments. (ECF No. 57, Am. Compl. ¶¶ 14–16).

     Defendants are various persons and entities associated with Plaintiff's former housing complex, Haddon Point Apartments (collectively "Defendants"). The associates are Haddon Point Manager, LLC, the landlord of 2 Haddon Apartments, Haddon Point Urban Renewal, LLC,

1

the owner of Haddon Point Apartments, Delco Development, LLC, a business entity owner of Haddon Point Apartments, Tom Juliano, the Chief Executive Officer of Delco Development, LLC, Weisshoff & Richards, LLC, the law firm and debt collector of Haddon Point Apartments, Nina Beacher, the Director of Residential Development of Haddon Point Apartments, Travis J. Richards, an attorney and alleged debt collector for Haddon Point Manager, LLC, and Nicolas G. Rotsides, an attorney and alleged debt collector for Haddon Point Manager, LLC. (Am. Compl. ¶¶ 2–9). The original dispute between the parties was grounded in a failure to pay rent and a subsequent eviction action but has now devolved into protracted federal litigation. As the parties are familiar with the underlying facts of this case, only those facts relevant to this discussion will be recited.

### a. Procedural Background

Plaintiff filed a complaint against Defendants in this Court on June 5, 2019. (ECF No. 1). Over the following 18 months, the parties engaged in extensive motion practice in this case. On January 19, 2021, Plaintiff filed an Amended Complaint. (ECF No. 57). On March 30, 2021, Plaintiff filed a Motion for Default Judgment. (ECF No. 62). Plaintiff attached a letter to his Motion for Default Judgment asking the Clerk of the Court to enter a default judgment against Defendants. (ECF No. 62-4). On April 8, 2021, Defendants filed a Certification in Opposition to Plaintiff's Motion for Default Judgment. (ECF No. 63, "Def. Cert. Opp'n"). Defendants attached an Answer to Plaintiff's Amended Complaint to their Certification, (Def. Cert. Opp'n, Ex. A), and asked that the Court accept the attached Answer even though it was not timely filed. (Def. Cert. Opp'n ¶ 20). The following day, the Clerk entered a quality control message on the docket stating:

> The Certificate of Service submitted by Travis Richards on 4/8/2021 contains an improper signature. Only the filing user is permitted to sign electronically filed

documents with an s/. PLEASE RESUBMIT THE DOCUMENT WITH A PROPER ELECTRONIC OR SCANNED SIGNATURE. This submission will remain on the docket unless otherwise ordered by the court.

(Clerk's Quality Control Message, Apr. 09, 2021). Plaintiff filed a request for entry of default on May 12, 2021, (ECF No. 65), which the Clerk of the Court denied on the basis that an Answer was filed with Defendants' Certification on April 8, 2021. (Clerk's Quality Control Message, May 12, 2021). Plaintiff filed a Reply in opposition to Defendants' Certification on May 14, 2021. (ECF No. 66, "Pl. Reply"). On May 24, 2021, Defendants resubmitted their Certification in Opposition pursuant to the Clerk's April 9th quality control message. (ECF No. 67). That same day, Defendants filed their Answer to Plaintiff's Amended Complaint on the docket. (ECF No. 68). On June 17, 2021, Plaintiff filed a Motion to Strike Defendants' Answer and both Certifications of Opposition, (ECF No. 70, "Pl. June Mot."), and a memorandum of law in support of his motion, (ECF No. 70-1, "Pl. June Mem."). Plaintiff also moved for the Clerk of the Court "to vacate the improper Default entered on May 12, 2021 and enter Default against all Defendants." (*Id.* at 2 n.2).

The Court denied Plaintiff's March 30 Motion for Default Judgment on November 8, 2021, based on the fact that Plaintiff had failed to obtain an entry of default from the Clerk of the Court. (ECF No. 73, "November Order"). Plaintiff then filed a Motion to Vacate the Court's November Order denying default judgment, (ECF No. 74, "Pl. Nov. Mot."), and a memorandum of law in support of his motion, (ECF No. 74, "Pl. Nov. Mem.").

## II. Discussion

### a. Plaintiff's November 2021 Motion to Vacate

Since Plaintiff did not indicate a legal basis for his motion to vacate this Court's November Order, the Court construes Plaintiff's motion, (ECF No. 74), as a motion for

3

reconsideration pursuant to Local Civil Rule 7.1(i). "The standard for reargument is high and reconsideration is to be granted only sparingly." *Yarrell v. Bartkowski*, No. 10-5337, 2012 WL 1600316, at *3 (D.N.J. May 7, 2012). A court will grant a motion for reconsideration only where "dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision." *United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999); L. Civ. R. 7.1(i). To succeed on a motion for reconsideration, a party must show: "(1) an intervening change in the controlling law; (2) the availability of new evidence not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Here, Plaintiff has not shown an intervening change in law, new evidence, or the need to correct a clear error or prevent manifest injustice. Therefore, Plaintiff's motion must fail.

Plaintiff appears to claim that this Court made a clear error of law in finding that the Clerk's entry of default is a prerequisite for default judgment.[1] However, Plaintiff points to no valid law that the Court overlooked in making its determination. None of the cases that Plaintiff cites in his Motion stand for the proposition that the Clerk's entry of default is optional. (Pl. Nov. Mem. ¶¶ 4–6) (citing *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656 (3d Cir. 1982); *Home Box Off., Inc. v. Tel-A-View Elecs., Corp.*, No. 86-1491, 1986 WL 12768, at *1 (E.D. Pa. Nov. 7, 1986)). To the contrary, it is well established that entry of default by the Clerk of the Court "is an essential predicate to any default judgment." *DeTore v. Loc. No. 245 of Jersey City Pub. Emp.*

---

[1] Plaintiff contends that the Court's November Order "erroneously states that Plaintiff did not seek default from the Clerk. That is not true. The docket bears out that Plaintiff sought default and the Clerk denied it." (Pl. Nov. Mem. ¶ 3). Plaintiff did request an entry of default from the Clerk on May 12, 2021, which was denied. (ECF No. 65). Plaintiff also requested the Clerk enter default judgment in a letter that he attached to his March 30 Motion for Default Judgment. (ECF No. 62-4). In his letter to the Clerk, Plaintiff did not include an affidavit demonstrating that Defendants had failed to respond to Plaintiff's Amended Complaint as required by Fed. R. Civ. P. 55(a). Thus, Plaintiff did not properly request or obtain an entry of default *before* filing his motion for default judgment on March 30, 2021. (ECF No. 62-4).

4

*Union*, 511 F. Supp. 171, 176 (D.N.J. 1981); *see also Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 521 n.1 (3d Cir. 2006) ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a)" (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2682, at 13 (3d ed. 1998))); *Paris v. Pennsauken Sch. Dist.*, No. 12-7355, 2013 WL 4047638, at *5 (D.N.J. Aug. 9, 2013) ("It is well established that, in order to receive a judgment of default pursuant to Rule 55(b)(1) or 55(b)(2), a party must first obtain entry of a default from the Clerk of Court."). As we explained in our November Order, Plaintiff did not obtain an entry of default from the Clerk of the Court prior to filing his March 30 Motion for Default Judgment. The Court committed no clear error of law by denying Plaintiff's Motion for Default Judgment on that basis.

Plaintiff also alleges that this Court discriminated against him by denying his Motion for Default Judgment, (Pl. Nov. Mem. ¶¶ 7–24), which the Court construes as an argument for reconsideration to prevent manifest injustice. Plaintiff provides no legitimate basis for this extremely serious allegation. The Court's November Order denying default judgment is legally proper, as explained above. Further, the November Order does not limit Plaintiff's ability to proceed with instant case and litigate his claims at a trial. Reconsideration is not warranted.

Plaintiff's request that the Court certify the November Order for interlocutory appeal must also be denied. (Pl. Nov. Mot. ¶ 4). Plaintiff has not specified the legal basis for his request. As such, the Court will construe Plaintiff's request for interlocutory appeal as arising under 28 U.S.C. § 1292(b). Under § 1292(b), interlocutory appeal is only appropriate where an order (1) involves a "controlling question of law"; (2) offers "'substantial ground for difference of opinion' as to its correctness"; and (3) "if immediately appealed [would] 'materially advance the

ultimate termination of the litigation.'" *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974) (quoting 28 U.S.C.§ 1292(b)). There is no basis to justify the certification of an interlocutory appeal regarding the Court's November Order under § 1292(b). As explained above, the controlling law is clear in this case. Immediate appeal will thus hinder, not advance, the progress of this litigation.

### b. Plaintiff's June 2021 Motion to Strike and to Vacate

Plaintiff moves to strike Defendants' Certification in Opposition, filed initially on April 8, 2021 and then refiled on May 24, 2021, (ECF Nos. 63, 67), and Defendants' Answer, filed on May 24, 2021 (ECF No. 68).[2] Notably, Defendants' Answer was attached as an exhibit to both Certification filings. (ECF Nos. 63, 67, Ex. A).

#### i. Plaintiff's June 2021 Motion to Strike for Improper Signature

On April 8, 2021, Defendants filed a Certification in Opposition ("original Certification") to Plaintiff's Motion for Default Judgment. (ECF No. 63). On April 9, 2021, the Clerk of the Court entered a quality control message stating that the certificate of service on Defendants' original Certification was improperly signed as "[o]nly the filing user is permitted to sign electronically filed documents with an s/" and instructing Defendants to resubmit their certificate of service. (Clerk's Quality Control Message, Apr. 09, 2021). It appears that Defendants' counsel of record, Travis Richards, filed the original Certification electronically. (ECF No. 63, Def. Cert. Opp'n). Nicolas Rotsides, an attorney and a defendant in this matter, electronically signed the certificate of service accompanying the original Certification. (Def. Cert. Opp'n 4). Defendants resubmitted an identical Certification in Opposition on May 24, 2021, this time with Mr. Richards' electronic signature appearing on the certificate of service. (ECF No. 67).

---

[2] The Court finds that many of Plaintiff's arguments are difficult to follow. Still, the Court endeavors to address each argument in turn.

6

Plaintiff moves to strike Defendants' Certifications of Opposition and Answer because they were not properly signed in violation of "Local Rule 12(a)–(c)." (Pl. June Mot. 2 n.2; Pl. June Mem. 15–25). There is no Local Rule 12(a)–(c) that pertains to electronic signatures, and Plaintiff does not identify any other federal or local procedural rules that suggest any of the relevant filings were improperly signed.[3]

However, the Court need not determine whether Mr. Rotsides' signature on the original certificate of service is in fact improper.[4] Even if the certificate of service was improperly signed, the Court would not strike Defendants' original Certification in Opposition for that reason.[5] Indeed, Local Civil Rule 5.1(b) states that "[f]ailure to make the required proof of service does not affect the validity of the service" and permits the Court to, "*at any time*[,] allow the proof of that service to be amended or supplied unless it clearly appears that to do so would result in material prejudice to the substantive rights of any party." L. Civ. R. 5.1(b) (emphasis added). Contrary to his assertions, Plaintiff has suffered no material prejudice as a result of the allegedly improper signature on the original certificate of service. Striking the original Certification would only cause further delays and impede the efficient administration of justice in this case.

Moreover, Defendants already amended their certificate of service on May 24, 2021, (ECF No. 67), pursuant to the Clerk's quality control message. We find that the certificate of

---

[3] It is unclear from the facts available to the Court whether in fact the Defendants' counsel improperly signed the certificate of service. Local Civil Rule 5.2(12)(a) states: "[t]he user login and password required to submit documents to the ECF System serve as the ECF Filing User's signature on all electronic documents filed with the Court…." It is unclear if Mr. Rotsides is a registered ECF filing user and permitted to sign filings electronically.
[4] Though we decline to do so here, the Court has the discretion to strike submissions that violate local procedural rules. *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 614 (3d Cir. 2018) ("It is beyond question that the District Court has the authority to strike filings that fail to comply with its local rules.").
[5] The cases Plaintiff cites to support his assertion that the Certifications should be struck as improperly signed generally involve serious procedural violations resulting from e-filing or other technical errors and do not sway the Court's analysis here. *See* (Pl. June Mem. 16–23) (citing *McDowell-Bonner v. D.C.*, 668 F. Supp. 2d 124, 127 (D.D.C. 2009), aff'd sub nom. *Bonner v. D.C.*, No. 09-7160, 2010 WL 2574152 (D.C. Cir. June 16, 2010; *United States v. Carelock*, 459 F.3d 437, 441 (3d Cir. 2006); *Allstate Ins. Co. v. Linea Latina De Accidentes, Inc.*, No. 09-3681, 2010 WL 5014386, at *2 (D. Minn. Nov. 24, 2010)).

service filed on May 24, 2021—which indicates that service of the Certification was effectuated on April 8, 2021, *id.*—amends the certificate of service that accompanied Defendants' original Certification, (ECF No. 63).[6] Thus, Defendants have cured any deficiency in their certificate of service and there is no indication that the Certification itself is improperly signed. Accordingly, the Court will deny Plaintiff's motion to strike Defendants' original Certification in Opposition. (ECF No. 70).

With respect to Defendants' second Certification and Answer, the Court notes that the Clerk's quality control message only pertains to the certificate of service accompanying the original Certification in Opposition. (Clerk's Quality Control Message, Apr. 09, 2021). There is no indication that the Answer or second Certification are improperly signed. *See* (ECF Nos. 67, 68). Therefore, the Court denies Plaintiff's Motion to Strike the second Certification, (ECF No. 67), and Answer, (ECF No. 68), for improper signature.

### ii. Plaintiff's June 2021 Motion to Strike Defendants' Answer

Plaintiff next contends that Defendants' Answer to Plaintiff's Amended Complaint ("Answer") should be struck from the record because it was untimely filed and Defendants did not move for an extension of time pursuant to Federal Rule of Civil Procedure 6(b). (Pl. June Mem. 11–15). It is undisputed that Defendants' Answer was not timely filed. The Amended Complaint was filed on January 19, 2021. (ECF No. 57). Defendants were required to answer or otherwise respond to the Amended Complaint by February 9, 2021. Fed. R. Civ. P. 12(a)(1)(A)(i). They failed to meet this deadline.

---

[6] In addition, Federal Rule of Civil Procedure 5(d)(1)(B) only requires a certificate of service be filed "within a reasonable time after service."

"The discretion to entertain late motions is conferred by Rule 6(b)[.]" *Drippe v. Tobelinski*, 604 F.3d 778, 785 (3d Cir. 2010) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 895–96 (1990)). Federal Rule of Civil Procedure 6(b)(1) provides:

> (b) Extending Time.
>> (1) In General. When an act may or must be done within a specified time, the court may, for good cause, extend the time:
>>> (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
>>> (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

Fed. R. Civ. P. 6(b). Pursuant to Rule 6(b)(1)(B), "a party must make a formal motion for extension of time and the district court must make a finding of excusable neglect, under the *Pioneer* factors, before permitting an untimely motion." *Drippe*, 604 F.3d at 785 (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 395 (1993)); *see also In re O'Brien Env't Energy, Inc.*, 188 F.3d 116, 125 n.7 (3d Cir. 1999) (noting that while *Pioneer* arose in the context of a bankruptcy decision, "*Pioneer* … is commonly understood to provide guidance not just with regard to Rule 9006, but in other bankruptcy and non-bankruptcy contexts discussing the issue of excusable neglect"). "In assessing whether a party's neglect is excusable, a court must take into account 'all relevant circumstances surrounding the party's omission,' including (1) the danger of prejudice to the other party; (2) the length of the delay and its potential impact on judicial proceedings; (3) whether the cause of the delay was within the reasonable control of the moving party; and (4) whether the movant acted in good faith." *Kimberg v. Univ. of Scranton*, 411 F. App'x 473, 477 (3d Cir. 2010) (quoting *Pioneer Inv. Services Co*, 507 U.S. at 395). "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect, it is clear that excusable neglect under Rule 6(b) is a somewhat elastic concept

9

and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs. Co.*, 507 U.S. at 392 (citations and quotation marks omitted).

When examining the third *Pioneer* factor—a party's reason for delay—courts in the Third Circuit often consider several subfactors originally laid out in a pre-*Pioneer* Third Circuit opinion, *Consolidated Freightways Corp. of Delaware v. Larson*, 827 F.2d 916 (3d Cir. 1987). *See Ragguette v. Premier Wines & Spirits*, 691 F.3d 315, 325–27 (3d Cir. 2012) ("[T]he factors identified in *Consolidated* should still be considered in applying the overall approach subsequently set forth by the Supreme Court in *Pioneer*."); *Routes 202 & 309 & Novelties Gifts, Inc. v. Kings Men*, No. 11-5822, 2014 WL 899136, at *5 (E.D. Pa. Mar. 7, 2014) (applying the *Consolidated* and *Pioneer* factors in the context of a Rule 6(b)(1)(B) motion). In *Consolidated*, the Third Circuit articulated a "non-exclusive list of factors to guide the district court's exercise of discretion" when trying to determine if excusable neglect exists:

> (1) whether the inadvertence reflects professional incompetence such as ignorance of the rules of procedure; (2) whether the asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court; (3) whether the tardiness results from counsel's failure to provide for a readily foreseeable consequence; (4) whether the inadvertence reflects a complete lack of diligence; or (5) whether the court is satisfied that the inadvertence resulted despite counsel's substantial good faith efforts toward compliance.

*Ragguette*, 691 F.3d at 325–27 (quoting *Consolidated Freightways Corp. of Delaware*, 827 F.2d at 919) (internal citations omitted). The Third Circuit expanded upon the *Consolidated* factors in *Dominic v. Hess Oil V.I. Corp.*, 841 F.2d 513, 517 (3d Cir. 1988), adding a sixth consideration regarding prejudice to the opposing party. *Ragguette*, 691 F.3d at 327. The Third Circuit has clarified that "the *Dominic* factors that were not restated in *Pioneer* were instead subsumed in the more general consideration of 'reason for the delay.'" *Id.* (quoting *In re*

10

*Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 323 (3d Cir. 2001)) (citations omitted). For simplicity, we will refer to the relevant subfactors as the "*Consolidated* factors."

On April 8, 2021, two months after their Answer was due, Defendants filed a Certification opposing Plaintiff's Motion for Default Judgment in which they ask the Court's permission to file their late Answer. (ECF No. 63 ¶¶ 9–11, 16, 20). Defendants attached a copy of their Answer to that Certification. (*Id.* at Ex. A). While the Supreme Court in *Lujan* cautioned that "[a]fter the time for filing has expired … the court … may extend the time only 'upon motion'" under Rule 6(b), the Court finds that Defendants' request for an extension of time meets *Lujan*'s formality requirements. *See Lujan*, 497 U.S. at 897 n.5 ("To treat all postdeadline 'requests' as 'motions' (if indeed any of them can be treated that way) would eliminate the distinction between predeadline and postdeadline filings that the Rule painstakingly draws. Surely the postdeadline 'request,' to be even permissibly treated as a 'motion,' must contain a high degree of formality and precision, putting the opposing party on notice that a motion is at issue and that he therefore ought to respond."). Here, Defendants' request clearly appears in the main body of Defendants' four-page Certification. (ECF No. 63 ¶¶ 9–10) ("[A]ttached hereto as 'Exhibit A' is Defendants' Answer and Affirmative Defenses to Amended Complaint, which Defendants respectfully submit for filing. Defendants acknowledge that their Answer is being served and filed past the deadline for response set forth in the Federal Rules of Civil Procedure."). Defendants attached a copy of their late Answer to the Certification. (*Id.*) Their request was sufficiently formal to put Plaintiff on notice that Defendants were seeking to file an untimely answer and provided Plaintiff with an opportunity to respond, which Plaintiff has done. *See* (ECF Nos. 66, 70). Therefore, the Court will construe Defendants' request as a motion for an extension of time pursuant to Rule 6(b)(1)(B) and proceed to evaluate whether Defendants have

demonstrated excusable neglect for their late filing.[7] *Cf. Schweikert v. Baxter Healthcare Corp.*, No. 12-5876, 2015 WL 4578443, at *20 (D.N.J. July 29, 2015). Ultimately, we find that the *Pioneer* factors weigh in favor of finding excusable neglect and accepting Defendants' Answer.[8]

First, the Court finds no evidence to support Plaintiff's claim that he will be prejudiced by the extension. *Ragguette*, 691 F.3d at 331–32 ("[P]rejudice generally occurs where, for instance, the opposing party has lost evidence or placed substantial reliance on the judgment or there is an increased potential for fraud or collusion."). Moreover, the Court cannot conclude that the two-month delay in this matter—which has been going on for over two years—caused by Defendants' untimely response has prejudiced Plaintiff's interests or in any way impeded Plaintiff's ability to proceed with this case on the merits. *See Wilson v. King*, No. 06-2608, 2010 WL 678102, at *4 (E.D. Pa. Feb. 24, 2010) (finding no prejudice where the defendant filed an answer ten months late). Thus, the first *Pioneer* factor supports finding excusable neglect here.

As to the second factor, the two-month delay caused by Defendants' lateness here is relatively minor given the protracted nature of this dispute and will have no real impact on the judicial proceedings. Indeed, Defendants sought permission to file their Answer to the Amended Complaint less than two weeks after Plaintiff filed his motion for default judgment and before the Clerk entered default in this matter. The second *Pioneer* factor falls in Defendants' favor.

However, the third *Pioneer* factor and associated *Consolidated* subfactors militate against a finding of excusable neglect. Defendants assert that the delay in filing their Answer resulted

---

[7] In their Certification, Defendants request that the Court accept their Answer "pursuant to the legal principles which govern setting aside of defaults and default judgments." (ECF No. 63 ¶ 11). As the Court has denied Plaintiff's motion for default judgment, (ECF No. 73), the legal principles Defendants cite in their Certification are not relevant to the instant analysis. Instead, for the reasons explained above, the Court will analyze Defendants' request under Rule 6(b)(1)(B).

[8] Plaintiff argues that because Defendants have not conducted their own explicit *Pioneer* analysis, the Court must strike Defendants' Answer. (Pl. June Mem. 32–37). It is the Court who must conduct a *Pioneer* analysis. The Defendants must, however, provide evidence of excusable neglect. We find that that Defendants' Certification of Opposition provides sufficient evidence to allow the Court to conduct the requisite *Pioneer* analysis. *See* (Def. Cert. Opp'n ¶¶ 9–21).

from understaffing due to COVID-19 and the infection of the lead associate on the case. (Def. Cert. Opp'n ¶ 17). Though Defendants' counsel's understaffing problems were arguably within their control, the cause of the understaffing—the COVID-19 pandemic—and the infection of the lead associate were undoubtedly out of Defendants' control. The Court concludes that Defendants' lateness here is not an easily manufactured excuse or the result of a failure to provide for a readily foreseeable consequence. Nor is Defendants' lateness indicative of professional incompetence. However, "a busy caseload generally does not constitute a basis for a finding of excusable neglect." *Ragguette*, 691 F.3d at 330. Defendants do not claim that they were ignorant of the deadline for their Answer in this case or missed the deadline due to simple inadvertence. Defendants' counsel could have requested an extension of time to file their Answer under Rule 6(b)(1)(A) before the deadline to file an answer had expired. Their failure to do so demonstrates a lack of diligence and a lack of substantial effort towards compliance. The Court is sympathetic to the difficulties caused by a once-in-a-century global pandemic. Still, the Court concludes that, on the whole, Defendants' proffered reasons for delay do not support a finding of excusable neglect.

The fourth factor counsels in favor of granting an extension. The Court finds no evidence of bad faith on the part of Defendants. Rather, Defendants late filing here appears to be the result of mere negligence, not bad faith. In reaching this conclusion, the Court finds it relevant that Defendants have previously been attentive to judicial deadlines in this case.

On balance, the *Pioneer* factors and the totality of the circumstances weigh in favor of finding excusable neglect.[9] Therefore, the Court grants Defendants' motion to file an untimely

---

[9] Plaintiff contends that Defendants have not demonstrated excusable neglect. (Pl. June Mem. 11–14). To support this position, Plaintiff cites to several out of circuit district court opinions. *See id.* (citing *Taylor v. City of Baton Rouge*, 39 F. Supp. 3d 807, 811 (M.D. La. 2014); *Tolliver v. Liberty Mut. Fire Ins. Co.*, No. 2:06-CV-00904, 2008 WL 545018, at *1 (S.D. Ohio Feb. 25, 2008); *Sweetwater Invs., LLC v. Sweetwater Apartments Loan, LLC*, No.

Answer and deems Defendants' Answer filed. (ECF Nos. 63, 68). This result comports with the Third Circuit's strong preference that cases be resolved on the merits. *See Kimberg*, 411 F. App'x at 479 ("[D]oubts as to whether a defendant should be permitted to file an untimely answer should be resolved in favor of allowing a determination on the merits."); *Wilson*, 2010 WL 678102, at *4 ("Plaintiff's attempt to strike Defendant's Answer would leave the Court faced with the drastic remedy of default judgment. The Court finds that such an outcome would undermine the strong interest the Court has in resolving disputes on the merits."); *cf. Barefield v. HSBC Holdings PLC*, No. 18-00527, 2019 WL 918206, at *3 (E.D. Cal. Feb. 25, 2019) ("Even in cases where the more than a year has passed since the deadline to file an answer, courts are reluctant to grant motions to strike."). Accordingly, the Court will deny Plaintiff's Motion to Strike Defendants' Answer. Nonetheless, the Court puts Defendants and their counsel on notice that the Court will not tolerate failure to meet deadlines going forward.

### iii. Plaintiff's June 2021 Motion to Vacate

Last, Plaintiff moves for the Clerk to "to vacate the improper Default entered on May 12, 2021 and enter Default against all Defendants[.]" (Pl. June Mot. 2, n.2). The Clerk denied Plaintiff's request for an entry of default on May 12, 2021 "because an answer was filed as an attachment on 4/8/2021." (Clerk's Quality Control Message, May 12, 2021).

---

1:10-CV-223-WKW, 2011 WL 1545076, at *1 (M.D. Ala. Apr. 25, 2011); *Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 122 (D. Mass. 2001)). None of these cases is particularly instructive here. Further, in at least two of these cases, the district court found excusable neglect and permitted the defendants to file an out of time answer. *See Sweetwater Invs., LLC*, 2011 WL 1545076, at *5–7; *Tolliver*, 2008 WL 545018, at *1–2.

*Plaintiff* places particular emphasis on *Taylor v. City of Baton Rouge*, where a district court was deciding, *inter alia*, whether to grant default judgment to a plaintiff. 39 F. Supp. 3d at 811–14. In its analysis, the *Taylor* court concluded that the defendants had not demonstrated "good cause or excusable neglect" for failing to file a timely answer because the defendants had not provided any explanation as to their lateness despite thorough briefing and a hearing on the issue. *Id.* at 811 n.10, n.11, 814 ("To date, Defendants have failed to present any evidence to establish that such failure was due to a good faith mistake or excusable neglect."). *Taylor* is not controlling or persuasive here. Unlike the *Taylor* defendants, Defendants here provided the Court with reasons for their late-filed Answer—namely, effects of the COVID-19 pandemic. (Def. Cert. Opp'n ¶¶ 9, 17). Further, Defendants here acknowledged their lateness, and have asked for the Court's permission to file a late Answer. (*Id.* ¶¶ 11, 21).

Because Defendants submitted a request to file a late Answer on April 8, 2021, which the Court has now deemed filed, Plaintiff is not entitled to an entry of default in this case.[10] *See DeTore v. Loc. No. 245 of Jersey City Pub. Emp. Union*, 511 F. Supp. 171, 176 (D.N.J. 1981). Therefore, Plaintiff's Motion is denied.

### III. Conclusion

For the foregoing reasons, Plaintiff's Motion to Vacate (ECF No. 73) is **DENIED**. Defendants' request for an extension of time to file an Answer (ECF No. 63) is **GRANTED**. Defendants' Answer (ECF Nos. 63, 68) is deemed **FILED**. Plaintiff's Motion to Strike and to Vacate (ECF No. 70) is **DENIED**. An order shall issue.

Dated: 12/01/2021

/s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

---

[10] In addition, Plaintiff argues that entry of default is warranted because Defendants have not demonstrated a meritorious defense. (Pl. June Mem. 25–27); (Pl. Reply 8 n.5). The question of whether defendants have presented a meritorious defense is relevant in cases where a district court is determining whether to set aside an entry of default or default judgment. *See Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656 (3d Cir. 1982). Both parties present arguments as to whether default and/or default judgment should be entered in this case. *See, e.g.*, (Def. Cert. Opp'n ¶¶ 11-19); (Pl. Reply 5 n.4, 8 n.5). As default has not been entered in this case and we have determined that Plaintiff is not entitled to an entry of default, the Court will not address this issue further.