**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____

|  |  |  |
|---|---|---|
| MICHAEL O. LIVINGSTONE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil No. 19-13412 (RBK/AMD) |
| v. | : | |
| | : | **OPINION** |
| HADDON POINT MANAGER, LLC, *et al.*, | : | |
| | : | |
| Defendants. | : | |

_____

**KUGLER**, United States District Judge:

This matter comes before the Court on (1) Defendants' Motion for Summary Judgment (the "Motion" or "Mot.") (ECF No. 96), pursuant to Federal Rule of Civil Procedure 56; and (2) Plaintiff's Motion for Reconsideration and other forms of relief ("Motion for Reconsideration"). (ECF No. 108). For the reasons set forth, Plaintiff's Motion for Reconsideration is **DENIED**. Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

## I.   BACKGROUND

### A.    Procedural Background

On June 5, 2019, Plaintiff, who is proceeding *pro se*, filed a Complaint in this Court ("Complaint") (ECF No. 1) asserting claims against various Defendants associated with his then-housing complex, Haddon Point Apartments. The following week, he filed a Motion for a Temporary Restraining Order aimed at changing terms in his residential lease. (ECF No. 6). The Court ultimately denied that motion after a hearing. (ECF No. 15). In the meantime, on July 22, 2019, Defendants filed an answer to the Complaint (ECF No. 9).

1

Plaintiff's request for a TRO was just the start of what has turned out to be extensive motions practice between the parties. The Court will recount only those events relevant to the present matter. Defendants filed a Motion to Dismiss for Failure to State a Claim on August 26, 2019 (ECF No. 23), which the Court granted in part and denied in part in an Opinion and Order on February 25, 2020. (ECF Nos. 40–41). The following month, Plaintiff filed a Motion for Leave to File an Amended Complaint (ECF No. 46), which Defendants opposed (ECF No. 51). In an Opinion and Order on December 7, 2020, the Court granted Plaintiff's motion. (ECF Nos. 55–56). Plaintiff filed his Amended Complaint ("Am. Compl.") on January 19, 2021. (ECF No. 57). The claims in the Amended Complaint are the subject of Defendants' present Motion for Summary Judgment. Defendants answered the Amended Complaint on May 24, 2021. (ECF No. 68).

The Defendants named in Plaintiff's Amended Complaint are Haddon Point Manager, LLC, the landlord of Haddon Point Apartments; Haddon Point Urban Renewal, LLC, the owner of Haddon Point Apartments; Delco Development, LLC, a "business entity owner" of Haddon Point Apartments; Tom Juliano, the Chief Executive Officer of Delco Development; Nina Beacher, the Director of Residential Development of Haddon Point Apartments; Weishoff & Richards, LLC, the law firm and alleged debt collector of Haddon Point Manager; Travis J. Richards, an attorney at Weishoff & Richards and alleged debt collector for Haddon Point Manager; and Nicolas G. Rotsides, another attorney and alleged debt collector for Haddon Point Manager. (Am. Coml. ¶¶ 2–9).

The pending legal claims are threefold: (1) that Defendants violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*., in trying to collect money that Plaintiff owed due to his late rental payments; (2) that Defendants violated the New Jersey

Tenant Reprisal Act (or Tenant Anti-Reprisal Act), N.J. Stat. Ann. § 2A:42-10.10 to -10.14, by evicting him in response to his legal advocacy; and (3) that Defendants violated N.J. Stat. Ann. § 46:8-21.1 by improperly withholding his security deposit following his eventual eviction from his apartment. (*See generally* Am. Compl.).

After another Opinion and Order from this Court disposing of other motions on December 2, 2021 (ECF Nos. 75–76), the parties engaged in discovery (ECF Nos. 93–95). On April 17, 2023, Defendants filed the present Motion, which includes a supporting brief ("Def.'s Brief") (ECF No. 96-1), a declaration by Defendants' counsel, Travis J. Richards ("Def.'s Decl.") (ECF No. 96-2), and a Statement of Material Facts Not in Dispute ("Def.'s Statement of Material Facts"). (ECF No. 96-3).

Plaintiff never responded to the Motion despite two extensions requested by Plaintiff and granted by this Court. Plaintiff requested his first extension of time to respond on May 4, 2023. (ECF No. 97).[1] Plaintiff requested an additional 30 days. (*Id.* at 1). The Court gave him 39 days, until June 11, 2023. (ECF No. 99). After missing the June 11 deadline, Plaintiff requested a second extension on June 15, 2023, for an additional 35 days. (ECF No. 100). The Court granted that request in an Order on June 21, 2023, writing:

> Livingstone's response is now due by **July 20, 2023 at 5pm ET**, thirty-five (35) days from the date on which he filed his Motion. This is ***the final extension*** the Court will grant Livingstone to submit his response. If he fails to submit a response by that deadline, the Court will consider him to have waived any right to respond to the pending Motion for Summary Judgment.

(ECF No. 101) (emphasis in original). Plaintiff failed to file a response by the deadline. Instead, eight days after the deadline, he filed a Cross-Motion for Summary Judgment (ECF No. 102),

---

[1] Plaintiff also filed a discovery motion and a motion to hold Defendants' Motion for Summary Judgment in abeyance pending further discovery. Both motions were filed after the expiration of pretrial discovery and denied by the Court. (ECF No. 99).

followed by other ancillary requests. (ECF No. 105–06). On August 8, 2023, the Court denied Plaintiff's Cross-Motion as untimely filed and, due to Plaintiff's failure to respond to the Defendants' Motion, considered Plaintiff to have waived his right to respond to the Motion. (ECF No. 107). The Court ruled that it would therefore consider the Motion unopposed. (*Id.*).

On August 15, 2023, Plaintiff filed the Motion for Reconsideration seeking several forms of relief: (1) that the Chief U.S. District Judge for the District of New Jersey review this Court's Order denying Plaintiff's Cross-Motion for Summary Judgment; (2) that the Chief Judge reassign the case to a different federal judge; (3) that the Hon. Robert B. Kugler recuse himself from the case; (4) that this Court reconsider its Order denying Plaintiff's Cross-Motion for Summary Judgment; (5) that this Court correct or vacate its Order; and (6) that this Court certify the Order for interlocutory appeal. On August 23, 2023, Chief Judge Renée Marie Bumb denied Plaintiff's request to review the Order and to reassign the case to another judge. (ECF No. 109). Thus, only issues (3)–(6) from the list enumerated above remain pending from Plaintiff's Motion for Reconsideration.

**B.  Factual Background[2]**

In December 2018, Mr. Livingstone signed a lease for a one-bedroom apartment at the Haddon Point Apartments in Pennsauken, New Jersey. (Am. Compl. ¶ 16). Within a year, the relationship between tenant and landlord had degenerated into a tangle of litigation. Under the

---

[2] Facts needed to provide a narrative background for this dispute are taken from Plaintiff's Amended Complaint. Facts relevant to the legal claims are taken from the exhibits attached to Plaintiff's Amended Complaint, which Defendants attempted to submit as evidence via the declaration of Travis J. Richards, and Defendants' Statement of Material Facts Not in Dispute. As discussed below, however, not all exhibits attached to the Amended Complaint and submitted by Defendants via their declaration are properly in evidence before this Court. Thus, the Court relies only on facts that are supported by exhibits in evidence. *See infra* Section II.A for the evidentiary standards governing review on summary judgment.

terms of the lease, rent was due on the fifth of the month, with a 10% fee for late payment, and the tenant agreed to pay the landlord's court costs in the event of eviction proceedings. (*Id.*, Ex. A §§ 1.7(b), (j)). At the time, Mr. Livingstone was pursuing his graduate studies full-time through DeVry University, and he informed Ms. Nina Beacher, an employee at the apartments, that he would be paying his rent out of his federal student financial aid disbursements. (*Id.* ¶ 21). Mr. Livingstone paid the rent for January 2019 on time, but he missed the payments for February and March 2019 after his financial aid disbursements were delayed. (*Id.* ¶ 34–44). That triggered a bout of legal sparring that continues to this day.

On March 6, 2019, Mr. Livingstone received a debt collection letter under the letterhead of the law firm Weishoff and Richards, LLC, and signed by Mr. Richards. (*Id.*, Ex. D). The letter stated in relevant part:

> This office represents your landlord, Haddon Point Manager, LLC. We have been advised that the total amount you owe as of this date is $3625.36, which includes court costs and attorney's fees for the recently filed eviction action. . . . Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt it valid. If you notify this office in writing within thirty (30) days after receiving this notice that the debt or any portion thereof is disputed, this office will obtain verification of the debt or a copy of a judgment, if any, and mail you a copy of such verification or judgment. . . . Please be advised that the law does not require this firm to wait until the end of the thirty (30) day period before taking legal action. . . . If, however, you dispute the debt, or any portion thereof, in writing, or request the name and address of the original (creditor) landlord, in writing, within the thirty (30) day period that begins with your receipt of this letter, the law requires us to suspend our efforts (through litigation or otherwise) to collect the debt until we mail the requested information to you. Once verification is mailed, we can resume collection efforts.

(*Id.*).

Mr. Richards' firm then initiated the first of an eventual three eviction actions against Mr. Livingstone. Mr. Richards prepared an eviction complaint for Mr. Livingstone's non-payment of rent that is dated March 6, 2019, but a court stamp indicates that the complaint was not filed with

the Camden County Superior Court until March 18, 2019. (*Id.*, Ex. B). The complaint lists the amount owed by Mr. Livingstone as $3,625.36, the same as the collection letter. (*Id.*) In the time between the preparation of the complaint and when it was filed with the court, on March 15, 2019, Mr. Livingstone paid his landlord $3,053.22, representing the past-due base rent and utilities. (*Id.*, Ex. R at 8). All that remained due at that point was $558.00 for late fees and attorneys' fees and costs. (Def.'s Statement of Material Facts ¶ 18). In emails on March 20, 2019, and March 25, 2019, sent to Mr. Richards and other people associated with Haddon Point Apartments, Mr. Livingstone disputed the amount of debt he owed, (Am. Compl., Ex. R at 2), and argued that the amount of debt listed on the eviction complaint was not accurate. (*Id.* at 8). Neither Mr. Richards nor anyone else appear to have responded to Mr. Livingstone's email disputing his debt. At a trial on April 25, 2019, the complaint against Mr. Livingstone was dismissed because no agent of the Defendants was able to appear in court. (Def.'s Statement of Material Facts ¶ 21).

The pattern of Mr. Livingstone missing rent payments followed by Mr. Richards initiating eviction proceedings happened two more times. After Mr. Livingstone missed his May 2019 payment, Mr. Richards sent him a second debt collection letter, dated May 15, 2019, with the same language as the first. (Am. Compl., Ex. E). Mr. Richards prepared an eviction complaint, also dated May 15, 2019, and filed it with the Camden County Superior Court on May 20, 2019. (*Id.*, Ex. C). There is no evidence that Mr. Livingstone disputed this debt, although Mr. Livingstone claims in his Amended Complaint that he paid his past-due base rent and utilities on May 16, 2019, before the complaint was filed. (*Id.* ¶¶ 71, 79). At the second eviction trial on June 6, 2019, the court again dismissed the eviction complaint after Mr.

Livingstone agreed to pay $402.00 in late fees and legal fees. (Def.'s Statement of Material Facts ¶¶ 30, 32).

Mr. Livingstone was late on paying rent for a third time, in July 2019. (*Id*. ¶ 36). Mr. Richards sent Mr. Livingstone a third debt collection letter, dated July 19, 2019, (Am. Compl., Ex. M.2), and prepared a third eviction complaint, which was dated July 19, 2019, and filed with the Camden County Superior Court on July 22, 2019. (*Id*., Ex. M). In an email sent July 31, 2019, Mr. Livingstone disputed the accuracy of a water bill listed as debt in the eviction complaint and noted he paid his past-due base rent and utilities on July 22, 2019. (*Id*., Ex. M.3 at 3–4). Again, neither Mr. Richards nor anyone else appears to have responded to Mr. Livingstone's email. After a third eviction trial on August 15, 2019, where a judgment of possession was entered against Mr. Livingstone, and after Mr. Livingstone was unsuccessful through subsequent legal filings to block his eviction, he moved out of his apartment on or about October 7, 2019. (Def.'s Statement of Material Facts ¶¶ 42–45, 49).

## II.    LEGAL STANDARD

### A.  Summary Judgment Under Rule 56

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it will "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a "reasonable jury could return a verdict for the nonmoving party." *Id.* The movant bears the burden of showing the absence of any "genuine issues of material fact." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). The party may satisfy its burden by "produc[ing] evidence showing the absence of a genuine issue of material fact" or "by 'showing'—that is, pointing out to the district court—

that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes this showing, the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmovant must "point to concrete evidence in the record that supports each and every essential element of his case." *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995).

"When opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" *Corliss v. Varner*, 247 F. App'x 353, 354 (3d Cir. 2007) (quoting *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002)). The Court's role is not to weigh the evidence and decide the truth, but to determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In making that decision, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party," *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998), and credibility determinations are for the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

Importantly, only evidence "capable of being admissible at trial" may be considered on a motion for summary judgment. *Philbin v. Trans Union Corp.*, 101 F.3d 957, 961 n.1 (3d Cir. 1996); Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). Federal Rule of Civil Procedure 56(c) directs that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or

other materials." Fed. R. Civ. P. 56(c)(1)(A). Assertions in briefs are not record evidence unless agreed to by the adverse party. *Dabone v. Thornburgh*, 734 F. Supp. 195, 199 (E.D. Pa. 1990) (citing *Braden v. University of Pittsburgh*, 477 F.2d 1, 6 (3d Cir. 1973)); *see also Lassoff v. New Jersey*, 2007 WL 2156360, at *2 (D.N.J. July 25, 2007) ("Bald assertions in briefs are not facts and will not defeat summary judgment."). Further, a declaration used to support a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Declarations by attorneys are governed by the same rules that apply to other declarations or affidavits under Rule 56. 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (4th ed. 2023). Thus, declarations—or parts of declarations—made on information and belief do not comply with Rule 56(c). *Automatic Radio Mfg. Co. v. Hazeltine Rsch.*, 339 U.S. 827, 831 (1950), *overruled in part on other grounds by Lear, Inc. v. Adkins*, 395 U.S. 653 (1969). Even if an affiant does not assert that he has personal knowledge of the matters stated, "if a sworn affidavit clearly flows from personal knowledge of a competent affiant, a court may consider it on summary judgment." *OFI Int'l, Inc. v. Port Newark Refrigerated Warehouse*, 2015 WL 140134, at *2 (D.N.J. Jan. 12, 2015). On the other hand, a court may strike portions of a declaration that are beyond the scope of the affiant's personal knowledge. *See*, *e.g.*, *Brown v. Nat'l Penn Ins. Servs. Grp., Inc.*, 2014 WL 4160421, at *4, *4 n.7 (E.D. Pa. Aug. 22, 2014).

### B.  *Pro Se* Litigants

Generally, "[a] document filed *pro se* is to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). For example, district courts have a

duty "to apply the relevant legal principle even when the complaint has failed to name it." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). Despite this liberal interpretation, however, the same summary judgment standard applies to *pro se* litigants as those represented by counsel. *Dinnerstein v. Burlington Cnty. Coll.*, 2017 WL 5593776, at *4 (D.N.J. Nov. 21, 2017), *aff'd*, 764 F. App'x 214 (3d Cir. 2019). "Proceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Id.*; *see also Watson v. Philadelphia Hous. Auth.*, 629 F. Supp. 2d 481, 485 (E.D. Pa. 2009) ("The party opposing summary judgment, whether *pro se* or counseled, must present evidence, through affidavits, depositions, or admissions on file, to show that there is a genuine issue for trial.").

### C. Motion to Recuse

The legal standard for recusal of district court judges is codified at 28 U.S.C. §§ 144 and 455. Section 144 provides for recusal "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party." The judge who is targeted by the recusal motion must decide whether the moving party's affidavit passes a threshold sufficiency test that would support a charge of bias or prejudice. *Mims v. Shapp*, 541 F.2d 415, 417 (3d Cir. 1976). Under this test, the judge must accept the movant's alleged facts as true—but not his conclusions, conjecture, speculation, or surmises—and then answer whether "a reasonable person would conclude that a personal bias, as distinguished from a judicial bias, exists." *Cooney v. Booth*, 262 F. Supp. 2d 494, 501 (E.D. Pa. 2003) (internal quotation marks and citations omitted). Examples of judicial bias, as opposed to personal bias, include allegations

of bias "in favor of a particular legal principle" or "based upon legal rulings by the judge adverse to [a party]." *United States v. Thompson*, 483 F.2d 527, 529 (3d Cir. 1973).

Under § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Additionally, under § 455(b)(1), a judge must disqualify himself "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." Such disqualification is crucial to maintaining "the public's confidence in the judiciary, which may be irreparably harmed if a case is allowed to proceed before a judge who appears to be tainted." *Alexander v. Primerica Holdings. Inc.*, 10 F.3d 155, 162 (3d Cir. 1993). Consequently, even where the judge is not "subjectively biased or prejudiced," he must recuse himself under § 455 "so long as he appears to be so." *In re Community Bank of No. Va.*, 418 F.3d 277, 320 (3d Cir. 2005) (quoting *United States v. Bertoli*, 40 F.3d 1384, 1412 (3d Cir.1994)). In other words, the judge must recuse himself if a "reasonable man . . . would harbor doubts about the judge's impartiality." *Cmty. Bank*, 418 F.3d at 320 (citation omitted).

### D.  Motion for Reconsideration under Local Civil Rule 7.1

Local Civil Rule 7.1 allows a party to seek reconsideration of matters or controlling decisions "which [it] believes the Judge has overlooked" in issuing an order. Local Civ. R. 7.1(i). "The standard for reargument is high and reconsideration is to be granted only sparingly." *Yarrell v. Bartkowski*, 2012 WL 1600316, at *3 (D.N.J. May 7, 2012). A court will grant a motion for reconsideration only where "dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision." *United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999). To succeed on a motion for reconsideration, a

party must show: "(1) an intervening change in the controlling law; (2) the availability of new evidence not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

### E.  Motion for Relief from an Order under Rule 60

Federal Rule of Civil Procedure 60 permits district courts to correct their own mistakes or provide relief from their own judgments, orders, or proceedings. Under Rule 60(a), "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Some circuits have held that a court may also grant a Rule 60(a) motion "to resolve an ambiguity in its original order to more clearly reflect its contemporaneous intent and ensure that the court's purpose is fully implemented." *Burton v. Johnson*, 975 F.2d 690, 694 (10th Cir. 1992); *see also Panama Processes, S.A. v. Cities Serv. Co.*, 789 F.2d 991, 993 (2d Cir. 1986).

"Rule 60(b) allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence." *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005). In this case, Plaintiff specifically cites Rule 60(b)(6), which "is a catch-all provision that authorizes a court to grant relief from a final judgment for 'any . . . reason' other than those listed elsewhere in the Rule." *Cox v. Horn*, 757 F.3d 113, 120 (3d Cir. 2014), *cert. denied sub nom.*, *Wetzel v. Cox*, 575 U.S. 929 (2015).

Rule 60(b) motions are left to the sound discretion of the trial court, consistent with accepted legal principles applied in light of all relevant circumstances. *See Pierce Assoc. Inc. v. Nemours Found.*, 865 F.2d 530, 548 (3d Cir. 1988). Relief under Rule 60(b) is appropriate only when the "overriding interest in the finality and repose of judgments may properly be

overcome." *Harris v. Martin*, 834 F.2d 361, 364 (3d Cir. 1987). "A court may grant a Rule 60(b)

motion only in extraordinary circumstances, and a Rule 60(b) motion is not appropriate to

reargue issues that the court has already considered and decided." *Weber v. Pierce*, 2016 WL

2771122, at *2 (D. Del. May 13, 2016) (citations and footnote omitted).

### F.  Motion for Certification for Interlocutory Appeal

A litigant may apply for interlocutory review of an otherwise non-appealable district

court order by petitioning the district court to certify its order to the appropriate appellate court

pursuant to 28 U.S.C. § 1292(b). To obtain certification, a movant bears the burden of showing

there is (1) a controlling question of law (2) as to which there is a substantial ground for

difference of opinion and (3) where an immediate appeal may materially advance the ultimate

termination of the litigation. *See Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974).

Interlocutory appeal is used sparingly and only in exceptional cases where the interests cutting in

favor of immediate appeal overcome the presumption against piecemeal litigation. *S.E.C. v.*

*Lucent Techs., Inc.*, 2009 WL 4508583, at *8 (D.N.J. Nov.16, 2009). Merely questioning a

court's ruling is insufficient. *Kapossy v. McGraw–Hill, Inc.*, 942 F. Supp. 996, 1001 (D.N.J.

1996). A district court may exercise considerable discretion in determining whether a particular

order is appropriate for interlocutory review. *See Bachowski v. Usery*, 545 F.2d 363, 368 (3d Cir.

1976).

## III.   DISCUSSION

Because the outcome of Plaintiff's Motion for Reconsideration affects whether the Court

will permit Plaintiff to file a response to Defendants' Motion for Summary Judgment, the Court

will address the Motion for Reconsideration before ruling on the Motion for Summary Judgment.

A.  **Plaintiff's Motion for Reconsideration**

Plaintiff's Motion for Reconsideration seeks several forms of relief from the Court's Order denying Plaintiff's Cross-Motion for Summary Judgment and deeming Plaintiff to have waived his right to respond to Defendants' Motion for Summary Judgment. After Chief Judge Bumb denied two of Plaintiff's requests, the requests still before this Court are: (1) that Judge Kugler recuse himself from the case; (2) that this Court reconsider its Order denying Plaintiff's Cross-Motion for Summary Judgment; (3) that this Court correct or vacate its Order; and (4) that this Court certify the Order for interlocutory appeal.

We address each of these requests in turn and conclude that each request is denied.

*i.   Motion to Recuse*

Plaintiff alleges that the Judge Kugler should recuse himself from this case because he exhibited "disparate racial treatment" in allowing "the Caucasian or non-black defendants" to file an untimely Answer to Plaintiff's Amended Complaint while refusing to consider the Cross-Motion for Summary Judgment filed late by Plaintiff, who is Black. (ECF No. 180 at 3–4). Plaintiff also expresses frustration with the language in the Court's Order that Plaintiff had "not filed with the Court sufficient medical evidence that he was so incapacitated during the length of these extensions that he could not timely file his response." (*Id*. at 3–7) (citing ECF No. 107). In accepting Defendants' untimely Answer to his Amended Complaint, Plaintiff points out, the Court did not demand proof of an attorney's positive test for Covid-19, which was one of the reasons put forth by Defendants' counsel for the late filing. (*Id*.) (citing ECF Nos. 63, 68, 76).

Although the possibility of racism in the judicial system is not to be taken lightly, Plaintiff's dissatisfaction with the procedural disposition of his lawsuit is not grounds for recusal. Accepting the facts alleged by Plaintiff in his Motion as true, Plaintiff's allegations amount to a

14

claim of judicial bias, not personal bias. *Cooney*, 262 F. Supp. 2d at 501. That is, Plaintiff alleges bias "based upon legal rulings by the judge adverse to" him. *Thompson*, 483 F.2d at 529. Plaintiff identifies no facts indicative of a racial motivation or bias by the Court, only conjecture. Moreover, he has provided no facts suggesting that the Court treated his case differently than it would treat any other case under the circumstances.

It is worth reminding Plaintiff of the events that led to the Court's Order denying his Cross-Motion for Summary Judgment. This Court's common practice is to honor reasonable requests for extensions of time to submit filings. The spirit of this practice is reflected in the District of New Jersey's Local Civil Rules. *See*, *e.g.*, L. Civ. R. 7.1(d)(5) (granting as of right one adjournment by the party opposing a dispositive motion). In requesting that the Court accept an untimely Answer to Plaintiff's Amended Complaint, Defendants explained the cause for the delay, including that their counsel's office was affected by the Covid-19 pandemic. (ECF No. 63 ¶ 17). The Court exercised its discretion in granting the request. (ECF No. 76).

Similarly, when Plaintiff missed the first deadline to respond to Defendants' Motion for Summary Judgment and then requested a 30-day extension (ECF No. 97), the Court not only granted the request but provided 39 days to respond. (ECF No. 99). After missing that deadline, Plaintiff requested a second extension of 35 days (ECF No. 100), which the Court granted while warning Plaintiff that it was the final extension the Court would permit before considering Plaintiff to have waived his right to respond. (ECF No. 101). Plaintiff missed this deadline, too.

Plaintiff's failure to abide by the parameters he himself requested is not evidence of racial bias by the Court. Plaintiff has not filed an affidavit sufficient under 28 U.S.C. § 144 to show that Judge Kugler has a personal bias such that he should recuse himself. Similarly, Plaintiff has not shown pursuant to 28 U.S.C. § 455 that Judge Kugler's impartiality "might reasonably be

questioned" or that he has "a personal bias or prejudice concerning a party." Plaintiff's motion to recuse is denied.

### *ii.   Motion for Reconsideration under Local Civil Rule 7.1*

Plaintiff cites numerous opinions from other courts in an attempt to show that this Court made a "clear error of law" that would compel the Court to reconsider its Order denying Plaintiff's Cross-Motion for Summary Judgment. *Max's Seafood Cafe ex rel. Lou-Ann, Inc.*, 176 F.3d at 677. Plaintiff fails to point out any clear error of law underpinning the Court's Order. Therefore, Plaintiff's motion for reconsideration under L. Civ. R. 7.1(i) is denied.

Although unsuccessful on his motion, Plaintiff does make two points worth highlighting. First, Plaintiff expresses concern that because the Court deemed him to have waived his right to respond to Defendants' Motion for Summary Judgment, the Court would not hold Defendants to their burden under Federal Rule of Civil Procedure 56. (ECF No. 108-1 at 12–14).[3] The Court assures Plaintiff that even without opposition, Defendants as the movants retain the burden of showing the absence of a "genuine issue of material fact" such that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Aman*, 85 F.3d 1074 at 1080. Second, Plaintiff correctly observes that Defendants' Motion for Summary Judgment does not properly cite to materials in the record. (ECF No. 108-1 at 14). While this observation does not help Plaintiff's motion for reconsideration, this aspect of Defendants' Motion for Summary Judgment accrues to their detriment, as discussed below.

---

[3] Citations to page numbers in ECF No. 108-1 correspond to the page numbers assigned by ECF, not by Plaintiff.

### iii.   Motion for Relief from the Court's Order under Rule 60

Plaintiff moves under Rule 60(a) for the Court to correct alleged mistakes in its Order denying Plaintiff's Cross-Motion for Summary Judgment. Plaintiff first argues that the Order is mistaken in stating that the Court gave him "more than two and a half extra months" to file his response. (ECF No. 108-1 at 20–21). It is Plaintiff who is mistaken. Based on when Defendants filed their Motion for Summary Judgment, Plaintiff's response was originally due May 1, 2023. (ECF No. 96). After Plaintiff requested and received two extensions, Plaintiff's response was due July 20, 2023. (ECF No. 101). That is more than two and a half months later. Second, Plaintiff alleges there is "ambiguity" in the Order. (ECF No. 108-1 at 29). To the extent the Order contains any ambiguity, it does not rise to a level that obscures the Court's intent or prevents the Court's purpose from being fully implemented. *See Burton*, 975 F.2d at 694. Therefore, it is not grounds for relief under Rule 60(a). Plaintiff's Rule 60(a) motion is denied.

Plaintiff also argues that the Court should vacate its Order under Rule 60(b)(6) for substantially the same reasons he seeks reconsideration under Local Civil Rule 7.1(i). The Court notes that it "may grant a Rule 60(b) motion only in extraordinary circumstances, and a Rule 60(b) motion is not appropriate to reargue issues that the court has already considered and decided." *Weber*, 2016 WL 2771122, at *2. Extraordinary circumstances are not present here, as Plaintiff has pointed to no deficiencies—legal or otherwise—in the Court's Order. Plaintiff's Rule 60(b) motion is also denied.

### iv.   Motion for Certification for Interlocutory Appeal

Finally, Plaintiff asks the Court to certify an interlocutory appeal of its Order pursuant to 28 U.S.C. § 1292(b). Doing so would not be appropriate. Plaintiff has not met his burden of showing that the Court's discretionary decision to enforce a procedural deadline is "a controlling

question of law" falling within the ambit of 28 U.S.C. § 1292(b). *Katz*, 496 F.2d at 754. Even more importantly, certifying the Order for appeal would not "materially advance the ultimate termination of the litigation." *Id*. If anything, it would further delay a case that centers on an eviction that occurred in 2019. This is especially true given that Plaintiff's FDCPA and state law claims largely survive Defendants' Motion to Dismiss even in the absence of a response from Plaintiff. The Court therefore declines to certify an interlocutory appeal of its Order.

### v.  Conclusion

Plaintiff's Motion for Reconsideration (ECF No. 108) is denied in its entirety.

## B.  Defendants' Motion for Summary Judgment

Defendants' Motion for Summary Judgment suffers from procedural and evidentiary deficiencies that the Court will discuss before turning to the substance of the Motion.

### i.  Deficiencies Under Rule 56

Defendants fail to fully comply with Rule 56 in their Motion for Summary Judgment. The Court identifies two main deficiencies. First, the Rule states that in supporting its factual positions, a party must "cit[e] to *particular parts* of materials in the record." Fed. R. Civ. P. 56(c)(1) (emphasis added). Defendants fail to heed this language. Instead, Defendants lead the Court through a chain of citations that proves of little use. Mr. Richards, counsel for Defendants, filed as part of the Motion both a declaration and Statement of Material Facts Not in Dispute. In the third paragraph of his declaration, Mr. Richards incorporates as "Exhibit B" Plaintiff's response to interrogatories, which runs some 26 pages. (Def.'s Decl. 17–43). In the fourth paragraph, Mr. Richards incorporates as "Exhibit C" Plaintiff's entire Amended Complaint, which spans 200 pages and includes roughly 20 exhibits. (Def.'s Decl. 45–244). Then, to support their Statement of Material Facts Not in Dispute, Defendants cite in that Statement only to

paragraph three or four of the declaration—not to any particular parts of the underlying 226 pages of documents. Moreover, Defendants' brief in support of their Motion contains no citations to the evidentiary record.

It is not the Court's duty at the summary judgment stage to search the record for the presence or absence of triable issues when the parties fail to bring them to the Court's attention. *See Rogers v. Plumsted Twp. Bd. of Fire Commissioners Fire Dist. No. 1*, 2019 WL 397988, at *1 (D.N.J. Jan. 31, 2019) (noting "it is not the Court's duty to search the record" for facts at issue). Ruling on an appeal of a grant of summary judgment some three decades ago, Judge Easterbrook of the Seventh Circuit memorably remarked:

> District judges are not archaeologists. They need not excavate masses of papers in search of revealing tidbits—not only because the rules of procedure place the burden on the litigants, but also because their time is scarce. Other parties, who live by the rules, have a priority claim on the judge's attention. Lawyers and litigants who decide that they will play by rules of their own invention will find that the game cannot be won.

*Nw. Nat. Ins. Co. v. Baltes*, 15 F.3d 660, 662–63 (7th Cir. 1994).

Nonetheless, the Court in its diligence has conducted a sufficient review of the record evidence to conclude that Plaintiff's FDCPA claims, in part, should survive the present Motion, as should Plaintiff's state law claims. The Court describes its reasoning below.

The second deficiency in Defendants' Motion is that Mr. Richards attempts to enter evidence into the record about which he cannot have personal knowledge. Declarations made on information and belief do not comply with Rule 56(c)(4). *Hazeltine*, 339 U.S. at 831. In his declaration, Mr. Richards states that he is "fully familiar" with the facts set forth in the declaration "[a]s a result of my position and employment." (Def.'s Decl. 1). The contents of certain exhibits attached to Plaintiff's Amended Complaint, which Mr. Richards enters into evidence via his declaration, clearly flow from Mr. Richards' personal knowledge. Therefore,

Mr. Richards is a competent declarant as to these matters and the Court will consider them as record evidence. *OFI Int'l*, 2015 WL 140134, at *2. These exhibits include any document signed by Mr. Richards, including the debt collection letters and eviction complaints. The Court will also consider as record evidence Plaintiff's lease agreement, which Mr. Richards necessarily reviewed to initiate debt collection and eviction proceedings; email correspondence from Plaintiff on which Mr. Richards was copied; and Plaintiff's answers to interrogatories prepared by Mr. Richards.

Other exhibits are outside of Mr. Richards' personal knowledge, so the Court will not consider them as evidence. The exhibits the Court will not consider are:

- An email from Plaintiff to employees at Haddon Point Apartments on which Mr. Richards is not copied, (Am. Compl., Ex. G);

- An email from DeVry University to Plaintiff, (*id.*, Ex. I);

- Transcripts of two hearings, including Plaintiff's second eviction trial, before a New Jersey Superior Court Judge at which another attorney at Mr. Richards' firm appeared, (*id.*, Exs. O, P);

- An email from a professor at Rowan University to Plaintiff, (*id.*, Ex. U);

- Various court orders from September and October 2019, (*id.*, Ex. Y);

- A Security Deposit Statement sent to Plaintiff by his landlord, (*id.*, Ex. Z); and

- An email from an administrator at West Chester University to Plaintiff, (*id.*, Ex. Z.1).

With these preliminary matters resolved, the Court will proceed to the substance of Defendants' Motion for Summary Judgment.

### ii.   *Plaintiff's Claims Under the Fair Debt Collection Practices Act*

Plaintiff alleges that all Defendants violated the FDCPA in trying to collect past-due rent, utilities, and legal costs associated with his eviction proceedings. Specifically, he alleges that Defendants failed to cease debt collection efforts on several occasions after he disputed the amount he owed, as required by 15 U.S.C. § 1692g(b). (Am. Compl. ¶¶ 179–80, 208–09). Plaintiff also alleges that Defendants misrepresented the amount of debt he owed in collection letters and eviction complaints, in violation of 15 U.S.C. § 1692e(2). (*Id*. ¶¶ 174, 184, 193, 196, 199, 204, 217–18).[4]

"To prevail on an FDCPA claim, a plaintiff must prove that (1) [he] is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015) (citation omitted). A debt collector, in turn, is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Here, the second and fourth prongs are disputed.[5]

Defendants argue that only Mr. Richards and his law firm, Weishoff & Richards, LLC, meet the FDCPA's definition of debt collectors. (Def.'s Brief at 11). In a previous Opinion on

---

[4] Plaintiff does not specifically cite 15 U.S.C. §§ 1692g or 1692e in his Amended Complaint, but the Court "appl[ies] the relevant legal principle even when the complaint has failed to name it." *Mala*, 704 F.3d at 244.

[5] As to the third prong, the Court refers to its Opinion on February 25, 2020, in which it held that Plaintiff's past-due rent can be considered a "debt" for the purposes of the FDCPA. (ECF No. 40 at 9–10).

February 25, 2020, which was based on Plaintiff's original Complaint, the Court agreed with Defendants' position and dismissed Plaintiff's FDCPA claims without prejudice against all other Defendants. (ECF No. 40 at 10). Now at the summary judgment stage, it remains clear that Mr. Richards and Weishoff & Richards meet the definition of debt collectors. The undisputed evidence before the Court shows that Mr. Richards individually signed the debt collection letters sent to Plaintiff. (Am. Compl. Exs. D, E, M.2). Further, the letters themselves classify Weishoff & Richards as a debt collector. (*Id*.). The Defendants do not dispute this characterization.

With the benefit of Plaintiff's Amended Complaint, the Court finds that Defendant Nicolas G. Rotsides, another attorney at Weishoff & Richards, could also meet the FDCPA's definition of a debt collector. Plaintiff alleges that Mr. Rotsides represented Haddon Point Apartments at court hearings related to all three eviction actions against Plaintiff. (Am. Compl. ¶¶ 60, 86, 116). Defendants do not dispute Mr. Rotsides' role but argue that Plaintiff has provided no evidence Mr. Rotsides was acting in an individual capacity and that the law firm's corporate veil should not be pierced. (Def.'s Brief at 13).

Defendants' arguments miss the mark. The Supreme Court has held that "a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly 'attempts' to 'collect' [ ] consumer debts." *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995). Extending the logic of *Heintz*, the New Jersey Supreme Court has held that lawyers representing landlords in summary dispossess actions are debt collectors subject to the FDCPA. *Hodges v. Sasil Corp.*, 915 A.2d 1, 10–11 (N.J. 2007) ("Often, an implicit, if not overt, goal in summary dispossess actions . . . is the securing of payment of back rent."). While *Hodges* is only persuasive authority before this Court, other federal courts in this district have uniformly adopted

the holding of *Hodges. See Ojo v. Milrose 179 Harrison, LLC*, 2021 WL 822788, at *2 (D.N.J. Mar. 4, 2021) (collecting cases). This Court follows suit.

Considering the evidence before the Court regarding Mr. Rotsides' involvement in the eviction proceedings against Plaintiff, Defendants fail to show the absence of a genuine issue for trial as to whether Mr. Rotsides is a debt collector within the meaning of the FDCPA. Given that Mr. Rotsides allegedly appeared in court several times on behalf of Haddon Point Manager—a fact Defendants do not contest—a fact finder could conclude that he "regularly" engaged in debt collection activities, namely, trying to secure back rent from Plaintiff via litigation. Thus, for the purposes of the Motion, the Court holds that Mr. Rotsides, Mr. Richards, and Weishoff & Richards are all debt collectors under the FDCPA.

Otherwise, the Court agrees that no evidence exists in the record to demonstrate that any other named Defendant is a "debt collector." This includes Defendant Nina Beacher, whom Plaintiff alleges should be classified as a debt collector because she signed the "Landlord Verification" forms that accompanied his eviction complaints. (Am. Compl. ¶158) (citing *id.*, Exs. B, C, M). However, claims against landlords based on their attempts on their own behalf to collect outstanding amounts owed to them are not viable because the landlords would be deemed creditors and not debt collectors under the FDCPA. 15 U.S.C. 1692(a)(6); *see also Staub v. Harris*, 626 F.2d 275, 277 (3d Cir. 1980) ("The [FDCPA] does not apply to persons or businesses collecting debts on their own behalf."); *Ojo*, 2021 WL 822788, at *2 ("[L]andlords . . . seeking to collect rent (a debt) owed directly to them from tenants are creditors, not debt collectors."). Accordingly, Defendants Haddon Point Manager, Haddon Point Urban Renewal, Delco Development, Tom Juliano, and Nina Beacher are entitled to judgment as a matter of law on Plaintiff's FDCPA claims.

We turn now to the question of whether the remaining Defendants violated §§ 1692g(b) and 1692e(2) of the FDCPA in attempting to collect debt from Plaintiff. Under § 1692g, debt collectors are required to provide certain information to consumers when they initiate communication with them, including a statement that if the consumer disputes the debt within thirty days of the receipt of the notice, the debt collector will obtain verification of the debt and provide such verification to the consumer. 15 U.S.C. § 1692g(a)(4). Once the consumer disputes the debt, the debt collector:

> shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b).

Section 1692e, for its part, generally provides that debt collectors "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Among the code section's specific prohibitions are "[t]he false representation of . . . the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A).

Plaintiff alleges that Defendants violated these code sections in multiple ways. First, Plaintiff alleges that he disputed the debt that Defendants said he owed in the first and third collection letters, but Defendants did not provide him a debt verification before continuing with eviction proceedings. (Am. Compl. ¶¶ 179–80, 208–09). Second, Plaintiff alleges that prior to Defendants filing the first and second eviction complaints, he paid some of the past-due rent and utilities he owed. (*Id*. ¶¶ 174, 184, 193). Nonetheless, Defendants filed eviction complaints that did not take these payments into account. (*Id*.). Third, Plaintiff alleges that the third eviction complaint incorrectly states that he owes money for his July 2019 water, when in fact he owed

24

money for his June 2019 water bill. (*Id.* ¶ 204). Finally, Plaintiff alleges that as part of the second

and third eviction cycles, Defendants during court hearings sought payment for legal fees that

they did not list on their collection letters or eviction complaints. (*Id.* ¶¶ 196, 199, 217–18).

To clarify Plaintiff's allegations, the Court has prepared the following summary tables:

Eviction Cycle 1

| | |
|---|---|
| Def. sends debt collection letter | March 6, 2019 (Am. Compl., Ex. D) |
| Pl. pays portion of past-due rent/utilities | March 15, 2019 (*Id.*, Ex. R at 8) |
| Def. files eviction complaint with court | March 18, 2019 (*Id.*, Ex. B) |
| Pl. disputes debt | March 20, 2019 (*Id.*, Ex. R at 2) |
| Eviction trial occurs | April 25, 2019 (Def.'s Statement of Material Facts ¶ 21). |

Eviction Cycle 2

| | |
|---|---|
| Def. sends debt collection letter | May 15, 2019 (Am. Compl., Ex. E). |
| Pl. pays portion of past-due rent/utilities | May 16, 2019 (*Id.*, ¶¶ 71, 79) |
| Def. files eviction complaint with court | May 20, 2019 (*Id.*, Ex. C) |
| Pl. disputes debt | N/A |
| Eviction trial occurs | June 6, 2019 (Def.'s Statement of Material Facts ¶¶ 30–31). |

Eviction Cycle 3

| | |
|---|---|
| Def. sends debt collection letter | July 19, 2019 (Am. Compl., Ex. M.2). |
| Pl. pays portion of past-due rent/utilities | July 22, 2019 (*Id.*, Ex. M.3 at 4) |
| Def. files eviction complaint with court | July 22, 2019 (*Id.*, Ex. M) |
| Pl. disputes debt | July 31, 2019 (*Id.*, Ex. M.3 at 3–4) |
| Eviction trial occurs | August 15, 2019 (Def.'s Statement of Material Facts ¶ 42). |

Defendants deny they violated FDCPA in any way. First, Defendants argue that the

eviction complaints themselves are sufficient to meet the debt verification requirements of 15

U.S.C. § 1692g(b). (Def.'s Brief at 6). Under Third Circuit precedent, they point out, a

verification notice is adequate if it informs the debtor of "the amounts of his debts, the services

provided, and the dates on which the debts were incurred." *Graziano v. Harrison*, 950 F.2d 107,

113 (3d Cir. 1991), *overruled in part on other grounds by Riccio v. Sentry Credit, Inc.*, 954 F.3d

582 (3d Cir. 2020). Indeed, the eviction complaints in this case clearly list amounts that Plaintiff is purported to owe for "services" (i.e., rent, utilities, court costs, and attorneys' fees) provided in specific months. (Am. Compl., Exs. B, C, M). Therefore, Defendants argue, "no violation of the FDCPA occurred because in each relevant instance Plaintiff was provided verification of his debt before the Eviction continued." (Def.'s Brief at 8).

Second, Defendants argue that no FDCPA violation occurred because "legal pleadings" such as eviction complaints are exempted under § 1692g(d) from the FDCPA's verification requirements. (Def.'s Brief at 7–9) (citing *Hodges*, 915 A.2d at 12–14). Even accepting that proposition, however, Defendants undermine their own argument when they concede that sending the initial debt collection letters to Plaintiff "triggered an analysis of the FDCPA." (*Id*. at 8); *see also Hodges*, 915 A.2d at 14 ("[A]ttorneys who wish to communicate with tenants before filing suit, and thereby trigger the FDCPA's validation notice provisions . . . remain free to do so.").

Third, Defendants argue that they are entitled to summary judgment because Plaintiff has provided no evidence that he has suffered any injury. (Def.'s Brief at 9–11). Defendants appear to argue both that Plaintiff lacks Article III standing to pursue these claims and, assuming standing, that he is not entitled to any damages. (*Id*.). Regarding Plaintiff's allegation that Defendants sought payment for legal fees at court hearings that they did not list on their collection letters or eviction complaints, Defendants claim that one bill for $500 they sought at the second eviction trial was accrued after the second complaint was filed and thus is not a FDCPA violation. (*Id*. at 10). Further, although Defendants did remark at the third eviction trial that Plaintiff's case had cost them $12,000 in attorneys' fees, Defendants claim they never represented this amount to be debt owed by Plaintiff and they never sought to collect it. (*Id*.).

Weighing the parties' arguments and the evidence in the record, the Court finds that the remaining Defendants do not meet their burden at this stage to show they are entitled to judgment as a matter of law on Plaintiff's FDCPA claims, with one exception. Starting with Plaintiff's claims under § 1692e(2), the record evidence shows that during the first and second eviction cycles, Plaintiff paid his past-due rent and utilities prior to Defendants filing the relevant eviction complaints with the county court. The eviction complaints, however, did not reflect Plaintiff's payments. Thus, applying the plain language of § 1692e(2)(A), a fact finder could conclude that the complaints falsely represented the amount of Plaintiff's debt.[6] The same analysis could apply to Plaintiff's payment of past-due rent and utilities during the third eviction cycle, which occurred on the same day that Defendants filed the third eviction complaint. The Court does not have enough information to discern which occurred event first, so it must resolve the uncertainty in favor of the Plaintiff. *See Boyle*, 139 F.3d at 393 ("[a]ll facts and inferences are construed in the light most favorable to the non-moving party"). Further, Defendants do not refute that the third eviction complaint incorrectly listed the month for which a water payment was due, and they do not address why this error—albeit minor—does not also fall within the purview of § 1692e(2)(A). Thus, Defendants have not shown that no genuine issue of material fact exists regarding Plaintiff's claim under § 1692e(2)(A) such that they are entitled to judgment as a matter of law.

---

[6] Although Defendants argue that legal pleadings do not on their own trigger the FDCPA's verification requirements under § 1692g(d), they do not assert that legal pleadings are exempt from the prohibitions of § 1692e(2). *See Yentin v. Michaels, Louis & Assocs., Inc.*, 2011 WL 4104675, at *12 (E.D. Pa. Sept. 15, 2011) ("[T]he FDCPA exempts formal legal pleadings from certain of its requirements, *see* §§ 1692e(11) and 1692g(d), so that the maxim of *exclusio unius est exclusio alterius* suggests that other of its requirements are applicable to non-pleadings and pleadings alike.") (internal footnote omitted).

Next, Defendants' arguments that it complied with § 1692g(b) are fatally flawed. Even if an eviction complaint on its own would fall within the FDCPA's "legal pleadings" exception to the verification requirements, Defendants concede that the debt collection letters they sent to Plaintiff separately triggered those requirements. Therefore, when Plaintiff disputed his debt during the first and third eviction cycles, Defendants were obligated under § 1692g(b) to verify the debt. Defendants argue they provided this through the eviction complaints. However, Plaintiff disputed his debt *after* Defendants filed the eviction complaints, and part of the basis for Plaintiff's dispute was that the eviction complaints themselves were inaccurate.

Section 1692g(b) is clear that when a consumer disputes a debt, the debt collector must then cease collection efforts until the debt is verified and notice is mailed to the consumer. *See*, *e.g.*, *Spencer v. Hendersen-Webb, Inc.*, 81 F. Supp. 2d 582, 593 (D. Md. 1999) ("[T]he Act does not make any exceptions for verifications sent to the consumer before the consumer disputes the debt in writing."). For that matter, Defendants' own debt collection letters are also clear on this point. (*See*, *e.g.*, Am. Compl., Ex D) ("If, however, you dispute the debt . . . the law requires us to suspend our efforts (through litigation or otherwise) to collect the debt until we mail the requested information to you."). Here, it would stretch logic to the breaking point to let an eviction complaint that is at least partly the basis for Plaintiff's dispute to also serve as verification of the disputed debt. Defendants themselves cite a case stating that verification is "intended to eliminate the . . . problem of debt collectors dunning the wrong person *or attempting to collect debts which the consumer has already paid*." (Def.'s Brief at 6) (citing *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999) (emphasis added and internal quotation marks omitted)). Therefore, Defendants also fail to show the absence of a genuine issue for trial on Plaintiff's claim under § 1692g(b).

Defendants' arguments that Plaintiff suffered no injury do not salvage their case. The Court in its Opinion on February 25, 2020, considered whether Plaintiff has Article III standing to bring his FDCPA claims and concluded that he does. (ECF No. 40 at 11–12). There is no reason to disrupt that ruling, especially given that Plaintiff filed an Amended Complaint the following year that alleges additional FDCPA violations and resultant injuries. As for Defendants' contention that Plaintiff suffered no actual damages, Plaintiff need not allege actual damages to bring a successful claim under the FDCPA, which provides for statutory damages. *See* § 1692k(a); *see also Salvati v. Deutsche Bank Nat. Tr. Co.*, 575 F. App'x 49, 56 (3d Cir. 2014) ("[U]nder the FDCPA, a plaintiff may collect statutory damages even if he has suffered no actual damages.").

On Defendants' point that it never charged $12,000 in attorneys' fees to Plaintiff or sought it from him as a debt, the Court finds that Defendants have met their burden for summary judgment. This figure does not appear in any debt collection letter or eviction complaint, Defendants represent they never sought to collect this amount, (Def.'s Statement of Material Facts ¶ 47), and Plaintiff does not anywhere allege that Defendants tried to collect this sum from him. Thus, there is no genuine issue of material fact on this narrow issue, and Defendants are entitled to judgment as a matter of law that they did not commit an FDCPA violation in connection with the $12,000 amount.

Given the state of the evidence and briefing, however, the Court cannot determine whether the additional $500 Defendants sought from Plaintiff for attorneys' fees at the second

eviction trial could amount to an FDCPA violation.[7] Thus, Defendants are not entitled to judgment as a matter of law on that claim.

### iii. *Plaintiff's State Law Claims*

Plaintiff brings additional claims under New Jersey law that Defendants violated the Tenant Reprisal Act (or Tenant Anti-Reprisal Act), N.J. Stat. Ann. § 2A:42-10.10 to -10.14, by evicting him in response to his legal advocacy, and that Defendants violated N.J. Stat. Ann. § 46:8-21.1 by improperly withholding his security deposit following his eventual eviction from his apartment.

Defendants make two arguments as to why summary judgment should be granted on these claims. First, they point out that a federal court can decline to exercise supplemental jurisdiction over state law claims upon the dismissal of claims over which the court had original jurisdiction. (Def.'s Brief at 11–12). Here, Plaintiff's FDCPA claim partially survives the Motion, so Defendants' argument about supplemental jurisdiction is not pertinent. Second, Defendants argue that Plaintiff's Tenant Reprisal Act claim fails because Plaintiff has provided no evidence of damages, which Defendants assert is required under the statute. (*Id*. at 15–16). Notably, Defendants nowhere address their alleged violations of § 46:8-21.1.

The Court denies Defendants' Motion with respect to Plaintiff's state law claims because here, too, Defendants fail to show the absence of a genuine issue of material fact. Defendants' Motion on these claims suffers from both a poorly developed evidentiary record and inadequate briefing. Defendants list no facts in their Statement of Material Facts that are specific to Plaintiff's state law claims. Defendants argue that Plaintiff has provided no evidence of damages,

---

[7] Notably, the transcript from the second eviction trial, (Am. Compl., Ex. P), is not in evidence, and Defendants only discuss the $500 amount in the context of whether Plaintiff suffered an injury. (Def.'s Brief at 10).

but Plaintiff recounts in his answers to interrogatories, which Defendants entered into evidence, the alleged retaliation he suffered at the hands of Defendants and resultant injuries, including the loss of his security deposit, the interruption of his graduate studies, and homelessness. (ECF No. 96-2 at 26–35) (answers to Interrogatories 9 and 10). If it is Defendants' contention that the retaliation and injuries alleged by Plaintiff are not cognizable under the New Jersey Tenant Reprisal Act, they fail yet again to provide an analysis of that Act that would help the Court reach that conclusion.[8] What's more, Defendants largely fail to even acknowledge Plaintiff's claim under § 46:8-21.1.

Accordingly, Defendants' Motion for Summary judgment on Plaintiff's state law claims is denied.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reconsideration (ECF No. 108) is **DENIED** in its entirety, including Plaintiff's Motion for Recusal, Motion for Reconsideration under Local Civil Rule 7.1, Motion for Relief under Federal Rule of Civil Procedure 60, and Motion for Certification for Interlocutory Appeal.

Defendants' Motion for Summary Judgment (ECF No. 96) is **GRANTED IN PART** with respect to all Defendants on Plaintiff's FDCPA claim premised on an alleged $12,000 payment for attorneys' fees sought by Defendants, and with respect to Defendants Haddon Point

---

[8] In its Opinion on December 7, 2020, the Court refused to consider a portion of Defendants' opposition to Plaintiff's motion to amend his complaint because they did not provide an adequate analysis of the Tenant Anti-Reprisal Act or N.J. Stat. Ann. § 46:8-21.1. (ECF No. 55 at 18–19). Then, as now, "[i]t is not the responsibility of the Court to perform the parties' research for them. Therefore, we will not engage in a 'freewheeling investigation into New Jersey state law without meaningful briefing on the subject.'" (*Id*. at 18) (citing *Sang Geoul Lee v. Won Il Park*, 720 F. App'x 663, 666 (3d Cir. 2017)).

Manager, Haddon Point Urban Renewal, Delco Development, Tom Juliano, and Nina Beacher on Plaintiff's remaining FDCPA claims.

However, Defendants' Motion for Summary Judgment is **DENIED IN PART** with respect to Defendants Travis J. Richards, Nicolas G. Rotsides, and Weishoff & Richards, LLC, on Plaintiff's remaining FDCPA claims, and with respect to all Defendants on Plaintiff's state law claims.

An appropriate order follows.

Dated: December 27, 2023                                     /s/ Robert B. Kugler
                                                            ROBERT B. KUGLER
                                                            United States District Judge